IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEPHON LINDSAY, #207044, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:07-CV-399-MHT |
| | ) | [WC] |
| RICHARD ALLEN, WARDEN | ) | |
| CUMMINS, SANDRA GILES, | ) | |
| SYLVESTER NETTLES, RUTHIE | ) | |
| PERRY, J. HUDSON, L. HERBERT, | ) | |
| CORRECTIONAL OFFICER | ) | |
| SCREECHER, CORRECTIONAL | ) | |
| OFFICER HAMPTON, CORRECTIONAL | ) | |
| OFFICER TALLEY, CORRECTIONAL | ) | |
| OFFICER BENNETT, A. JACKSON, | ) | |
| CORRECTIONAL OFFICER BASKIN, | ) | |
| CORRECTIONAL OFFICER MARTIN, | ) | |
| CORRECTIONAL OFFICER HILL, | ) | |
| CORRECTIONAL OFFICER CURRY, | ) | |
| CORRECTIONAL OFFICER BEECHAM, | ) | |
| CORRECTIONAL OFFICER BAILEY, | ) | |
| CORRECTIONAL OFFICER HANES, | ) | |
| PRISON HEALTH SERVICES, INC., DR. | ) | |
| TAHIR SIDDIQ, NURSE ETHEN, AND | ) | |
| NURSE JACQUELINE DUBOSE, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

---

**SPECIAL REPORT AND ANSWER OF DEFENDANTS DR. TAHIR SIDDIQ,
JACQUELINE DUBOSE AND PRISON HEALTH SERVICES, INC.**

---

COME NOW, Defendants DR. TAHIR SIDDIQ ("Dr. Siddiq"), JACQUELINE

DUBOSE ("Nurse Dubose") and PRISON HEALTH SERVICES, INC. ("PHS," collectively

with Dr. Siddiq and Nurse Dubose, the "Medical Defendants"), pursuant to this Court's Order

dated June 13, 2007, requiring Medical Defendants to provide their Special Report and Answer,

and submit the following Special Report and Answer addressing the allegations asserted by Plaintiff STEPHON LINDSAY ("Plaintiff"):

## I.    <u>INITIAL DISCLOSURES</u>

Medical Defendants make the following initial disclosures as required by this Court's June 13, 2007, Order for Special Report:

A.    The sworn statement of Dr. Tahir Siddiq;[1]

B.    The sworn statement of Jacqueline Dubose[2]; and

C.    The sworn statement of Nettie Burks with a true and correct copy of excerpts from Plaintiff's medical records attached thereto.[3]

## II.    <u>NARRATIVE STATEMENT OF UNDISPUTED FACTS</u>

### A.    <u>PROCEDURAL HISTORY</u>

Plaintiff instituted this action against Medical Defendants as well as numerous other officers and officials of the Alabama Department of Corrections (collectively, the "Correctional Defendants") on or about May 8, 2007. (<u>See</u> Complaint). Plaintiff claims, in substantial part, that Medical and Correctional Defendants allegedly violated his constitutional rights on or around January 8, 2007. (<u>Id.</u> at p. 2). With regard to Medical Defendants, Plaintiff specifically alleges that, following a purported altercation with some of the Correctional Defendants, Medical Defendants acted with deliberate indifference to his serious medical needs by waiting six (6)

---

[1]    A true and correct copy of Dr. Tahir Siddiq's affidavit ("Siddiq Aff.") is attached hereto as **Exhibit A** and incorporated herein by reference.

[2]    A true and correct copy of Jacqueline Dubose's affidavit ("Dubose Aff.") is attached hereto as **Exhibit B** and incorporated herein by reference.

[3]    A true and correct copy of Nettie Burks' affidavit ("Burks Affidavit") is attached hereto as **Exhibit C** and incorporated herein by reference. For purposes of this Special Report and Answer, Medical Defendants will cite to and refer to portions of Plaintiff's medical records by Bates-number which begin with the prefix "PHS."

days before performing an x-ray of his left wrist, delaying 11 days before providing Plaintiff with any alleged treatment for his wrist and/or failing to provide him with pain medication. (Id. at p. 3). In a nine-page affidavit attached to his Complaint, Plaintiff provides the some details of his purported altercation with some of the Correctional Defendants and the events that transpired following this purported altercation. (Id. and Affidavit attached thereto ("Plaintiff Aff.")).

At approximately 4:00 p.m. on January 8, 2007, an alleged verbal and/or physical altercation occurred between Plaintiff and some of the Correctional Officers after some Correctional Defendants, according to Plaintiff, discovered Plaintiff sitting in an area of Bullock Correctional Facility ("Bullock") with the fly of his pants unbuttoned while watching a member of the female correctional staff. (Plaintiff Aff. at pp. 1-2). Plaintiff claims he was subsequently injured by some of the Correctional Defendants in a physical altercation. (See Plaintiff Aff.). After the altercation with some of the Correctional Defendants, Plaintiff acknowledges the officers brought him to the Bullock Heath Care Unit for evaluation by the medical staff. (Id. at p. 4). Though Plaintiff alleges that some of the Correctional Defendants continued to assault him during his time in the Bullock Health Care Unit on January 8, 2007, he does not specifically identify any member of the Bullock medical staff who was allegedly present at the time of this alleged second assault. (Id. at p. 5).

Plaintiff acknowledges receiving medical treatment once he arrived in the Bullock Health Care Unit. (Id. at p. 6). Plaintiff admits the medical staff treated the cuts in his legs and "cleaned out the mace from [his] eyes." (Id. at p. 6). Plaintiff was then moved into a segregation cell. (Id. at p. 6). According to Plaintiff, he allegedly remained in segregation for "six (6) days . . . with no medical attention for [his] bleeding leg, broken wrist, or any of the other numerous bruises and battered places on [his] boy." (Id. at p. 6). Notably, Plaintiff does not allege that he ever

mentioned any pain or discomfort or requested any medical attention from any member of the medical staff at Bullock until January 15, 2007 (approximately seven (7) days after the alleged altercation). (Complaint at pp. 5-6).

Plaintiff alleges he "constantly informed the officers daily that [he] was in pain . . . [and] begged for pain medication." (Id. at p. 6). Plaintiff also avers that he did not have an x-ray of his wrist until January 15, 2007, did not receive any medication for pain, saw a specialist regarding potential surgery for his wrist on January 17, 2007, underwent wrist surgery on January 19, 2007, did not receive any pain medication until January 21, 2007, attended a post-operation appointment with the specialist on February 9, 2007, had the staples from surgery removed on February 21, 2007 and then experienced an infection at the site of the surgical incision on February 14, 2007. (Id. at pp. 7-8).

Though Plaintiff claims he submitted written complaints to the ADOC Commissioner and the warden at Bullock regarding his treatment, he does not allege he ever invoked or engaged in the grievance process available to inmates at Bullock regarding their medical treatment. (Id. at p. 8).

### B. PROCESSES AND PROCEDURES AT BULLOCK CORRECTIONAL FACILITY

#### 1. SICK CALL PROCESS

Upon arriving at any ADOC facility, inmates are notified of the procedures and processes for obtaining medical care and prescribed medications. (Siddiq Aff. at ¶ 4; Burks Affidavit and PHS000002-PHS000008). The health care units within ADOC facilities generally rely upon the same procedures for obtaining emergency and non-emergency (i.e. sick call) medical treatment, conducting chronic care clinics, medication administration,, segregation sick call and the like and permitting an inmates invocation of and participation in a grievance process. (Id.). As part of

this medical staff's orientation of inmates, inmates are provided a form entitled "ACCESS TO HEALTHCARE SERVICES." (Id.). Throughout his incarceration within the ADOC system, Plaintiff signed and/or acknowledged reading several the "ACCESS TO HEALTHCARE SERVICES" forms included in his medical records. (Id.).

When an inmate has a non-emergency[4] medical or health problem and/or complaint at Bullock, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff and/or request medical treatment for this problem. (Siddiq Aff. at ¶ 4). The sick call request process is well-known at Bullock and is utilized by inmates on a daily basis. (Id.). In the "ACCESS TO HEALTHCARE SERVICES" form, inmates are provided a complete description of the sick call process. (Siddiq Aff. at ¶ 4; Burks Aff. and PHS000003). The "ACCESS TO HEALTHCARE SERVICES" form begins with the following paragraph:

> Treatment for routine health services complaints are processed through nurse sick-call screening seven days a week. You must complete a sick-call screening form for requested healthcare evaluation.

(Burks Aff. and PHS000003). The "ACCESS TO HEALTHCARE SERVICES" form specifically provides, "Nurse's issue and collect sick call requests, screening slips in the segregation\lock-up housing areas." (Burks Aff. and PHS000003). For inmates housed in general

---

[4]    In the event of a medical emergency, inmates are instructed through the "ACCESS TO HEALTHCARE SERVICES" form as follows:

> "Medical emergencies such as those involving intense pain, potential life-threatening situations or when delaying treatment might cause permanent damage or dealt with at any time. ***Advise the nearest correctional officer of an emergency so prompt access to health services is provided***."

(Burks Aff. and PHS000003 (emphasis supplied)).

population areas, sick call request forms are available at the Health Care Unit and at various locations throughout the facility. (Siddiq Aff. at ¶ 4).

An inmate making a sick call request is required to complete the top portion of the sick call request form (stating his name, the date of request, AIS number, date of birth, dorm location, the nature of the problem or request and his signature). (Id.). The inmate then submits the sick call request form by placing it in one of the many locked boxes located throughout the facility. (Id.). The sick call request forms are removed from the locked box each day at approximately 12:00 p.m., brought to the Health Care Unit and marked as received by the medical records clerk or a nurse at that time. (Id.).

Upon reviewing the sick call request forms, the medical staff compiles a list of inmates that have submitted sick call request forms and provides the list to the Alabama Department of Corrections officer assigned to the Health Care Unit. (Id.). The Health Care Unit officer summons the patients by radio. (Id.). Sick call occurs at 7:30 a.m. (Id.). Inmates who submit sick call request forms are responsible for reporting to the Health Care Unit for evaluation of their complaints. (Id.). The nurse conducting sick call takes inmates' vital signs and either: (1) provides an inmate with medical treatment that can be provided under the nursing protocols, or (2) refers the inmate to the physician or nurse practitioner on staff at Bullock. (Id.). If an inmate submits more than one (1) sick call request form on the same day, the nurse will only fill in the intake information on one (1) sick call request form regarding the inmate's subjective complaints, objective vital signs, assessment and plan. (Id.).

A submitted sick call request form that is not completed by PHS's medical staff indicates that an inmate failed to report when summoned to sick call. (Id.). If the medical complaints or problems identified by an inmate in a sick call request form appear to be urgent or life-

threatening, the medical staff will immediately have the inmate brought to the Health Care Unit for medical treatment, and the inmate will not be required to wait until sick call begins.  (<u>Id.</u>).

Plaintiff's medical records demonstrate his familiarity with and reliance upon this process throughout his incarceration.  Over the course of the past seven years, Plaintiff has requested medical treatment through "sick-call request" forms regarding dental problems, cold and/or flu symptoms, swelling on his face and neck, and abdominal pain. (Burks Aff. and PHS000049-53, 81-84, 93-97).  Between December 7, 1999, and April 2, 2007, Plaintiff submitted approximately 16 requests for medical treatment. (<u>Id.</u>).

### 2. MEDICATION ADMINISTRATION ("PILL CALL") PROCESS

As set forth in the "ACCESS TO HEALTHCARE SERVICES" form, inmates receive prescribed medication through the process commonly referred to as "pill call."  (Siddiq Aff. at ¶ 5). Pill call occurs for the general population at Bullock (<u>i.e.</u> inmates who are not housed in segregation) every day at 6 a.m. and 6 p.m. (<u>Id.</u>).  At these designated times, inmates line up outside of two pill call windows outside of the health care unit. (<u>Id.</u>).  When the inmate arrives at the pill call window, he provides a member of the medical staff who is standing on the other side of the pill call window with his identification badge which is issued by the Alabama Department of Corrections. (<u>Id.</u>).   The member of the medical staff then retrieves the inmate's medication which is organized alphabetically and punches the medication out of a medication blister pack into a small plastic cup. (<u>Id.</u>).  The medication is provided to the inmate who is required to immediately take the medication. (<u>Id.</u>).

As the pill call process progresses, the medical staff conducting pill call records the disbursement of medication on forms known as "Medication Administration Records" or MARs. (<u>Id.</u>).  These MARs are maintained and filed in the individual inmates' medical records. (<u>Id.</u>).

Once the medications are dispensed, the medical staff member records the dispensing of medication by placing his initial or initials in the space provided on the corresponding MAR. (Id.).    If an inmate does not report to pill call to retrieve his medication, the medical staff member will either (1) leave the form blank, or (2) place the letter "A" or "a" in the space provided, indicating the inmate was "absent." (Id.).    If the medical staff conducting pill call discovers an inmate's medication has run out, expired or cannot otherwise be dispensed to the inmate, the medical staff at Bullock is instructed to document the unavailability of the medication and notify their supervisor or the prescribing physician immediately. (Id.).

### 4.    SEGREGATION ROUNDS AT BULLOCK

As indicated in the medical records maintained by the medical staff at Bullock, members of the medical staff conduct evaluation rounds within the segregation unit at Bullock at least three times a day, documenting the occurrence of the visit, any complaints voiced by an inmate, and medications administered during the evaluation rounds.  (Burks Aff. and PHS000011-15). The "ACCESS TO HEALTHCARE SERVICES" form also notifies inmates that medication is administered in segregation pursuant to a "lock-up pill call" procedure through which the medical staff administers medications to inmates housed in segregation at three different points in time during the day.  (Burks Aff. and PHS000005).  The administration of medication to inmates housed in segregation is also recorded in the daily segregation log maintained by the medical staff. (Burks Aff. and PHS000011-15).[5]

---

[5]      The Court will note that Plaintiff's medical records submitted herewith do not include any records regarding segregation rounds conducted during Plaintiff's incarceration in a segregation cell between January 8, 2007, and February 5, 2007. (See Burks Aff. and PHS000015).  The medical staff was, in fact, notified of Plaintiff's assignment to a segregation cell on January 8, 2007 at 4:53 p.m., as noted at the top of the "Segregation Unit Record Sheet." (Id.).  Dr. Siddiq was not aware of any instance, during this period of time, when segregation

Following the January 8, 2007, incident, Plaintiff was assigned to Bullock's segregation unit until March 11, 2007, though he left the segregation cell on numerous occasions to receive medical attention and specialty medical care.  (Burks Aff. and PHS000011-15).

Plaintiff's assignment to segregation at Bullock was not first occasion Plaintiff was placed in segregation or the first time he was involved in an alteration in prison.  In October of 2000, Plaintiff was examined by the medical staff at St. Clair Correctional Facility after he was stabbed with an ice pick in his right shoulder.  (Burks Aff. and PHS000032).  During 2001, Plaintiff was assigned to a segregation unit for approximately thirty-six days. (Burks Aff. and PHS000026-27).  Plaintiff was incarcerated in segregation housing for almost the entire month of April, 2003, while incarcerated in Ventress Correctional Facility. (Burks Aff. and PHS000022, PHS000025).  During 2004, Plaintiff was housed in the segregation unit at Holman Correctional Facility for approximately 25 days.[6] (Burks Aff. and PHS000018-000020).  Plaintiff was also housed in a segregation unit for approximately fifteen days during January and February of 2005. (Burks Aff. and PHS000017).

On each occasion, Plaintiff was assigned to the segregation unit in an ADOC facility, he received regular medical treatment and/or monitoring by the medical staff at these facilities, which documented such monitoring and/or treatment. (Burks Aff. and PHS000011-15, 17-20, 22, 25-27, 32).

### 4.   GRIEVANCE PROCEDURE

PHS has a well-established grievance procedure for any inmate who wishes to voice a complaint regarding any medical treatment he has sought or received during his incarceration at

---

rounds did not occur at Bullock. (Siddiq Aff. at ¶ 6).  In the event such records are located, Medical Defendants will promptly submit the same to the Court for its consideration.

[6]   In conjunction with this April, 2004, placement in segregation, Plaintiff also claimed he was struck by an ADOC officer. (Burks Aff. and PHS000021).

Bullock. (Siddiq Aff. at ¶ 7). The initial orientation process at Bullock also includes educating inmates as to the availability of the grievance process. (Id.). The existence of Bullock's grievance procedure is well-known among the prison population, as indicated by the fact that the Health Services Administrator at Bullock receives inmate requests and/or inmate grievances on a daily basis. (Id.). PHS's physicians, nurse practitioners, nurses and other medical personnel attempt to resolve all inmate concerns prior to an "inmate grievance" being submitted. (Id.). The grievance process is initiated when an inmate submits a Medical Complaint form to the Health Services Administrator through the institutional mail system. (Id.). This request is reviewed by the Health Services Administrator who provides a written response within five (5) days of receipt of the Medical Complaint. (Id.).

The medical staff's written response to a Medical Complaint is included on the bottom portion of same form containing an inmate's Medical Complaint. (Siddiq Aff. at ¶ 7). Below the portion of the form designated for the "Response," the following notation appears:

> IF YOU ARE UNSATISFIED WITH THE RESPONSE, YOU MAY FILE A MEDICAL GRIEVANCE USING THE PRISON HEALTH SERVICES GRIEVANCE FORM.

(Id.). As stated in the Medical Complaint forms, the second step of the grievance process involves the submission of a formal Grievance (also referred to as an "appeal"). Written responses to formal Grievances are provided within five (5) days of receipt. (Id.).

Medical Complaint and Grievance forms are available from the correctional officers at Bullock. (Id.). Inmates are instructed to place completed Medical Complaint and Grievance forms in the sick call boxes located throughout the facility. (Id.). When received in the Health Care Unit, Medical Complaint and Grievance forms are sent to the Health Services Administrator by the medical records clerk or administrative assistant. (Id.). The Health Services

Administrator reviews the grievances daily, provides a written response within five days at the bottom of the form and returns a copy of the completed forms to the inmate. (Id.).  The Health Services Administrator at Bullock encourages inmates who have complaints about the medical care they have sought or received at Bullock to utilize this grievance process. (Id.).

During the course of Plaintiff's incarceration at Bullock and his subsequent incarceration at Ventress Correctional Facility, he did not submit any grievances in accordance with the established grievance process or otherwise invoke this process. (Id.).

### C.    MEDICAL TREATMENT PROVIDED TO PLAINTIFF AFTER JANUARY 8, 2007, INCIDENT.

Plaintiff arrived at Bullock Correctional Facility on August 10, 2006, almost four months before the alleged January 8, 2007, incident.  (Burks Aff. and PHS000088).  At approximately 4:10 p.m. on January 8, 2007, Plaintiff appeared in the Bullock Health Care Unit for evaluation by the medical staff.  (Siddiq Aff. at ¶ 8; Burks Aff. and PHS000087).  At the time Plaintiff arrived at the Health Care Unit, he was handcuffed with his hands behind his back and accompanied by several correctional officers. (Id.).  Dr. Siddiq did not see any correctional strike or restrain Plaintiff during his time in the Bullock Health Care Unit. (Siddiq Aff. at ¶ 8).  No other member of the medical staff reported to Dr. Siddiq that they witnessed any correctional offers strike or even restrain Plaintiff during his visit to the Bullock Health Care Unit on January 8, 2007.  (Id.).  If Dr. Siddiq saw an inmate being mistreated in any way, he would report such conduct to either (1) the warden at Bullock, or (2) his regional supervisor.  (Id.).

Upon evaluating Plaintiff, the medical staff noted that Plaintiff had a small abrasion to his back left elbow and to his left lower leg. (Siddiq Aff. at ¶ 9; Burks Aff. and PHS000087). Dr. Siddiq examined Plaintiff and noted that his eyes were red due to the use of pepper spray in the altercation. (Id.).  Dr. Siddiq instructed the medical staff to rinse Plaintiff's eyes with a sterile

solution and clean his abrasions. (Id.). Dr. Siddiq prescribed Plaintiff 800 milligrams of Advil to be taken 3 times a day for 10 days and ordered Plaintiff to receive an x-ray of his lower left arm and lower left leg. (Siddiq Aff. at ¶ 9; Burks Aff. and PHS000054, 87).

The medical staff at Bullock maintains on-site x-ray equipment which is utilized on Mondays, Wednesdays and Fridays of each week. (Siddiq Aff. at ¶ 9). At the time Plaintiff arrived at the Bullock Health Care Unit, the x-ray technician at Bullock had left for the day, which was a Monday. (Id.). Given Plaintiff's agitated state at the time, there were serious questions as to whether Plaintiff would cooperate to permit an x-ray of his left wrist. (Id.). More importantly, Plaintiff did not appear to be any noticeable medical distress, which is not entirely uncommon for a patient with a broken bone. (Id.). Based upon his evaluation of Plaintiff at that time, Dr. Siddiq did not know if Plaintiff's left wrist was broken at the time. (Id.). As of the afternoon of January 8, 2007, Dr. Siddiq did not believe it was medically necessary for Plaintiff to undergo an immediate x-ray and did not believe that Plaintiff's wrist would be adversely affected if an x-ray was conducted when the x-ray technician returned on Wednesday. (Id.).

At the conclusion of the examination of Plaintiff on January 8, 2007, Dr. Siddiq notified Plaintiff that if he should need any additional medical treatment or experience any problems, he should immediately notify the medical staff. (Siddiq Aff. at ¶ 8; Burks Aff. and PHS000087). Plaintiff did not submit any sick call request during this period of time and the medical staff did not receive any request for treatment from Plaintiff between January 8, 2007 and January 10, 2007. (Siddiq Aff. at ¶ 9).

As indicated in Plaintiff's medical records, Plaintiff underwent the ordered x-rays on January 10, 2007. (Siddiq Aff. at ¶ 10; Burks Aff. and PHS000054). The following day Board certified radiologist, Dr. Howard P. Schiele, reviewed the results of the x-ray of Plaintiff's left

forearm. (Id.). Upon reviewing the results of the x-ray, Dr. Schiele discovered that, "[t]here is a transverse fracture involving the distal shaft of the left ulna with mild deformity at the fracture sights." (Id.). Dr. Siddiq requested approval to refer Plaintiff to an orthopedic surgeon for evaluation of a possible fractured left wrist, which was promptly approved. (Siddiq Aff. at ¶ 10; Burks Aff. and PHS000063).

Plaintiff saw Dr. Chung, an orthopedic surgeon on January 13, 2007.[7] (Siddiq Aff. at ¶ 10; Burks Aff. and PHS000068). That same day, the medical staff at Bullock received instructions from Dr. Chung indicating that Plaintiff should undergo surgery on his left forearm due to a fractured ulna. (Id.). Dr. Siddiq then requested approval for a January 19, 2007 surgery on Plaintiff's fractured left forearm to be conducted at a local hospital. (Siddiq Aff. at ¶ 10; Burks Aff. and PHS000057). In anticipation of his upcoming surgery, Plaintiff underwent lab testing on January 16, 2007. (Siddiq Aff. at ¶ 10; Burks Aff. and PHS000056).

Plaintiff underwent surgery on his left wrist on January 19, 2007. (Siddiq Aff. at ¶ 11; Burks Aff. and PHS000064). The post-operative notes of the orthopedic surgeon dated January 19, 2007, instructed Plaintiff elevate his left arm, change the dressing on his surgical incision as necessary, provided pain medication as necessary, ordered Plaintiff to use only a bottom bunk and follow-up with a surgeon at his office. (Siddiq Aff. at ¶ 11; Burks Aff. and PHS000064). These instructions were subsequently provided to the medical staff at Bullock. (Siddiq Aff. at ¶ 11; Burks Aff. and PHS000059).

When Plaintiff returned to Bullock following his surgery, he was evaluated by a member of the medical staff and complained of some discomfort. (Burks Aff. and PHS000089). At that

---

[7]     Plaintiff's evaluation by an orthopedic surgeon on January 13, 2007, directly disproves the allegation in Plaintiff's Complaint that he did not receive any medical attention for six (6) days after being placed in segregation at Bullock on January 8, 2007.

time, Plaintiff received medication for his pain and the member of the medical staff noted that the orthopedic surgeon requested a follow-up appointment in two weeks. (Id.). On January 20, 2007, Dr. Siddiq entered orders for Plaintiff to elevate his arm, that he should receive Percogesic[8] three times a day for two days and Cephalexin[9] three times a day for two days. (Siddiq Aff. at ¶ 11; Burks Aff. and PHS000091). Dr. Siddiq also ordered Plaintiff to use only a bottom bunk for approximately 180 days and to report to the Bullock Health Care Unit as necessary to have the dressing to his left wrist changed. (Siddiq Aff. at ¶ 11; Burks Aff. and PHS000016, 91).

Plaintiff's medical administration records indicate that between January 20, 2007, and January 22, 2007, Plaintiff received Percogesic and the antibiotic Cephalexin. (Siddiq Aff. at ¶ 12; Burks Aff. and PHS000077). Between January 20, 2007 and January 31, 2007, Plaintiff received orders that he could obtain dressing changes to his left wrist as needed. (Siddiq Aff. at ¶ 12: Burks Aff. and PHS000077). On only two occasions, January 22 and 23, 2007, Plaintiff requested that the medical staff change the dressing to his left wrist. (Siddiq Aff. at ¶ 12; Burks Aff. and PHS000077).

On January 23, 2007, Dr. Siddiq requested approval for a follow-up appointment for Plaintiff with the surgeon who conducted the surgery on Plaintiff's left forearm, which was approved that same day. (Siddiq at ¶ 12; Burks Aff. and PHS000058). Dr. Siddiq later ordered a follow-up x-ray of Plaintiff's left arm on January 31, 2007. (Siddiq Aff. at ¶ 12; Burks Aff. and PHS000055). Dr. Maurice H. Rowell, a board certified radiologist, reviewed Plaintiff's January

---

[8] Percogesic refers to acetaminophen which is often utilized to alleviate and/or relieve mild to moderate pain caused by various conditions. (Siddiq Aff. at ¶ 11 fn. 1).

[9] Cephalexin is an antibiotic commonly prescribed to prevent post-operative bacterial infections. (Siddiq Aff. at ¶ 11 fn. 2).

31, 2007 x-ray of his left arm and determined that the bones within Plaintiff's left arm were "in good position and alignment." (Id.).

Between January 8, 2007 and February 27, 2007, Plaintiff did not submit any sick call request forms requesting any type of medical treatment or medication. Plaintiff submitted sick-call request forms on February 27, 2007 and March 2, 2007, requesting treatment for a "slight cold," but Plaintiff felt to appear for sick-call at the appointed time. (Burks Aff. and PHS000085-86). On March 8 and 9, 2007, Plaintiff submitted sick-call request forms complaining about cold-like symptoms. (Siddiq Aff. at ¶ 13; Burks Aff. and PHS000083-84). When seen by Dr. Siddiq on March 9, 2007, Plaintiff did not voice any complaints about his left wrist, but merely requested treatment for his cold-like symptoms, which were provided at that time. (Siddiq Aff. at ¶ 13; PHS000083-84).

Though Plaintiff submitted a sick-call request form dated April 2, 2007, requesting that his teeth be "checked and cleaned," Plaintiff failed to appear for any dental treatment on April 3, 2007. (Burks Aff. and PHS000082). Plaintiff appeared at sick-call on April 2, 2007. (Id.). At sick-call, a member of the medical staff examined Plaintiff and determined he was suffering from "cold symptoms," and instructed Plaintiff to rest and increase his intake and fluids and follow-up with the physician as necessary. (Burks Aff. and PHS000080).

Between April 2, 2007 and April 13, 2007, Dr. Siddiq prescribed Amoxil[10] for Plaintiff to be administered over the course of eleven days. (Siddiq Aff. at ¶ 14; Burks Aff. and PHS000075). As indicated in the medication administration record in Plaintiff's medical records, Plaintiff repeatedly failed to report to pill call to receive this medication. (Id.). Plaintiff's

---

[10]    Amoxil is a semi-synthetic antibiotic used to prevent potential bacterial infections, primarily in open wounds. (Siddiq Aff. at ¶ 14 fn. 3).

medication administration records indicate that he only appeared for pill call and/or received his medication on twelve (12) of the approximately thirty-three (33) occasions on which he was to take such medication. (Id.).

On or about April 5, 2007, Plaintiff was transferred from Bullock to Ventress Correctional Facility ("Ventress"). (Burks Aff. and PHS000009). At the time of this transfer to Ventress, Plaintiff acknowledged his recent medical treatment for a broken wrist, but denied any pain with regard to this condition. (Burks Aff. and PHS000009-10, 78). The "transfer and receiving screening form" completed upon Plaintiff's arrival at Ventress on April 5, 2007, did not indicate any complaints voiced by Plaintiff with regard to his left arm except for a comment regarding decreased strength in his left arm. (Burks Aff. and PHS000079). During his yearly physical examination at Ventress on April 23, 2007, Plaintiff notified the medical staff that a plate remained in his left wrist, but did not voice any complaints of pain, discomfort or any of the complications with regard to his left wrist. (Burks Aff. and PHS000043).

Nurse Dubose's interaction with Plaintiff and/or her treatment of Plaintiff related solely to one instance when Nurse Dubose was conducting segregation rounds at Bullock. (Dubose Aff. at ¶ 4). Nurse Dubose cannot recall the specific date when this interaction took place except that it occurred after Plaintiff had undergone surgery to his left wrist. (Id.). During the course of segregation rounds, Nurse Dubose inquired as to whether Plaintiff needed any medical attention. (Id.). She noted at the time that Plaintiff had removed the splint on his left wrist. (Id.). Plaintiff complained that the surgical incision on his left wrist was itching and had been scratching the area around his incision for some period of time. (Id.). Nurse Dubose ensured Plaintiff was transported to the Bullock Health Care Unit where she applied some topical ointment to the surgical incision. (Id.). At the time Nurse Dubose saw Plaintiff, the surgical incision did not

exhibit any signs of infection or other complications. (Id.). Plaintiff was subsequently moved back to his segregation cell and Nurse Dubose did not receive any further complaints. (Id.). Nurse Dubose did not interact with Plaintiff on any other occasion regarding his left wrist and/or receive any additional complaints or concerns regarding his left wrist.  (Id.).

Neither Dr. Siddiq nor Nurse Dubose were ever notified by Plaintiff required or had requested any medical treatment which had not been provided. (Siddiq Aff. at ¶ 15; Dubose Aff. at ¶ 5). Plaintiff did not file a sick call request form or grievance indicating that he had not received any requested medical treatment or medication following the January 8, 2007, incident. (Id.).  Plaintiff did not submit a sick call request form or grievance requesting to be seen by any member of the medical staff regarding his left wrist or any pain associated with his wrist following the January 8, 2007, incident. (Id.).

While Plaintiff was under the care of Dr. Siddiq, Dr. Siddiq did not ignore any of his complaints or refuse to provide him with any medical care or attention or any medication. (Siddiq Aff. at ¶ 16).  Plaintiff never requested any pain medication from Dr. Siddiq and any additional medical treatment other than the medical treatment provided by Dr. Siddiq during his appointments with Plaintiff. (Id.).  Indeed, if Plaintiff had informed Dr. Siddiq of any pain or discomfort at any time, Dr. Siddiq would have ensured that Plaintiff received medication and/or treatment for such symptoms. (Siddiq Aff. at ¶ 15).

## III.    DISCUSSION

Plaintiff's dissatisfaction with the type of medical treatment provided by the Medical Defendants, the order in which treatment was provided and the process for ensuring the surgical repair of his broken wrist does not automatically equate an Eighth Amendment claim brought pursuant to 42 U.S.C. § 1983.  The evidence presented by Medical Defendants demonstrates:

(1)    Medical Defendants did not violate Plaintiff's Eighth Amendment
right to necessary medical treatment;

(2)    Section 1983 does not permit any finding of liability against PHS
on the basis of *respondeat superior*; and

(3)    Plaintiff did not exhaust his administrative remedies as required by
the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).

Moreover, Plaintiff does not allege in his Complaint that he did not receive any medical
treatment or attention for his broken wrist.  Plaintiff's Complaint does not identify any specific
instance when he requested medical treatment and any of the Medical Defendants refused to
provide him with any necessary medical treatment.  In sum, Plaintiff simply claims that he was
dissatisfied with the specific treatment prescribed for him and the manner in which such
treatment was provided.  For these reasons and the reasons stated below, Plaintiff is not entitled
to assert a claim for deliberate indifference against Medical Defendants.  Even if Plaintiff's
Complaint stated a claim against Medical Defendants, such claims are precluded by the
exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

A.    MEDICAL DEFENDANTS DID NOT VIOLATE PLAINTIFF'S EIGHTH
AMENDMENT RIGHT TO NECESSARY MEDICAL TREATMENT.

As "Ground Two" for his Complaint, Plaintiff clearly states that his claims against
Medical Defendants are based upon his claim that Medical Defendants acted with "deliberate
indifference to [his] serious medical needs," by allegedly failing to provide treatment for his
broken wrist, failing to take x-rays "for 6 days and no treatment of injuries for 11 days."
(Complaint at p. 3).  Plaintiff also alleges he was "[d]enied medication for pain and infection by
both officers and nurses, as well as doctor." (Id.).  The Eighth Amendment[11] does not on its face
reference in any way any medical care due to incarcerated persons. See e.g. Marsh v. Butler

---

[11]    The Eighth Amendment applies to the states by virtue of the Fourteenth
Amendment's Due Process Clause. Robinson v. California, 370 U.S. 660, 666 (1962).

County, Ala., 268 F. 3d 1014, 1038 (11th Cir. 2001)(*en banc*).  In Estelle v. Gamble, 429 U.S. 97(1976), the United States  Supreme Court first inferred a prisoner's "right" to necessary medical care from the text of the Eighth Amendment.  In reaching this conclusion, the Estelle Court held that the prohibition against cruel and unusual punishment in the Eighth Amendment prohibits prison officials from acting with "deliberate indifference" with regard to prisoners' serious medical needs. 429 U.S. at 104.  Since Estelle, courts have routinely recognized that the Eighth Amendment[12] to the United States Constitution governs the conditions of confinement for prisoners and the treatment of these prisoners during the term of their incarceration.  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)); see also Whitley v. Albers, 475 U.S. 312, 327 (1986); Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981).

An alleged claim of "deliberate indifference" under the Eighth Amendment may be actionable under 42 U.S.C. § 1983.[13]  See Graham v. Connor, 490 U.S. 386, 393- 94 (1989)(recognizing that § 1983 is not a source of "any substantive right," but rather provides a means for "vindicating federal rights elsewhere conferred."). Every claim by a prisoner that he

---

[12]    Though liability arising out of the treatment of pretrial detainees triggers Fourteenth Amendment considerations, "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner . . ." See Hamm v. DeKalb County, 774 F.2d 1567, 1573-74 (11th Cir. 1985).  To the extent Medical Defendants rely upon any cases addressing the application of the Fourteenth Amendment in the prison context, such cases are equally applicable in this case.

[13]    42 U.S.C. § 1983 provides, in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

has not received adequate medical treatment does not state a violation of the Eighth Amendment. McElligott v. Foley, 182 F. 3d 1248, 1254 (11th Cir. 1999).   Courts have devoted an extraordinary amount of time clearly defining the requirements for asserting and succeeding upon an Eighth Amendment claim under § 1983.  Both the Supreme Court and Eleventh Circuit have described the Eighth Amendment standard of deliberate indifference as requiring allegations and evidence of both "objective" and "subjective" components. See e.g. Farmer, 511 U.S. 825 at 834, 837; Chandler v. Crosby, 379 F. 3d 1278, 1289-90 (11th Cir. 2004).

The "objective" component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The underlying conduct or condition must be "extreme" and pose "an unreasonable risk of serious damage to his future health," if left unchecked. Chandler, 379 F. 3d at 1289-90 (quoting Hudson, 503 U.S. at 9) (other citations omitted).  At a minimum, a prisoner must allege and establish the existence of "a serious medical need." Chandler, 379 F. 3d at 1289-90; Farrow v. West, 320 F. 3d 1235, 1243 (11th Cir. 2003).  The Eleventh Circuit's long-standing definition of "serious medical need" is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See e.g. Farrow, 320 F. 3d at 1243 (citing Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F. 3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)).  Additionally, the serious medical need must be such that, if left untreated, "pos[es] a substantial risk of serious harm." Farmer, 511 U.S. at 834. The burden falls squarely upon Plaintiff to allege and ultimately establish the existence of a serious medical need.  See e.g. Hamm v. DeKalb County, 774 F. 2d 1567 (11th Cir. 1985).

If Plaintiff successfully identifies and establishes the existence of a "serious medical need," he must also establish the "subjective" component of an Eighth Amendment violation. Plaintiff must prove the Medical Defendants acted with "deliberate indifference." See e.g. Farmer, 511 U.S. at 837. This subjective component requires evidence the Medical Defendants possessed actual knowledge of "an excessive risk to inmate health or safety" and disregarded that risk. Id. at 837. Evidence demonstrating Medical Defendants failed "to alleviate a significant risk that [they] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" or serve as a basis for a claim of deliberate indifference. Burks v. Sikes, 169 F. 3d 1353, 1363-1364 (11th Cir. 1999)(other citations omitted); see also Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir.1996) (holding, "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not ....'" (quoting Farmer, 511 U.S. at 838)). Courts summarize this component as requiring evidence of a "subjectively sufficiently culpable state of mind." Id. at 1491 (other citations and internal quotations omitted).

It is incumbent upon a prisoner asserting a § 1983 claim to establish "conscious or callous indifference" on the part of the prison official. See e.g. Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990). For example, a prisoner's § 1983 claim for inadequate medical treatment cannot survive summary judgment unless and until the inmate produces evidence "of the prison official's subjective awareness" of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care." Id.; Campbell v. Sikes, 169 F. 3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shah, 87 F. 3d 1266, 1269 (11th Cir. 1996)); Hill, 40 F. 3d at 1186). Without evidence of this "specific intent," a prisoner's § 1983 claim cannot succeed. Steele, 87 F. 3d at 1269.

Courts have devoted a significant amount of time identifying the specific types of allegations which do *not* give rise to the claim of "deliberate indifference." In declaring the "deliberate indifference" standard for the first time, the Estelle Court wrote, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." 429 U.S. at 106. The Eleventh Circuit in Chandler held a prisoner's discomfort does not give rise to an Eighth Amendment violation. 379 F. 3d at 1295 (citations omitted). Applying Estelle, the Eleventh Circuit also noted that a complaint that prison medical staff should have done more to diagnose and/or treat a prisoner is "at most . . . medical malpractice." Campbell, 169 F. 3d at 1363. Indeed, the Eighth Amendment does not prohibit or provide any remedy for any "accidental inadequacy . . . or even medical malpractice actionable under state law." Taylor v. Adams, 221 F. 3d 1254, 1258 (11th Cir. 2000) (quotations and citation omitted). For this reason, medical decisions not to or when to provide certain types of medical treatment, such as an x-ray, are not actionable as a matter of law under the Eighth Amendment. Id.

In instances when inmates acknowledge treatment but contest the manner in which treatment is provided, courts have applied an altered analysis of claims involving requests for different or alternative types of medical treatment. When an inmate claims "different treatment should have been provided," such a claim "is tantamount to a medical judgment call," not an Eighth Amendment violation. McElligott, 182 F. 3d at 1259. In greater detail, the Eleventh Circuit explained in Hamm:

> Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference. See Bass v. Sullivan, 550 F.2d 229, 231-32 (5th Cir.), cert. denied, 434 U.S. 864, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977); accord, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (1st Cir. 1981) ("***Where a prisoner has received ... medical attention and the dispute is***

> *over the adequacy of the treatment, federal courts are generally*
> *reluctant to second guess medical judgments and to*
> *constitutionalize claims that sound in tort law*.").

774 F. 2d at 1575 (emphasis supplied).

The second broad category of cases in which courts have historically mandated limitations upon the liability of prison officials under the Eighth Amendment constitute cases of alleged delayed medical treatment. In cases when a prisoner actually receives medical treatment, courts employ an altered analysis of deliberate indifference.  As to claims of delayed medical treatment, the Eleventh Circuit has instructed courts to be hesitant to find an Eighth Amendment violation when officials provide medical care to prison inmates.  McElligott, 182 F. 3d at 1259 (11th Cir. 1999) (citing Waldrup v. Evans, 871 F. 2d 1030, 1035 (11th Cir. 1989)).  In fact, a prisoner alleging delayed medical treatment must show that the official acted with deliberate indifference, meaning the official knew of the serious medical condition and "intentionally or with reckless disregarded, delayed treatment."  Hinson v. Edmond, 192 F. 3d 1342, 1348 (11th Cir. 1999).  In Hill, the Eleventh Circuit added:

> Cases stating a constitutional claim for immediate or emergency
> medical attention have concerned medical needs that are obvious
> even to a lay person because they involve life-threatening
> conditions or situations where it is apparent that delay would
> detrimentally exacerbate the medical problem.  In contrast, delay
> or even denial of medical treatment for superficial, nonserious
> physical conditions does not constitute an Eighth Amendment
> violation. * * * Consequently, delay in medical treatment must be
> interpreted in the context of the seriousness of the medical need,
> deciding whether the delay worsened the condition, and
> considering the reason for the delay.

40 F. 3d 1176, 1188-89 (11th Cir. 1994) (emphasis added).  Whether a claim arises from delayed treatment depends upon "the nature of the medical need and the reason for the delay."  Harris v. Coweta County, 21 F. 3d 388, 393-94 (11th Cir. 1994).  Accordingly, in instances where prisoners complain of delays in medical treatment or request different medical treatment,

prisoners must overcome a much greater threshold in order to state and/or succeed upon such a §1983 claim.

In this instance, Plaintiff's claims medical care and/or attention was not provided for his broken wrist within the timeframe deemed acceptable by Plaintiff. (Complaint at pp. 5-8). While Plaintiff's broken wrist was a "serious medical condition," the next step in the analysis, i.e. a showing of deliberate indifference, is problematic, especially considering that Plaintiff's claims are grounded in issues of "delay," not denial. Making matters more difficult, Plaintiff does not differentiate and/or specify the purported acts and/or omissions of each of the Medical Defendants which serve as the basis of his claims.[14]

The evidence submitted in conjunction with this Special Report demonstrates the steps taken by Dr. Siddiq in addressing Plaintiff's broken wrist. After first evaluating Plaintiff, Dr. Siddiq ordered pain medication for Plaintiff, directed the medical staff to treat his abrasions and his irritated eyes and ordered an x-ray of Plaintiff's left wrist. (Siddiq Aff. at ¶¶ 8, 9; Burks Aff. and PHS000054, 87). After receiving the x-ray results, Dr. Siddiq immediately requested approval for Plaintiff's consultation with an orthopedic surgeon. (Siddiq Aff. at ¶ 10; Burks Aff. and PHS000054, 63). After consulting an orthopedic surgeon, Dr. Siddiq took the necessary steps to ensure a timely surgical correction of Plaintiff's left wrist fracture. (Siddiq Aff. at ¶ 10; Burks Aff. and PHS000056-57, 68). Upon returning to Bullock after surgery, Dr. Siddiq immediately entered orders following the post-operative instructions provided by Plaintiff's orthopedic surgeon. (Siddiq Aff. at ¶ 11; Burks Aff. and PHS000059, 64, 91). In addition to the pre-surgery treatment, Dr. Siddiq ensured Plaintiff received post-operative follow-up care in the

---

[14]     The first five pages of Plaintiff's nine-page affidavit are devoted almost entirely to all of the purported events which transpired before Plaintiff received medical treatment. (Plaintiff Aff. at pp. 1-5).

form of follow-up appointments with the orthopedic surgeon and a follow-up x-ray to confirm the propriety of Plaintiff's surgery. (Siddiq at ¶ 12; Burks Aff. and PHS000055, 58). The treatment provided by Dr. Siddiq does not ever approach the type of "extreme" conduct necessary to support a § 1983 claim. Plaintiff's medical records demonstrate that Plaintiff received adequate and thorough medical attention for his broken wrist. There is simply no medical evidence suggesting in any way that the passage of time between the various steps of medical treatment of Plaintiff's left wrist exacerbated, worsened or otherwise detrimentally impacted Plaintiff's left wrist. Accordingly, there is simply no basis to conclude or ever allege that Dr. Siddiq intentionally acted in any way to deprive Plaintiff of any necessary medical care.

Plaintiff's Complaint, in fact, demonstrates the absence of any basis for any § 1983 claim against Nurse Dubose. The only allegations asserted in Plaintiff's Complaint relate to an incident on or about February 14, 2007, when Plaintiff claims his surgical incision became infected and Nurse Dubose cleaned his wound. (Complaint at p. 8). Nurse Dubose agrees with most of Plaintiff's contentions in this regard. (Dubose Aff. at ¶ 5). The sole interaction between Plaintiff and Nurse Dubose occurred during the course of Nurse Dubose's segregation rounds. (Id.). Nurse Dubose recalls seeing Plaintiff sitting in his segregation cell after having removed the splint on his left wrist and complaining about itching associated with his surgical incision. (Id.). Nurse Dubose ensured Plaintiff was transported to the Bullock Health Care Unit where she applied some topical ointment to the surgical incision. (Id.). The only area of disagreement between Plaintiff and Nurse Dubose involves whether the incision was infected or not, a determination which Nurse Dubose is clearly more experienced in making. (Id.). After this singular incident, Plaintiff was subsequently moved back to his segregation cell and Nurse Dubose did not receive any further complaints. (Id.). These facts alone (as included in Plaintiff's

Complaint and the affidavit offered by Nurse Dubose) demonstrate the absence of any logical basis for any § 1983 claim against Nurse Dubose.

While Plaintiff references Nurse Dubose and Dr. Siddiq in his Complaint, Plaintiff's Complaint is devoid any specific factual allegation with regard to the purported acts and/or omissions of Prison Health Services, Inc.  Plaintiff fails to articulate any basis for his inclusion of PHS as a named party in this action.  For this reason alone, Plaintiff's § 1983 claim against PHS fails.

### B.    SECTION 1983 DOES NOT PERMIT ANY FINDING OF LIABILITY AGAINST PHS ON THE BASIS OF *RESPONDEAT SUPERIOR*.

Given the absence of any specific factual allegations pertaining to PHS, PHS is left to assume Plaintiff's claims against PHS are based upon the conduct of Dr. Siddiq and/or Nurse Dubose.  Any reliance by Plaintiff upon a theory of *respondeat superior* in attempting to pursue a claim against PHS is also fatal.  It is well-established in the Eleventh Circuit that liability under § 1983 "must be based on something more than a theory of *respondeat superior*." H.C. by Hewett v. Jarrard, 786 F. 2d 1080, 1086 (11th Cir. 1986) (citing Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)); see also Polk County v. Dodson, 454 U.S. 312, 325, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability."); Marsh v. Butler County, 268 F.3d 1014, 1035 (11th Cir. 2001); Washington v. Dugger, 860 F. 2d 1018, 1021 (11th Cir. 1988) ("[the inmate's] complaint against [certain defendants] is not supported by any evidence which would permit a fact finder to find their participation in any deliberate indifference to his medical needs.  Of course, these persons cannot be held liable under Section 1983 on the basis of respondeat superior."); Jetter v. Beard, 130 Fed. Appx. 523, 525 (3rd Cir. 2005) (unpubl.) (panel featuring Justice Alito) (dismissing Eighth Amendment claims against supervisory defendants

because "liability under Section 1983 cannot be imposed on a supervisor on the basis of *respondeat superior*. Personal involvement must be alleged and is only present where the supervisor knew of the actions and acquiesced in them. [The inmate] simply has not alleged any facts to support a conclusion that the supervisory defendants had personal involvement in the medical treatment [the inmate] received at [the prison].").  The Eleventh Circuit has applied this principle in various contexts, precluding claims against various kinds of supervisors and/or employing entities. See Farrow, 320 F. 3d at 1238 (holding that a supervising physician was not liable under § 1983 for the acts and/or omissions of a physician acting under his supervision); Buckner v. Toro, 116 F. 3d 450, 452-53 (11th Cir. 1997)(recognizing that the principle that *respondeat superior* liability does not exist under § 1983 has been expanded to included private medical contractors employed to perform governmental functions).

Given this black letter law, Plaintiff's claims against PHS must fail to the extent he relies upon any alleged acts and/or omissions of Dr. Siddiq, Nurse Dubose or any other member of the Bullock medical staff as a basis for his claim against PHS.

### C. PLAINTIFF'S COMPLAINT IS BARRED BY THE PRISON LITIGATION REFORM ACT.

42 U.S.C. §1997e(a) of the Prison Litigation Reform Act ("PLRA") mandates that "[n]o action may be brought with respect to prison conditions[15] under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

---

[15]       The PLRA does not define "prison conditions." See 42 U.S.C. § 1997e. Nevertheless, 18 U.S.C. §3626(g)(2) defines a "civil action with respect to prison conditions" as any civil action arising under federal law "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." The Eleventh Circuit has relied upon this definition of "prison conditions" in applying the PLRA to cases before it. See Higginbottom v. Carter, 223 F. 3d 1259 (11th Cir. 2000).  It is incontrovertible that Plaintiff's allegations in this case relate solely to the "conditions of [her] confinement" at Bullock and, as such, trigger the application of the PLRA.

such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).[16]   Any

remedy available under § 1983 before this Court is not available unless and until Plaintiff utilizes

the grievance process available within the correctional system.   See e.g. Brown v. Sikes, 212 F.

3d 1205, 1207 (11th Cir. 2000); Miller v. Tanner, 196 F. 3d 1190, 1193 (11th Cir. 1999);

Alexander v. Hawk, 159 F. 3d 1321, 1325 (11th Cir. 1998); see also Higginbottom v. Carter, 223

F. 3d 1259, 1261 (11th Cir. 2000) (holding that invoking the grievance process is "a pre-

condition to filing an action in federal court."); A.N.R. v. Caldwell, 111 F. Supp. 2d 1294, 1297-

99 (M.D. Ala. 2000) (dismissing prisoner's complaint for failure to exhaust administrative

remedies through the available grievance process).   The Supreme Court wrote in Porter v.

Nussle, "exhaustion is now required for all 'action [s] ... brought with respect to prison

conditions,' whether under § 1983 or 'any other Federal law.'" 534 U.S. 516, 524,  (2002).

     In Alexander v. Hawk, 159 F. 3d 1321, 1328 (11th Cir. 1998) the Court noted:

> In summary we conclude that Section 1997 e(a) requires
> Alexander to submit his claims for monetary and injunctive relief
> to the [Federal Bureau of Prisons] available prison grievance
> program, even if the relief offered by the program does not appear
> to be "plain, speedy, and effective," before filing those claims in
> federal court.   The judicially created futility and inadequacy
> doctrines do not survive the PLRA's mandatory exhaustion
> requirement.

---

[16]     The PLRA's exhaustion requirement applies to all prisoner suits filed after April 26, 1996. See Higginbottom v. Carter, 223 F. 3d 1259 (11th Cir. 2000); Alexander v. Hawk, 159 F. 3d 1321 (11th Cir. 1998).  This requirement was specifically intended to :

> afford[ ] corrections officials time and opportunity to
> address complaints internally before allowing the initiation of a
> federal case . . . [because i]n some instances, corrective action
> taken in response to an inmate's grievance might improve prison
> administration and satisfy the inmate, thereby obviating the need
> for litigation . . . [and i]n other instances, the internal review might
> 'filter out some frivolous claims.'

Porter v. Nussle, 534 U.S. 516, 524-525 (2002)(citations omitted).

According to the Eleventh Circuit, a prisoner's claims must be dismissed under Rule 12(b)(1) or Rule 12(b)(6) of the <u>Federal Rules of Civil Procedure</u> if he has failed to exhaust his administrative remedies. <u>Chandler</u>, 379 F. 3d at 1286.

There can be no dispute that PHS maintains a well-established, widely publicized grievance process within the correctional facilities in Alabama, including Bullock. (Siddiq Aff. at ¶ 7). Likewise, there can be no dispute that Plaintiff was advised of and acknowledged on numerous occasions the availability of this administrative grievance process. (Burks Aff. and PHS000002-8). More importantly, there can be no dispute that Plaintiff did not avail himself of the grievance process or ever seek redress for his complaints through this grievance process. (<u>Id.</u>). By failing to utilize procedures available to him at Bullock, of which he was aware, Plaintiff failed to exhaust the administrative remedies available to him as required by the PLRA. As such, Plaintiff's Complaint is premature.

## VI.    <u>CONCLUSION</u>

Based on the foregoing facts and legal arguments, the Complaint filed by Plaintiff is not entitled to maintain any claim against the Medical Defendants based upon the facts alleged in the Complaint.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **STEPHON LINDSAY, #207044,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO.: 2:07-CV-399-MHT** |
| | ) | **[WC]** |
| **RICHARD ALLEN, WARDEN** | ) | |
| **CUMMINS, SANDRA GILES,** | ) | |
| **SYLVESTER NETTLES, RUTHIE** | ) | |
| **PERRY, J. HUDSON, L. HERBERT,** | ) | |
| **CORRECTIONAL OFFICER** | ) | |
| **SCREECHER, CORRECTIONAL** | ) | |
| **OFFICER HAMPTON, CORRECTIONAL** | ) | |
| **OFFICER TALLEY, CORRECTIONAL** | ) | |
| **OFFICER BENNETT, A. JACKSON,** | ) | |
| **CORRECTIONAL OFFICER BASKIN,** | ) | |
| **CORRECTIONAL OFFICER MARTIN,** | ) | |
| **CORRECTIONAL OFFICER HILL,** | ) | |
| **CORRECTIONAL OFFICER CURRY,** | ) | |
| **CORRECTIONAL OFFICER BEECHAM,** | ) | |
| **CORRECTIONAL OFFICER BAILEY,** | ) | |
| **CORRECTIONAL OFFICER HANES,** | ) | |
| **PRISON HEALTH SERVICES, INC., DR.** | ) | |
| **TAHIR SIDDIQ, NURSE ETHEN, AND** | ) | |
| **NURSE JACQUELINE DUBOSE,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

---

**ANSWER OF DEFENDANTS DR. TAHIR SIDDIQ, JACQUELINE
DUBOSE AND PRISON HEALTH SERVICES, INC.**

---

COME NOW, Defendants DR. TAHIR SIDDIQ ("Dr. Siddiq"), JACQUELINE

DUBOSE ("Nurse Dubose") and PRISON HEALTH SERVICES, INC. ("PHS," collectively

with Dr. Siddiq and Nurse Dubose, the "Medical Defendants"), and for their Answer to the

Complaint filed by Plaintiff STEPHON LINDSAY ("Plaintiff"), state as follows:

## FACTUAL ALLEGATIONS

1.     In response to the statements made by Plaintiff in section I of his Complaint regarding "PREVIOUS LAWSUITS," Medical Defendants deny the accuracy of these statements and, in support of this denial, refer the Court to the federal court suit instituted by Plaintiff styled as <u>Stephon Lindsay v. Attorney Charles C. Hart, Chief of Corrections Johnny Grant, Chief Williams, The Nurses and Officers Blood, Phillips and Duffy</u>, In the United States District Court for the Northern District of Alabama, Middle Division, CV99-PT-1322-M, which was subsequently dismissed due to Plaintiff's failure to state a claim upon which relief could be granted under 42 U.S.C. §1983.

2.     To the extent Plaintiff identifies in paragraph II of his Complaint two correctional facilities in which he has been incarcerated and/or the correctional facility where he is currently incarcerated, Medical Defendants admit these allegations.  Except as expressly admitted herein above, Medical Defendants deny each and every remaining allegation in this section of Plaintiff's Complaint and demand strict proof thereof.

3.     Medical Defendants deny that they violated any of Plaintiff's constitutional rights and demand strict proof thereof.  Except as expressly denied herein above, Medical Defendants state they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph III of Plaintiff's Complaint; as such, the same are denied and Medical Defendants demand strict proof thereof.

4.     Medical Defendants deny that they violated any of Plaintiff's constitutional rights on the alleged dated identified by Plaintiff in paragraph IV of his Complaint and demand strict proof thereof.

5.     Medical Defendants state they are without knowledge or information sufficient to form a belief as to the truth of the allegations listed as " Ground One" in paragraph V of

Plaintiff's Complaint; as such, the same are denied and Medical Defendants demand strict proof thereof.

6.     Medical Defendants deny that the allegations listed as "Ground Two" in paragraph V of Plaintiff's Complaint as well as the "Support Facts" alleged therein and demand strict proof thereof.

7.     To the extent necessary and/or required by virtue of the Order of this Court and/or the <u>Federal Rules of Civil Procedure</u>, Medical Defendants deny the material allegations asserted in the "Affidavit" attached to Plaintiff's Complaint.

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>

### <u>First Defense</u>

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### <u>Second Defense</u>

Plaintiff's claims are barred by the doctrine of contributory negligence and/or last clear chance.

### <u>Third Defense</u>

Plaintiff's claims are barred by the doctrine of assumption of risk.

### <u>Fourth Defense</u>

Plaintiff's claims are barred by the doctrine of laches.

### <u>Fifth Defense</u>

Plaintiff's claims are barred by the statute of limitations.

### <u>Sixth Defense</u>

Plaintiff's claims are barred by the doctrine of waiver.

### <u>Seventh Defense</u>

The Court lacks subject matter jurisdiction over this dispute.

### Eighth Defense

This Court is the improper venue in which to assert this action.

### Ninth Defense

Plaintiff lacks standing to bring this action.

### Tenth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Eleventh Defense

Plaintiff's claims are barred by the doctrine of qualified immunity.

### Twelfth Defense

Plaintiff's claims are barred by the doctrine of sovereign immunity.

### Thirteenth Defense

Plaintiff's claims are barred by the doctrine of estoppel.

### Fourteenth Defense

Plaintiff's claims are barred by the doctrine of *res judicata* and/or collateral estoppel.

### Fifteenth Defense

Plaintiff's claims are barred, in whole or in part, because of his failure to mitigate damages.

### Sixteenth Defense

Medical Defendants aver that the wrongs and damages alleged by Plaintiff were caused solely by the acts and/or omissions of person and/or entities for whom or which Medical Defendants are not responsible.

### Seventeenth Defense

Plaintiff's claims are barred because Medical Defendants did not breach any duty Defendant allegedly owed to Plaintiff.

### Eighteenth Defense

Plaintiff's claims are barred because there is no casual relationship, legal or proximate, between Medical Defendants' actions or failures to act and the Plaintiff's alleged injuries and damages.

### Nineteenth Defense

Plaintiff's claims are barred because of the existence of superseding, intervening causes.

### Twentieth Defense

Plaintiff's claims are barred because of the lack of damages suffered due to any of the alleged wrongs asserted against Medical Defendants.

### Twenty-First Defense

Plaintiff has failed to exhaust or attempt to exhaust administrative remedies.  42 U.S.C. § 1997e (a) (2005).

### Twenty-Second Defense

Plaintiff's claims are barred because the action asserted is "frivolous, malicious, and fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1) (2005).

### Twenty-Third Defense

Plaintiff's claims are barred because the injunctive relief sought is not sufficiently narrowly drawn.  18 U.S.C. § 3626(a)(1)(A) (2005).

### Twenty-Fourth Defense

Plaintiff's claims are barred because Medical Defendants did not act with deliberate indifference. Estelle v. Gamble, 429 U.S. 97 (1976).

### Twenty-Fifth Defense

Plaintiff's claims are barred because he is seeking to question a medical judgment via injunctive relief.

**Twenty-Sixth Defense**

To the extent Plaintiff seeks to recover any attorneys' fees, Medical Defendants object to any and all such requests for fees that are not asserted in the Complaint or otherwise approved by court order.

**Twenty-Seventh Defense**

Plaintiff's claims for punitive damages violate PHS's United States and Alabama constitutional protections from, including without limitation, excessive fines, cruel and unusual punishment, denial of due process and denial of equal protection of the law.

**Twenty-Eighth Defense**

Medical Defendants reserve the right to assert other defenses as discovery proceeds.


s/ William R. Lunsford
One of the Attorneys for Prison Health Services, Inc., Dr. Tahir Siddiq and Jacqueline Dubose

**OF COUNSEL:**
William R. Lunsford
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street
Huntsville, Alabama 35801
Telephone:  (256) 551-0171
Facsimile: (256) 512-0119
Email: blunsford@maynardcooper.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of July, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and mailed via regular U.S. mail to the following:

> Stephon Lindsay
> AIS 207044
> Ventress Correctional Facility
> P.O. Box 767
> Clayton, Alabama 36016-0767

s/ William R. Lunsford
Of Counsel

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEPHON LINDSAY, #207044, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:07-CV-399-MHT |
| | ) | [WC] |
| RICHARD ALLEN, WARDEN | ) | |
| CUMMINS, SANDRA GILES, | ) | |
| SYLVESTER NETTLES, RUTHIE | ) | |
| PERRY, J. HUDSON, L. HERBERT, | ) | |
| CORRECTIONAL OFFICER | ) | |
| SCREECHER, CORRECTIONAL | ) | |
| OFFICER HAMPTON, CORRECTIONAL | ) | |
| OFFICER TALLEY, CORRECTIONAL | ) | |
| OFFICER BENNETT, A. JACKSON, | ) | |
| CORRECTIONAL OFFICER BASKIN, | ) | |
| CORRECTIONAL OFFICER MARTIN, | ) | |
| CORRECTIONAL OFFICER HILL, | ) | |
| CORRECTIONAL OFFICER CURRY, | ) | |
| CORRECTIONAL OFFICER BEECHAM, | ) | |
| CORRECTIONAL OFFICER BAILEY, | ) | |
| CORRECTIONAL OFFICER HANES, | ) | |
| PRISON HEALTH SERVICES, INC., DR. | ) | |
| TAHIR SIDDIQ, NURSE ETHEN, and | ) | |
| NURSE JACQUELINE DUBOSE, | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF TAHIR SIDDIQ, M.D.

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF BULLOCK | ) |

Before me, the undersigned Notary Public, personally appeared TAHIR SIDDIQ, M.D., who after being duly sworn, states as follows:

1.    My name is Dr. Tahir Siddiq. I am over the age of nineteen (19) years and have personal knowledge of the information contained in this affidavit.

2.      I have been employed at the Bullock Correctional Facility ("Bullock") since November of 2003. I am currently employed by Prison Health Services, Inc. ("PHS") as the Medical Director at Bullock. I am licensed to practice medicine in the state of Alabama.

3.      Stephon Lindsay ("Lindsay") was at one time an inmate incarcerated at Bullock. Lindsay is not incarcerated at Bullock at this time and has not been incarcerated at Bullock since approximately April of 2007.

4.      Upon arriving at any facility operated by the Alabama Department of Corrections ("ADOC"), inmates are notified of the procedures and processes for obtaining medical care and prescribed medications. The health care units within ADOC facilities generally rely upon the same procedures for obtaining emergency and non-emergency (i.e. sick call) medical treatment, conducting chronic care clinics, medication administration,, segregation sick call and the like and permitting an inmates invocation of and participation in a grievance process. As part of this medical staff's orientation of inmates, inmates are provided a form entitled "ACCESS TO HEALTHCARE SERVICES." Throughout Lindsay's incarceration within the ADOC system, he has signed and/or acknowledged reading several of the "ACCESS TO HEALTHCARE SERVICES" forms included in his medical records.

When an inmate has a non-emergency medical or health problem and/or complaint at Bullock, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff and/or request medical treatment for this problem. The sick call request process is well-known at Bullock and is utilized by inmates on a daily basis. In the "ACCESS TO HEALTHCARE SERVICES" form, inmates are provided a complete description of the sick call process. For inmates housed in general population areas, sick call request forms are available at the Health Care Unit and at various locations throughout the facility.

An inmate making a sick call request is required to complete the top portion of the sick call request form (stating his name, the date of request, AIS number, date of birth, dorm location, the nature of the problem or request and his signature). The inmate then submits the sick call request form by placing it in one of the many locked boxes located throughout the facility. The sick call request forms are removed from the locked box each day at approximately 12:00 p.m., brought to the Health Care Unit and marked as received by the medical records clerk or a nurse at that time.

Upon reviewing the sick call request forms, the medical staff compiles a list of inmates that have submitted sick call request forms and provides the list to the Alabama Department of Corrections officer assigned to the Health Care Unit. The Health Care Unit officer summons the patients by radio. Sick call occurs at 7:30 a.m. Inmates who submit sick call request forms are responsible for reporting to the Health Care Unit for evaluation of their complaints. The nurse conducting sick call takes inmates' vital signs and either: (1) provides an inmate with medical treatment that can be provided under the nursing protocols, or (2) refers the inmate to the physician or nurse practitioner on staff at Bullock. If an inmate submits more than one (1) sick call request form on the same day, the nurse will only fill in the intake information on one (1) sick call request form regarding the inmate's subjective complaints, objective vital signs, assessment and plan.

A submitted sick call request form that is not completed by PHS's medical staff indicates that an inmate failed to report when summoned to sick call. If the medical complaints or problems identified by an inmate in a sick call request form appear to be urgent or life-threatening, the medical staff will immediately have the inmate brought to the Health Care Unit for medical treatment, and the inmate will not be required to wait until sick call begins.

5.    As set forth in the "ACCESS TO HEALTHCARE SERVICES" form, inmates receive prescribed medication through the process commonly referred to as "pill call." Pill call occurs for the general population at Bullock (i.e. inmates who are not housed in segregation) every day at 6 a.m. and 6 p.m. At these designated times, inmates line up outside of two pill call windows outside of the health care unit. When the inmate arrives at the pill call window, he provides a member of the medical staff who is standing on the other side of the pill call window with his identification badge which is issued by the Alabama Department of Corrections. The member of the medical staff then retrieves the inmate's medication which is organized alphabetically and punches the medication out of a medication blister pack into a small plastic cup. The medication is provided to the inmate who is required to immediately take the medication.

As the pill call process progresses, the medical staff conducting pill call records the disbursement of medication on forms known as "Medication Administration Records" or MARs. These MARs are maintained and filed in the individual inmates' medical records. Once the medications are dispensed, the medical staff member records the dispensing of medication by placing his initial or initials in the space provided on the corresponding MAR. If an inmate does not report to pill call to retrieve his medication, the medical staff member will either (1) leave the form blank, or (2) place the letter "A" or "a" in the space provided, indicating the inmate was "absent." If the medical staff conducting pill call discovers an inmate's medication has run out, expired or cannot otherwise be dispensed to the inmate, the medical staff at Bullock is instructed to document the unavailability of the medication and notify their supervisor or the prescribing physician immediately.

6.      As indicated in the medical records maintained by the medical staff at Bullock, members of the medical staff conduct evaluation rounds within the segregation unit at Bullock at least three times a day, documenting the occurrence of the visit, any complaints voiced by an inmate, and medications administered during the segregation rounds. I was not aware of any occasion during January or February of 2007 when segregation rounds did not occur at Bullock.

7.      PHS has a well-established grievance procedure for any inmate who wishes to voice a complaint regarding any medical treatment he has sought or received during his incarceration at Bullock. The initial orientation process at Bullock also includes educating inmates as to the availability of the grievance process. The existence of Bullock's grievance procedure is well-known among the prison population, as indicated by the fact that Strickland, the Health Services Administrator at Bullock, receives inmate requests and/or inmate grievances on a daily basis. PHS's physicians, nurse practitioners, nurses and other medical personnel attempt to resolve all inmate concerns prior to an "inmate grievance" being submitted. The grievance process is initiated when an inmate submits a Medical Complaint form to the Health Services Administrator through the institutional mail system. This request is reviewed by the Health Services Administrator who provides a written response within five (5) days of receipt of the Medical Complaint.

The medical staff's written response to a Medical Complaint is included on the bottom portion of same form containing an inmate's Medical Complaint. Below the portion of the form designated for the "Response," the following notation appears:

IF YOU ARE UNSATISFIED WITH THE RESPONSE, YOU MAY FILE A MEDICAL GRIEVANCE USING THE PRISON HEALTH SERVICES GRIEVANCE FORM.

As stated in the Medical Complaint forms, the second step of the grievance process involves the submission of a formal Grievance (also referred to as an "appeal"). Written responses to formal Grievances are provided within five (5) days of receipt.

Medical Complaint and Grievance forms are available from the correctional officers at Bullock. Inmates are instructed to place completed Medical Complaint and Grievance forms in the sick call boxes located throughout the facility. When received in the health care unit, Medical Complaint and Grievance forms are sent to the health services administrator by the medical records clerk or administrative assistant. The health services administrator reviews the grievances daily, provides a written response within five days at the bottom of the form and returns a copy of the completed forms to the inmate. The health services administrator at Bullock encourages inmates who have complaints about the medical care they have sought or received at Bullock to utilize this grievance process.

During the course of Lindsay's incarceration at Bullock and his subsequent incarceration at Ventress Correctional Facility, he did not submit any grievances in accordance with the established grievance process or otherwise invoke this process.

8.    At approximately 4:10 p.m. on January 8, 2007, Lindsay appeared in the Bullock Health Care Unit for evaluation by the medical staff. At the time Lindsay arrived at the Health Care Unit, he was handcuffed with his hands behind his back and accompanied by several officers. I did not see any correctional strike or restrain Lindsay during his time in the Bullock Health Care Unit. No other member of the medical staff reported to me that they witnessed any correctional offers strike or even restrain Lindsay during his visit to the Bullock Health Care Unit on January 8, 2007. If I saw an inmate being mistreated in any way, I would report such conduct to either (1) the warden at Bullock, or (2) their regional supervisor.

9.    Upon evaluating Lindsay, we noted that Lindsay had a small abrasion to his left elbow and to his left lower leg. I examined Lindsay and noted that his eyes were red due to the use of pepper spray in an altercation with correctional officers. I instructed the medical staff to rinse Lindsay's eyes with a sterile solution and clean his abrasions. I prescribed Lindsay 800 milligrams of Advil to be taken 3 times a day for 10 days and ordered him to receive an x-ray of his lower left arm and lower left leg. The medical staff at Bullock maintains on-site x-ray equipment which is utilized on Mondays, Wednesdays and Fridays of each week. At the time Lindsay arrived at the Bullock Health Care Unit, the x-ray technician at Bullock had left for the day, which was a Monday. Given Lindsay's agitated state at the time, there were serious questions as to whether Lindsay would cooperate to permit an x-ray of his left wrist at that time. More importantly, Lindsay did not appear to be in any noticeable distress, which is not entirely uncommon for a patient with a broken bone. Based upon my evaluation of Lindsay at that time, I could not confirm at the time that Lindsay's wrist was broken at the time. As of the afternoon of January 8, 2007, I did not believe it was medically necessary for Lindsay to undergo an immediate x-ray and did not conclude that his wrist would be adversely affected if an x-ray was conducted when the x-ray technician returned on Wednesday. At the conclusion of my examination of Lindsay on January 8, 2007, I notified Lindsay that if he should need any additional medical treatment or experience any problems, he should immediately notify the medical staff. Lindsay did not submit any sick call request during this period of time and the medical staff did not receive any request for treatment from me between January 8, 2007 and January 10, 2007.

10.    Lindsay underwent the ordered x-rays on or about January 10, 2007. The following day, board certified radiologist, Dr. Howard P. Schicle, reviewed the results of the x-

ray of Lindsay's left forearm. Upon reviewing the results of the x-ray, Dr. Schiele discovered that, "[t]here is a transverse fracture involving the distal shaft of the left ulna with mild deformity at the fracture sights." I requested approval to refer Lindsay to an orthopedic surgeon for evaluation of a possible fractured left wrist, which was promptly provided. Lindsay saw Dr. Chung, an orthopedic surgeon on January 13, 2007. That same day, the medical staff at Bullock received instructions from Dr. Chung indicating that Lindsay should undergo surgery for a fracture of the ulna bone in his left wrist. I then requested approval for a January 19, 2007, surgery on Lindsay's fractured left forearm to be conducted at a local hospital. In anticipation of his upcoming surgery, Lindsay underwent lab testing on January 16, 2007.

    11.    Lindsay underwent surgery on his left wrist on January 19, 2007. The post-operative notes of the orthopedic surgeon dated January 19, 2007, instructed Lindsay to elevate his left arm, change the dressing on his surgical incision as necessary, provided pain medication as necessary, ordered Lindsay to use only a bottom bunk and follow-up with a surgeon at his office. These instructions were provided to the medical staff at Bullock. When Lindsay returned from surgery, he was evaluated by a member of the medical staff and complained of some discomfort. At that time, Lindsay received medication for his pain and the member of the medical staff noted that the orthopedic surgeon requested a follow-up appointment in two weeks. On January 20, 2007, I also entered orders for Lindsay, pursuant to the post-operative orders of the orthopedic surgeon, directing Lindsay to elevate his arm, that he should receive Percogesic[1] three times a day for two days and Cephalexin[2] three times a day for two days. I also ordered

---

[1] Percogesic refers to acetaminophen which is often utilized to alleviate and/or relieve mild to moderate pain caused by various conditions.

[2] Cephalexin is an antibiotic commonly prescribed to prevent post-operative bacterial infections.

Lindsay to use only a bottom bunk for approximately 180 days and to report to the Bullock Health Care Unit as necessary to have the dressing to his left wrist changed as necessary.

12.    Lindsay's medical administration records indicate that, between January 20, 2007 and January 22, 2007, Lindsay received Percogesic and the antibiotic Cephalexin. Between January 20, 2007 and January 31, 2007, Lindsay received orders that he could obtain dressing changes to his left wrist as needed. On only two occasions, January 22 and 23, 2007, Lindsay requested that the medical staff change the dressing to his left wrist. On January 23, 2007, I requested approval for a follow-up appointment for Lindsay with the surgeon who conducted the surgery on Lindsay's left forearm, which was approved that same day. I later ordered a follow-up x-ray of Lindsay's left arm on January 31, 2007. Dr. Maurice H. Rowell, a board certified radiologist, reviewed Lindsay's January 31, 2007, x-ray of his left arm and determined that the bones within Lindsay's left arm were "in good position and alignment."

13.    Between January 8, 2007 and February 27, 2007, Lindsay did not submit any sick call request forms requesting any type of medical treatment or medication. Lindsay submitted sick-call request forms on February 27, 2007 and March 2, 2007, requesting treatment for a "slight cold," but Lindsay felt to appear for sick-call at the appointed time. On March 8 and 9, 2007, Lindsay submitted sick-call request forms complaining about cold-like symptoms. When I saw Lindsay on March 9, 2007, he did not voice any complaints about his left wrist, but merely requested treatment for his cold-like symptoms, which were provided at that time. Though Lindsay submitted a sick-call request form dated April 2, 2007, requesting that his teeth be "checked and cleaned," Lindsay failed to appear for any dental treatment on April 3, 2007. Lindsay appeared at sick-call on April 2, 2007. At sick-call, a member of the medical staff

examined Lindsay and determined he was suffering from "cold symptoms," and instructed Lindsay to rest and increase his intake and fluids and follow-up with the physician as necessary.

14.     Between April 2, 2007 and April 13, 2007, I prescribed Amoxil[3] for Lindsay to be administered over the course of eleven days. As indicated in the medication administration record in Lindsay's medical records, Lindsay repeatedly failed to report to pill call to receive this medication. He only appeared for pill call and/or received his medication on 12 of the approximate 33 occasions in which he was to take such medication.

15.     I was not notified that Lindsay had requested any medical treatment which was not provided. Lindsay did not file a sick call request form or grievance indicating that he had not received any requested medical treatment or medication following the January 8, 2007, incident. Lindsay did not submit a sick call request form or grievance requesting to be seen by any member of the medical staff regarding his left wrist or any pain associated with his wrist following the January 8, 2007, incident. If Lindsay had informed me of any pain or discomfort at any time, I would have ensured that Lindsay received medication, if appropriate, for such symptoms. Lindsay never requested any pain medication from me or any additional medical treatment other than the medical treatment I provided during his appointments with me.

16.     I responded in a timely and appropriate manner to the requests for medical treatment submitted by Lindsay during his incarceration at Bullock. While Lindsay was under my care, I did not ignore any of his complaints or refuse to provide him with any medical care or attention or any medication.

        Further affiant saith not.

---

[3] Amoxil is a semi-synthetic antibiotic used to prevent potential bacterial infections, primarily in open wounds.

Tahir Siddiq, M.D.

SWORN TO and SUBSCRIBED before this the 30 day of July , 2007.

Notary Public

(SEAL)                      My Commission Expires: JUNE 2010

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY, #207044,               )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )    Civil Action No.: 2:07-CV-399-MHT
                                        )                    [WC]
RICHARD ALLEN, WARDEN                   )
CUMMINS, SANDRA GILES,                  )
SYLVESTER NETTLES, RUTHIE               )
PERRY, J. HUDSON, L. HERBERT,           )
CORRECTIONAL OFFICER                    )
SCREECHER, CORRECTIONAL                 )
OFFICER HAMPTON, CORRECTIONAL           )
OFFICER TALLEY, CORRECTIONAL            )
OFFICER BENNETT, A. JACKSON,            )
CORRECTIONAL OFFICER BASKIN,            )
CORRECTIONAL OFFICER MARTIN,            )
CORRECTIONAL OFFICER HILL,              )
CORRECTIONAL OFFICER CURRY,             )
CORRECTIONAL OFFICER BEECHAM,           )
CORRECTIONAL OFFICER BAILEY,            )
CORRECTIONAL OFFICER HANES,             )
PRISON HEALTH SERVICES, INC., DR.       )
TAHIR SIDDIQ, NURSE ETHEN, and          )
NURSE JACQUELINE DUBOSE,                )
                                        )
          Defendants.                   )

## AFFIDAVIT OF JACQUELINE DUBOSE

STATE OF ALABAMA      )
                      )
COUNTY OF BULLOCK  )

Before me, the undersigned Notary Public, personally appeared JACQUELINE

DUBOSE, who after being duly sworn, states as follows:

1.      My name is Jacqueline Dubose.  I am over the age of nineteen (19) years and

have personal knowledge of the information contained in this affidavit.

2.    I have been employed at the Bullock Correctional Facility ("Bullock") since January of 2004. I am currently employed by Prison Health Services, Inc. ("PHS") and am a licensed practical nurse in the state of Alabama.

3.    Stephon Lindsay ("Lindsay") was at one time an inmate incarcerated at Bullock. Lindsay is not incarcerated at Bullock at this time and has not been incarcerated at Bullock since approximately April, 2007.

4.    My treatment of Lindsay during his incarceration at Bullock was limited to one instance when I conducted segregation rounds. I cannot recall the specific date when this interaction took place except that it occurred after Lindsay's wrist surgery had been conducted. During segregation rounds, I inquired as to whether Lindsay needed any medical attention. I noted at the time that Lindsay had removed the splint on his left wrist. Lindsay complained that the surgical incision on his left wrist was itching and had been scratching the area around the incision for some period of time. I ensured Lindsay was transported to the Bullock Health Care Unit where I applied some topical ointment to the surgical incision. I examined Lindsay's surgical incision and it did not exhibit any signs of infection or other complications. Lindsay was subsequently moved back to his segregation cell and I did not receive any further complaints from him or have any further interaction with him regarding his left wrist and/or receive any additional complaints or concerns regarding his left wrist.

5.    I was not notified that Lindsay had requested any additional or different medical treatment which was not provided. Lindsay never requested any pain medication from me or any additional medical treatment other than the medical treatment I provided during his appointments with me. If Lindsay had informed me of any pain or discomfort at any time, I would have ensured that Lindsay was evaluated by the site physician. I responded in a timely and

appropriate manner to the requests for medical treatment submitted by Lindsay during his

incarceration at Bullock.  I did not ignore any of Lindsay's medical complaints or refuse in any

way to provide him with any necessary medical treatment.

Further affiant saith not.

_____
Jacqueline Dubose

SWORN TO and SUBSCRIBED before this the 23rd day of July, 2007.

_____
Notary Public

(SEAL)

My Commission Expires: 2/24/2009

# EXHIBIT C

## **AFFIDAVIT**

**STATE OF ALABAMA**

**BARBOUR COUNTY**

I, _Nettie Burks_ , hereby certify and affirm that I am a _H.S.A._ , at Ventress Correctional Facility; that I am one of the custodian of records at this institution; that the attached documents are true, exact, and correct photocopies of certain documents maintained here in the institutional medical file of Stephon Lindsay, AIS# 207044; and that I am over the age of twenty-one years and am competent to testify to the aforesaid documents and matters stated therein.

I further certify and affirm that said documents are maintained in the usual and ordinary course of business at Ventress Correctional Facility; and that said documents (and the entries therein) were made at, or reasonably near, the time that by, or from information transmitted by, a person with knowledge or such acts, events and transactions referred to therein are said to have occurred.

I further certify and affirm that the above-referenced inmate has not filed or submitted to Prison Health Services, Inc. any grievances of any kind while under the care of Prison Health Services, Inc.

This, I do hereby certify and affirm to on this the ___11th___ day of ___July___ , 2007.

_Reba D Currie_

NOTARY PUBLIC
My Commission Expires: ___9-8-08___

PHS000001

# VENTRESS CORRECTIONAL FACILITY

## VERIFICATION OF ACCESS TO HEALTHCARE

THIS IS TO CERTIFY THAT I HAVE RECEIVED
VERBAL AND WRITTEN ACCESS TO
HEALTHCARE INSTRUCTIONS, TO INCLUDE
ORAL HYGIENE INSTRUCTIONS. I HAVE HAD
THE OPPORTUNITY TO ASK QUESTIONS AND
TO HAVE MY QUESTIONS ANSWERED.

_Stephon Lindsay_
SIGNATURE

_207044_
AIS NUMBER

_B. Lile RN_
WITNESS

_4-05-07_
DATE

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PRISON HEALTH SERVICES (PHS)
ACCESS TO HEALTH CARE SERVICES
HOLMAN HEALTH CARE UNIT

Treatment for routine health services complaints are processed through nurse sick-call screening seven days a week. You must complete a sick-call screening form for requested health care evaluation.

Forms are located for your convenience in areas of easy access to you. Locked boxes are placed in the general housing areas or around the dinning hall for you to return your completed sick-call form for collection. Nurse's issue and collect sick call request screening slips in the segregation/ lock-up housing areas.

Various Doctor's clinics are held in the health unit Monday through Friday. If you are scheduled to be seen in a clinic you will be advised. Facility daily newsletters routinely post notices of who is to report when and where for health care services. If you have requested a health service remember to follow-up.

If you request health services and do not show for evaluation, you must sign a refusal of treatment form. If a health services appointment / clinic or treatment has been set for you and you do not show, you will also have to sign a refusal of treatment form. This is to let us know you have decided you are okay and no longer need to see us.

Nurses are in-house twenty-four hours a day, seven days a week for routine health services and programs. Nurses are also available for emergency care. Doctors are on-call twenty-four hours a day, seven days a week.

In-house medical staff reviews medical services requested over the weekend and on holidays. If your request is noted to be of a nature that will not wait until the next regularly scheduled evaluation (triage) time, you will be called to the health unit for further follow-up during this time period otherwise your request will be held until the next regularly scheduled evaluation process.

Medical emergencies such as those involving intense pain, potential life-threatening situations or when delaying treatment might cause permanent damage are dealt with at any time. Advise the nearest correctional officer of an emergency so prompt access to health services is provided.

Medications ordered for you by health services are to be picked up at the scheduled pill call/s established as the Doctor has ordered for you. If you fail to pick-up your medications as expected you will be called for counseling. If you continue to fail to pick-up your medications you will be required to sign a refusal of treatment form.

Remember that health services are a joint effort between the patient and the health care provider. We expect you to help us help you.

*Fee for service. You should understand that no one would be denied access to health services because they are unable to pay the $3.00 co-pay fee. You will be seen and services will be provided that are appropriate and deemed necessary. Health services



staff does not collect co-pay fees for health services nor do money collected go to the medical provider. A nurse visit or doctor visit charge of $3.00 is the co-pay. If you do not have money in your PMOD account and you are accessed a charge you will have a negative balance in your account until this is cleared. A negative balance will follow you from institution to institution upon transfer. When you seek health services you will be asked to sign the co-pay signature sheet. If it is deemed that you indeed do not owe for services your account will not be charged and if a false charge is made you will be refunded. Again we do not care if you have money to pay or not. We will see you. If you do have money and are eligible to be charged the co-pay fee this will occur. If the health unit initiates the request for you to be seen there is no charge.

Educational inservices are routinely scheduled. Please attend and participate. Notices of inservice topics, dates, and times will be published and posted in advance.

Complaints against health care are attempted to be resolved as soon as possible and as reasonably as possible. You may obtain a complaint form from the same place you obtain sick-call request slips and you may return these where you return your sick-call request slips. If your complaint is not resolved when health service person speaks with you, you may file a grievance. This form will be given to you by the health service person that has attempted to resolve the complaint. A complaint form must be initiated before a grievance form can be completed.

Let your family and loved ones know health services will not disclose your medical care through conversations with them. If we are contacted you should know that we will review your health records but you will have to let them know what you feel they should know about you. Understand we will assure your family and loved ones you have health services available. We will also tell them that they must go through you or the Department of Corrections for release of information and that you must go through the appropriate procedures and access health services and also follow medical service recommendations. Be compliant with the health services ordered for you by your health providers.

If you have had health services outside the prison setting and we do not have these records, you will need to sign release of records forms so we can obtain copies for placement in your institutional health record.

A physical is begun on your arrival into the prison system. You will be notified yearly thereafter when your next physical is scheduled.

Mental health services, dental services, medical services, chronic care clinics, and many other health services are available. We wish you a healthy stay. If you need medical service we want you to understand how these services are obtained.

Certain over the counter medications are available to you through canteen purchase. Medical service is not involved in canteen operations.

We follow doctor's orders when dispensing medication – dose and time. If over the counter medication is given by health services it is through the order of a doctor.

2

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS000004

**Population pill calls** at time institution are scheduled as listed below.  If you have medication ordered, report to the pill call your medication is to be dispensed at.

4:30 a.m.
11:00 a.m.
5:30 p.m.
9:00 p.m.

**Segregation lock-up pill call** times are as listed below.  Your medication will be issued to you on medication rounds.

3:30 a.m.
11:00 a.m.
9:00 p.m.

**Dental screening- ALL POPULATION AND SEGREGATION INMATES MUST COMPLETE A SICK CALL FORM FOR DENTAL ONLY.** THIS FORM WILL BE FORWARDED TO THE DENTAL DEPT.  DENTAL WILL SCHEDULE FOLLOW-UP TREATMENT WITH YOU.

In the event you are scheduled to be released from prison by way of parole/ probation or EOS, you will need to report to the hospital for a pre-release interview. We will make sure that your pre-release blood work is scheduled if not already completed. If you are on any medications, you will be advised when and how to pick up your final supply prior to your departure from Holman. We will also instruct you on how soon it will be necessary for you to follow up with any free world medical and/or mental health care. If you have any questions, you can address them at that time.

**If you have a question, request an answer.**

_Stephen Lindsay_  2/5/00  AIS# 207044
**Inmate Signature/ Date**

_signature_  2/5/00
**Witness Signature/ Date**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

3

PHS000005

PRISON HEALTH SERVICES (PHS)
ACCESS TO HEALTH CARE SERVICES
HOLMAN HEALTH CARE UNIT

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Treatment for routine health services complaints are processed through nurse sick-call screening seven days a week. You must complete a sick-call screening form for requested health care evaluation.

Forms are located for your convenience in areas of easy access to you. Locked boxes are placed in the general housing areas or around the dinning hall for you to return your completed sick-call form for collection. Nurse's issue and collect sick call request screening slips in the segregation/ lock-up housing areas.

Various Doctor's clinics are held in the health unit Monday through Friday. If you are scheduled to be seen in a clinic you will be advised. Facility daily newsletters routinely post notices of who is to report when and where for health care services. If you have requested a health service remember to follow-up.

If you request health services and do not show for evaluation, you must sign a refusal of treatment form. If a health services appointment / clinic or treatment has been set for you and you do not show, you will also have to sign a refusal of treatment form. This is to let us know you have decided you are okay and no longer need to see us.

Nurses are in-house twenty-four hours a day, seven days a week for routine health services and programs. Nurses are also available for emergency care. Doctors are on-call twenty-four hours a day, seven days a week.

In-house medical staff reviews medical services requested over the weekend and on holidays. If your request is noted to be of a nature that will not wait until the next regularly scheduled evaluation (triage) time, you will be called to the health unit for further follow-up during this time period otherwise your request will be held until the next regularly scheduled evaluation process.

Medical emergencies such as those involving intense pain, potential life-threatening situations or when delaying treatment might cause permanent damage are dealt with at any time. Advise the nearest correctional officer of an emergency so prompt access to health services is provided.

Medications ordered for you by health services are to be picked up at the scheduled pill call/s established as the Doctor has ordered for you. If you fail to pick-up your medications as expected you will be called for counseling. If you continue to fail to pick-up your medications you will be required to sign a refusal of treatment form.

Remember that health services are a joint effort between the patient and the health care provider. We expect you to help us help you.

*Fee for service. You should understand that no one would be denied access to health services because they are unable to pay the $3.00 co-pay fee. You will be seen and services will be provided that are appropriate and deemed necessary. Health services

1

staff does not collect co-pay fees for health services nor do money collected go to the medical provider. A nurse visit or doctor visit charge of $3.00 is the co-pay. If you do not have money in your PMOD account and you are accessed a charge you will have a negative balance in your account until this is cleared. A negative balance will follow you from institution to institution upon transfer. When you seek health services you will be asked to sign the co-pay signature sheet. If it is deemed that you indeed do not owe for services your account will not be charged and if a false charge is made you will be refunded. Again we do not care if you have money to pay or not. We will see you. If you do have money and are eligible to be charged the co-pay fee this will occur. If the health unit initiates the request for you to be seen there is no charge.

Educational inservices are routinely scheduled. Please attend and participate. Notices of inservice topics, dates, and times will be published and posted in advance.

Complaints against health care are attempted to be resolved as soon as possible and as reasonably as possible. You may obtain a complaint form from the same place you obtain sick-call request slips and you may return these where you return your sick-call request slips. If your complaint is not resolved when health service person speaks with you, you may file a grievance. This form will be given to you by the health service person that has attempted to resolve the complaint. A complaint form must be initiated before a grievance form can be completed.

Let your family and loved ones know health services will not disclose your medical care through conversations with them. If we are contacted you should know that we will review your health records but you will have to let them know what you feel they should know about you. Understand we will assure your family and loved ones you have health services available. We will also tell them that they must go through you or the Department of Corrections for release of information and that you must go through the appropriate procedures and access health services and also follow medical service recommendations. Be compliant with the health services ordered for you by your health providers.

If you have had health services outside the prison setting and we do not have these records, you will need to sign release of records forms so we can obtain copies for placement in your institutional health record.

A physical is begun on your arrival into the prison system. You will be notified yearly thereafter when your next physical is scheduled.

Mental health services, dental services, medical services, chronic care clinics, and many other health services are available. We wish you a healthy stay. If you need medical service we want you to understand how these services are obtained.

Certain over the counter medications are available to you through canteen purchase. Medical service is not involved in canteen operations.

We follow doctor's orders when dispensing medication – dose and time. If over the counter medication is given by health services it is through the order of a doctor.

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Population pill calls** at time institution are scheduled as listed below. If you have medication ordered, report to the pill call your medication is to be dispensed at.

4:30 a.m.
11:00 a.m.
5:30 p.m.
9:00 p.m.

**Segregation lock-up pill call** times are as listed below. Your medication will be issued to you on medication rounds.

3:30 a.m.
11:00 a.m.
9:00 p.m.

**Dental screening-** <u>**ALL POPULATION AND SEGREGATION INMATES**</u> MUST COMPLETE A SICK CALL FORM FOR DENTAL ONLY. THIS FORM WILL BE FORWARDED TO THE DENTAL DEPT. DENTAL WILL SCHEDULE FOLLOW-UP TREATMENT WITH YOU.

In the event you are scheduled to be released from prison by way of parole/ probation or EOS, you will need to report to the hospital for a pre-release interview. We will make sure that your pre-release blood work is scheduled if not already completed. If you are on any medications, you will be advised when and how to pick up your final supply prior to your departure from Holman. We will also instruct you on how soon it will be necessary for you to follow up with any free world medical and/or mental health care. If you have any questions, you can address them at that time.

**If you have a question, request an answer.**

_Stephen Lindsay_
**Inmate Signature/ Date**

_S. Johnson LPN 9-2-04_
**Witness Signature/ Date**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS000008

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTOCOPIED

Physical

N610

## ALABAMA DEPARTMENT OF CORRECTIONS

### RECEIVING SCREENING FORM

Inmate's Name: _LINDSLAY, STEPHON B/20704Y_ Date: _4/5/07_ Time: _12:55pm._

DOB: _9-6-?9_ Officer: _Mike T. Brunson_ Institution: _VCF_

| | *Receiving Officer's Visual Opinion* | Yes | No |
|---|---|---|---|
| 1. | Is the inmate conscious? | X | |
| 2. | Does the inmate have any obvious pain or bleeding/other symptoms suggesting the need for emergency services? | | ✓ |
| 3. | Are there any visible signs of trauma or illness requiring immediate emergency treatment or doctor's care? | | ✓ |
| 4. | Any obvious fever, swollen lymph nodes, jaundice, or other evidence of infection which might spread through the institution? | | ✓ |
| 5. | Is the skin in poor condition or show signs of vermin or rashes? | | ✓ |
| 6. | Does the inmate appear to be under the influence of alcohol or drugs? | | ✓ |
| 7. | Are there any visible signs of alcohol or drug withdrawl? (extreme perspiration, shakes, nausea, pinpoint pupils, etc.) | | ✓ |
| 8. | Is the inmate making any verbal threats to staff or other inmates? | | ✓ |
| 9. | Is the inmate carrying any medication or report that he is on any medication which must be continuously administered or available? | | ✓ |
| 10. | Does the inmate have any obvious physical handicaps? | | ✓ |

*If the answer is YES to any questions from 2-10 above, specify WHY in section below.*

| | | Yes | No |
|---|---|---|---|
| 11. | Are you presently taking medication for diabetes, heart disease, seizure, arthritis, asthma, ulcers, high blood pressure or psychiatric disorder? _Cold meds._ | X | |
| 12. | Are you on any special diet prescribed by a physician? (if YES, what type?) | | ✓ |
| 13. | Do you have a history of venereal disease or abnormal discharge? | | ✓ |
| 14. | Have you recently been hospitalized or recently seen a medical or psychiatric doctor for any illness? _Jan. 9th   wrist Broken._ | ✓ | |
| 15. | Have you ever attempted suicide? | X | |
| | (If YES, When? _Age 10-14_ How? _cut wrist._ | | |
| 16. | Do you want to do any harm to yourself now? | | X |

FOR PROFESSIONAL USE ONLY
## CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| | Yes | No | No Response |
|---|---|---|---|
| 17. Do you want to talk to a mental health counselor? | *K.* | | |
| 18. Are you allergic to any medication? | | *K.* | |
| 19. Have you recently fainted or had a head injury? *Jan 8th 2007* | *K.* | | |
| 20. Do you have epilepsy? | | ✓ | |
| 21. Do you have a history of tuberculosis? | | ✓ | |
| 22. Do you have diabetes? | | ✓ | |
| 23. Do you have hepatitis? | | ✓ | |
| 24. Do you have a painful dental problem? | | ✓ | |
| 25. Do you have any medical problem we should know about? | | ✓ | |
| 26. Do you have a past (alcohol) or drug history? | *X.* | | |

What type? _____ How much use? *Heavy*

For how long? _____ *9 yrs.* Last time used? _____ *21 yr old.*

*Comments:*  (Unusual behavior, etc.)

_____

_____

*For the Officer:*

| | |
|---|---|
| 27. Was the new inmate briefed on sick/dental call procedures? | *yes* |
| 28. This inmate was:  a. Released for normal processing | *yes* |
| b. Referred to appropriate health care unit | — |
| c. Immediately sent to health care unit | — |

*Miff T. Brun    cct*
**Officer's Signature**

*Note:* This form is completed on inter and intra system transfers at receiving and will be filed in the inmates medical jacket to comply with ACA Standards 2-4289, 2-4290 and AMA Standard 140.

*Stephon Lindsay  207044*
**Inmate's Signature**

PHS000010

# BCCF
(INSTITUTION)

## SEGREGATION UNIT RECORD SHEET

INMATE NAME: Stephon Lindsey   AIS NO. B/207044   CELL: B1-11 B
VIOLATION OR REASON: 29   ADMITTANCE AUTH. BY: Lt. McClaney
DATE & TIME RECEIVED 1-8-07 @ 4:53 PM   DATE & TIME RELEASED
PERTINENT INFORMATION: assault on a person associated w/ the D.O.C. / pv

| DATE | SHIFT | MEALS | | | SH | EXERCISE | MEDI-CAL VISIT | PSYCH VISIT | COMMENTS* | OIC SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | B | D | S | | | | | | |
| March 5, 07 | MORN | Y | | | No | None | mlk | None | Ø meds | R. Johnson co |
| | DAY | | Y | | NO | Refused | Jenner | NO | Ø Meds. | J. Johnson, co |
| | EVE | | | Y | N | N | ng wil | | Ø meds | Hall |
| MON | | | | | | | | | | |
| March 6, 07 | MORN | Y | | | No | None | Keig | None | Ø med | R Johnson co |
| | DAY | | Y | | NO | refused | Neu | NO | Ø meds | J. Johnson co |
| | EVE | | | | N | | Pen | N | Ø meds | Kim, 07 |
| TUE | | | | | | | | | | |
| March 7, 07 | MORN | Y | | | No | None | Stralso | None | Ø Meds | R Johnson co |
| | DAY | | Y | | NO | Refused | Chan | NO | Ø meds | Hamm, O7 |
| | EVE | | | | N | N | Pens | N | Ø meds | Nunn, 07 |
| WED | | | | | | | | | | |
| March 8, 07 | MORN | Y | | | N | N | Jarrison | N | Ø Meds | R. Johnson, CO |
| | DAY | N | N | N | N | refused | | N | Ø meds | B. Ellis |
| | EVE | | | Y | Y | none | Penly | none | Ø meds | Ypdalen, co |
| THUR | | | | | | | | | | |
| March 9, 07 | MORN | Y | N | N | N | N | Jarrison | N | Ø Meds | B. Ellis, CO1 |
| | DAY | | Y | | NO | Refused | Wilm | NO | Ø meds | J. Johnson Co |
| | EVE | | | Y | N | N | RR Harris | | Meds Rec | S. Calhoun co1 |
| FRI | | | | | | | | | | |
| March 10, 07 | MORN | N | | | N | N | Keing | N | Meds given | R. Johnson, CO |
| | DAY | | Y | | NO | Refused | Jerrigr | NO | Med giver | J. Johnson, co |
| | EVE | | | Y | yes | none | Pain | none | Ø meds | Ypdalen, co |
| SAT | | | | | | | | | | |
| March 11, 07 | MORN | N | | | No | None | Keing | None | meds given | R. Johnson co |
| | DAY | | Y | | NO | Refused | Mahl | NO | meds need | J. Johnson, Co |
| | EVE | | | Y | | | Pain | N | Med given | R. Perry co Sgt |
| SUN | | | | | | | | | | |

Pertinent Info: i.e. – Epileptic, Diabetic, Suicidal, Assaultive
Meals/SH: Shower - Yes (Y) or NO (N), Refused (R)
Exercise: Enter actual time period and Inside or Outside
Medical: Physician will sign each time the inmate is seen.
Psych: Psychological Counselor will sign each time the inmate is seen.
Comments: i.e. - Conduct, attitude * Use reverse side for additional comments and include date, signature, and title.
OIC Signature: OIC must sign all record sheets each shift.

ADOC Form 434-A, December 22, 2004

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

9 of 12

AR 434 - December 22, 2004

PHS000011

# BCCF
## (INSTITUTION)

## SEGREGATION UNIT RECORD SHEET

INMATE NAME: Stephon Lindsey  AIS NO. B/207044  CELL: B1-11B
VIOLATION OR REASON: 29  ADMITTANCE AUTH. BY: U. McCraney
DATE & TIME RECEIVED: 1-8-07 @ 4:58 PM  DATE & TIME RELEASED
PERTINENT INFORMATION: assault on a person associated w/ the D.O.C. /pv

| DATE | SHIFT | MEALS | | | SH | EXERCISE | MEDI-CAL VISIT | PSYCH VISIT | COMMENTS* | OIC SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | B | D | S | | | | | | |
| Feb. 26,07 MON | MORN | Y | | | No | None | Jernigan | None | 0 Meds | R. Johnson co |
| | DAY | | Y | | NO | refused | LA | NO | 0 meds | (illegible) CO |
| | EVE | | | Y | N | N | Roberts | N | 0 meds | (illegible) CO |
| Feb. 27,07 TUE | MORN | Y | | | No | None | Jernigan | None | 0 Meds | R. Johnson co |
| | DAY | | Y | | NO | Refused | Park YN | NO | 0 meds | J. Johnson, co |
| | EVE | | | Y | yes | use | Roberts | none | 0 meds | (illegible) co |
| Feb. 28,07 WED | MORN | Y | | | No | None | Jernigan | None | 0 Meds | R. Johnson co |
| | DAY | | Y | | NO | Refused | (illegible) | N | 0 meds | (illegible) CO |
| | EVE | | | Y | N | N | Roberts | N | 0 meds | (illegible) CO |
| March 1,07 THUR | MORN | N | | | No | None | Jernigan | None | 0 Meds | R. Johnson co |
| | DAY | N | Y | N | N | refused | Carsh | | 0 meds | (illegible) |
| | EVE | | Y | yes | Done | (illegible) | none | 0 Meds | (illegible) co |
| March 2,07 FRI | MORN | Y | N | N | N | N | Roberts | N | 0 Meds | (illegible) COI |
| | DAY | | Y | | NO | Refused | John (illegible) | | 0 meds | J. Johnson, co |
| | EVE | | | Y | NO | NO | Roberts | NO | 0 meds | (illegible) CO |
| March 3,07 SAT | MORN | N | N | N | | N | (illegible) | N | 0 meds | (illegible) CO |
| | DAY | | | Y | NO | Refused | (illegible) | NO | 0 med | J. Johnson, co |
| | EVE | | | Y | N | N | (illegible) | N | 0 Meds | J. Calhoun co |
| March 4,07 SUN | MORN | N | | | No | None | (illegible) | None | (illegible) | R. Johnson co |
| | DAY | | Y | | NO | Refused | (illegible) | NO | 0 meds | J. Johnson, co |
| | EVE | | | | | N | (illegible) | N | 0 meds | (illegible) CO |

Pertinent Info: i.e. - Epileptic, Diabetic, Suicidal, Assaultive
Meals/SH: Shower - Yes (Y) or NO (N), Refused (R)
Exercise: Enter actual time period and Inside or Outside
Medical: Physician will sign each time the inmate is seen.
Psych: Psychological Counselor will sign each time the inmate is seen.
Comments: i.e. - Conduct, attitude * Use reverse side for additional comments and include date, signature, and title.
OIC Signature: OIC must sign all record sheets each shift.

ADOC Form 434-A, December 22, 2004


FOR PROFESSIONAL USE ONLY 9 of 12
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

AR 434 - December 22, 2004

# BCCF
### (INSTITUTION)

## SEGREGATION UNIT RECORD SHEET

INMATE NAME: Stephon Lindsey  AIS NO. B/207044  CELL: B1-11 B
VIOLATION OR REASON: 29  ADMITTANCE AUTH. BY: Lt. McCrancy
DATE & TIME RECEIVED 1-8-07 @ 4:53 PM  DATE & TIME RELEASED
PERTINENT INFORMATION: assault on a person associated w/ the D.O.C.

| DATE | SHIFT | MEALS | | | | EXERCISE | MEDI-CAL VISIT | PSYCH VISIT | COMMENTS* | OIC SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | B | D | S | SH | | | | | |
| Feb. 19, 07 MON | MORN | N | | | No | None | 1030 am | None | 0 meds | R. Johnson co |
| | DAY | Y | | | NO | refused | X | NO | 0 med | R. Wills, co |
| | EVE | | | Y | N | N | 1030 RN | N | 0 meds | J. Park, CO |
| Feb. 20, 07 TUE | MORN | Y | | | No | None | | None | 0 meds | R. Johnson co |
| | DAY | | | Y | NO | Refused | Hernigan | NO | 0 meds | J. Johnson, co |
| | EVE | | | Y | yes | none | RN | none | 0 meds | J. Darden, ca |
| Feb. 21, 07 WED | MORN | Y | | | No | None | Hernigan | None | 0 med | R. Johnson co |
| | DAY | | | Y | NO | Refused | P.O.A. | Mlty | 0 meds | P. Newman L.P.D |
| | EVE | | | Y | N | N | Ruben's | | 0 meds | A. Williams/CO |
| Feb. 22, 07 THUR | MORN | N | | | No | None | Hernigan | None | 0 Meds | R. Johnson co |
| | DAY | | Y | | N | R | Hernigan | N | 0 meds | S. Smart co |
| | EVE | | | Y | Y | N | RN | N | 0 meds | Pennington CO |
| Feb. 23, 07 FRI | MORN | Y | N | N | N | N | Hernigan | N | 0 Meds | R. Ellis, CO |
| | DAY | | Y | | N | refused | NP Winn | Mandy | 0 med | C. Amb, CO |
| | EVE | | | Y | no | none | Ruben's | none | 0 meds | J. Darden, co |
| Feb. 24, 07 SAT | MORN | N | | | NO | NONE | Hernigan | NO NP | 0 med | W. Baldwin Co |
| | DAY | Y | Y | | NO | Cancelled | None | NO | 0 meds | R. Wills, CO |
| | EVE | | | Y | yes | none | RN | none | 0 meds | J. Darden, co |
| Feb. 25, 07 SUN | MORN | N | | | No | None | Hernigan | None | 0 meds | R. Johnson co |
| | DAY | Y | | | NO | Cancelled | None | NO | 0 meds | R. Wills, CO |
| | EVE | | | Y | R | N | Parrish HS | | R 0 med | R. Parry, Sgt |

**Pertinent Info:** i.e. - Epileptic, Diabetic, Suicidal, Assaultive
**Meals/SH:** Shower - Yes (Y) or NO (N), Refused (R)
**Exercise:** Enter actual time period and Inside or Outside
**Medical:** Physician will sign each time the inmate is seen.
**Psych:** Psychological Counselor will sign each time the inmate is seen.
**Comments:** i.e. - Conduct, attitude * Use reverse side for additional comments and include date, signature, and title.
**OIC Signature:** OIC must sign all record sheets each shift.

ADOC Form 434-A, December 22, 2004


FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

9 of 12

AR 434 - December 22, 2004

PHS000013

# BCCF
## (INSTITUTION)

## SEGREGATION UNIT RECORD SHEET

INMATE NAME: Stephon Lindsey    AIS NO. B/207044    CELL: B1-11B
VIOLATION OR REASON: 29    ADMITTANCE AUTH. BY: LE. McCraney
DATE & TIME RECEIVED 1-6-07 @ 4:53 PM    DATE & TIME RELEASED
PERTINENT INFORMATION assault on a person associated w/ the D.O.C

| DATE | SHIFT | MEALS | | | | EXERCISE | MEDI-CAL VISIT | PSYCH VISIT | COMMENTS* | OIC SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | B | D | S | SH | | | | | |
| Feb. 12, 07 MON | MORN | Y | — | | No | None | Jernigan | None | Ø Meds | R. Johnson cu |
| | DAY | | Y | | No | Refused | t | None | Ø mady | C. Otis COJ |
| | EVE | | | Y | N | N | Roberts | N | Ø meds | Braxton Col |
| Feb. 13, 07 TUE | MORN | Y | — | | No | None | Jernigar | None | Ø Meds | R. Johnson cu |
| | DAY | | Y | | NO | NO | Jegliss | ND | Ø meds | T. Johnson, co |
| | EVE | | | Y | | | Roberts | | Ø meds | R. Perry con Sgt. |
| Feb. 14, 07 WED | MORN | Y | | | No | None | Jernigar | None | Ø Meds | R. Johnson cu |
| | DAY | | Y | — | NO | Refused | Chandler kr | | Ø meds | W. Blackmer |
| | EVE | | | — | | | Roberts | | Ø meds | Alison C. S |
| Feb. 15, 07 THUR | MORN | Y | | | No | None | Jernigan | None | Ø Meds | R. Johnson cu |
| | DAY | | Y | | No | Refused | J. Moon | None | Ørills Recd meal | N. Moon co |
| | EVE | | | Y | Y | N | Brooks | N | Ø meds | Maddox |
| Feb. 16, 07 FRI | MORN | Y | | | NO | NO | Bloom | NO | Ø med | V. Baldwin cu |
| | DAY | | Y | | No | refused | Moon | None | Ø med | C. Otis, CO |
| | EVE | — | — | Y | us | None | Pittman | Harry | Ø meds | Greeley, co |
| Feb. 17, 07 SAT | MORN | N | | | ND | NO | Jernigan | NO | Ø Meds | V. Baldwin cu |
| | DAY | | Y | | ND | NO | Jernigan | NO | Ø Meds | J. Johnson co |
| | EVE | | | Y | N | N | Roberts | N | Ø meds | Alims C. S |
| Feb. 18, 07 SUN | MORN | N | | | N | N | Moon | N | Clan r | M. Ebarb cse |
| | DAY | | Y | | N | refused | Jernigan | N | Ø Meds | C. Otis, CO |
| | EVE | — | — | Y | | N | Brooks | N | Ø meds | Ryan, CO |

Pertinent Info: i.e. - Epileptic, Diabetic, Suicidal, Assaultive
Meals/SH: Shower - Yes (Y) or NO (N), Refused (R)
Exercise: Enter actual time period and Inside or Outside
Medical: Physician will sign each time the inmate is seen.
Psych: Psychological Counselor will sign each time the inmate is seen.
Comments: i.e. - Conduct, attitude * Use reverse side for additional comments and include date, signature, and title.
OIC Signature: OIC must sign all record sheets each shift.

ADOC Form 434-A, December 22, 2004

9 of 12

AR 434 - December 22, 2004


FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS000014

# BCCF
### (INSTITUTION)

## SEGREGATION UNIT RECORD SHEET

INMATE NAME: Stephon Lindsey    AIS NO. B/207 044    CELL: B1-11 B
VIOLATION OR REASON: 29    ADMITTANCE AUTH. BY: H. McCraney
DATE & TIME RECEIVED 1-8-07 @ 4:53 PM    DATE & TIME RELEASED
PERTINENT INFORMATION: Assault on a person associated w/ the D.O.C.

| DATE | SHIFT | MEALS | | | SH | EXERCISE | MEDI-CAL VISIT | PSYCH VISIT | COMMENTS* | OIC SIGNATURE |
|------|-------|---|---|---|----|----------|------|------|----------|--------------|
| | | B | D | S | | | | | | |
| Feb. 5, 07 MON | MORN | Y | | | No | None | JC | None | Ø meal | R. Johnson cl |
| | DAY | | Y | | no | no | JH | | ↓ | J. Johnson co |
| | EVE | | | Y | N | N | JHTRN | N | Ø Meds | Pennington COI |
| Feb. 6, 07 TUE | MORN | Y | | | No | None | Jernigan | None | Ø meds | R. Johnson cl |
| | DAY | | Y | | NO | Refused | Jernigan | NO | Ø Meds | J. Johnson co |
| | EVE | — | | Y | yes | none | Roberts | none | Ø meds | Yrackens cs |
| Feb. 7, 07 WED | MORN | Y | | | No | None | Jernigan | None | Ø Meds | R. Johnson cl |
| | DAY | — | Y | | NO | Refused | Jernigan/hd | NO | Ø meds | N Myers ry |
| | EVE | | | Y | N | N | Roberts | N | Ø meds | S. Calhoun COI |
| Feb. 8, 07 THUR | MORN | Y | | | No | None | Jernigan | None | Ø Meds | R. Johnson cl |
| | DAY | | Y | | NO | Refused | Intry | None | Rec'd Meal med sqw | N Morris co |
| | EVE | — | | Y | Yes | NO | Roberts | NO | Ø meds Ø meds | CJ Johnson c |
| Feb. 9, 07 FRI | MORN | Y | N | N | | JerNoon | N | Ø Meds | A Ellis COI |
| | DAY | | Y | | NO | Refused Prep | None | Ø meds Rec'd meal | J. Morris co. |
| | EVE | | | Y | NO | none | Roberts | none | Ø meds | Yrackens co |
| Feb. 10, 07 SAT | MORN | N | | | N | N | JHegan | N | Ø meds | A Hood COI |
| | DAY | | Y | | NO | Refused w/ Shwr | JHwinn | NO | Ø meds | J. Johnson co |
| | EVE | | | Y | N | N | Dryan | N | Ø meds | S. Calhoun COI |
| Feb. 11, 07 SUN | MORN | N | | | No | None | JHegan | None | Ø meds | R. Johnson cl |
| | DAY | | Y | | NO | Refused | H Daly | NO | Ø meds | J. Johnson co |
| | EVE | | | Y | | | Dryan | N | Ø Meds | Ryan COI |

**Pertinent Info:** i.e. - Epileptic, Diabetic, Suicidal, Assaultive
**Meals/SH:** Shower - Yes (Y) or NO (N), Refused (R)
**Exercise:** Enter actual time period and Inside or Outside
**Medical:** Physician will sign each time the inmate is seen.
**Psych:** Psychological Counselor will sign each time the inmate is seen.
**Comments:** i.e. - Conduct, attitude * Use reverse side for additional comments and include date, signature, and title.

**OIC Signature:** OIC must sign all record sheets each shift.

ADOC Form 434-A, December 22, 2004

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

AR 434 – December 22, 2004

PHS000015



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

# SPECIAL NEEDS COMMUNICATION FORM

**Date:** _1/20/07_

**To:** _DOC_

**From:** _HCU_

**Inmate Name:** _Lindsay Stephen_  **ID#:** _207044_

**The following action is recommended for medical reasons:**

1.  House in _____

2.  Medical Isolation _____

3.  Work restrictions _____

4.  May have extra _____ until _____

5.  Other _____

**Comments:**

_____ 1. Bottom Bunk Bed x 180 days
                              (1/20 – 7/20/07)_

_____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Date:** _1/20/07_ **MD Signature:** _Dr. Siddiq / SL_     **Time:** _2000_

60418

PHS000016

PHS000170

# SEGREGATION HEALTH LOG

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

Name: Lindsey, Stephon    AIS# 00 7044    cell 13D110    14M 8

Name Key: NC No Complaints
C Complaint (Provide Documentation in Complaint Section)

| Year 05 / Time | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 3 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| January |  | NC |  | NC |  |  | NC |  | NC |  |  | NC |  | NC |  |  | NC |  | NC |  | NC |  |  | NC |  | NC |  |  |  |  | NC |
| Nurse |  | CP |  | CP |  |  | CP |  | MB |  |  | BW |  | BW |  |  | BW |  | BW |  | BW |  |  | BW |  | BW |  |  |  |  | BW |
| February | NC | NC |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X | X |
| Nurse | Y | Y |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X | Y |
| March |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| April |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |
| May |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| June |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |
| July |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| August |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |
| September |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| October |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| November |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| December |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Nurse |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

Nurse's Signature and Initials:

C.Dickens  un  CP
MSmachood  upo  MB
B.Willes  BW



60527-AL

PHS0000l8



# PHS

## SEGREGATION HEALTH LOG

Name _Holman_   _Lindsey Stephen_   AIS# _207044_   Cell _____

Name Key: NC No Complaints
C Complaint (Provide Documentation in Complaint Section)

| Year 2004 | Time | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 3 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| January | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| February | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| March | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| April | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | NC | NC | NC | NC | NC | NC | NC | NC | NC | NC | NC | NC | NC | NC | NC | NC | NC | |
| May | | | | | | | | | | | | | | | | | | | | | NC | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| June | | NC | NC | NC | NC | NC | NC | NC | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| July | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| August | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| September | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| October | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| November | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| December | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nurse | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Nurse's Signature and Initials: _____

# Disciplinary Segregation Medical Documentation

PRISON HEALTH SERVICE

| Initial Assessment | Vital Signs: | BP | 120/80 | 98 | P | 88 | | R | 20 |

| | | Describe: |
|---|---|---|
| Signs of Trauma | ✓ No ○ Yes | |
| Medical/Mental Health Complaints | ✓ No ○ Yes | Describe: |
| Existing Medical/Mental Health Conditions | ○ No ○ Yes | Describe: |

| Signature | | Date | Time |
|---|---|---|---|
| _McClain_ | | | |

| Date/Time | 9/6/04 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Crying | ∅ | | | | | | | | | |
| Signs of Trauma | ∅ | | | | | | | | | |
| Oriented x's 3 | ✓ | | | | | | | | | |
| Withdrawn | ∅ | | | | | | | | | |
| Hostile/Angry | ∅ | | | | | | | | | |
| Quiet | ✓ | | | | | | | | | |
| Manic Behavior | ∅ | | | | | | | | | |
| ____ies Complaint | ✓ | | | | | | | | | |
| Nurse's Signature | _McClain_ | | | | | | | | | |

**Comments (By Date)**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Inmate Name | ID#/DOB | Race | Location |
|---|---|---|---|
| Lindsay, Stephen | 207044  9/6/77 | B/m | Draper |

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSTION DATE | TIME | ORIGINATING FACILITY _Draper_ | ☐ SICK CALL   ☐ EMERGENCY |
|---|---|---|---|
| 04 /09 /04 | 11:25 AM/PM | ☐ SIR  ☐ PDL  ☐ ESCAPEE  ☐ ___ | ☐ OUTPATIENT |

| ALLERGIES  NKA | CONDITION ON ADMISSION  ☑ GOOD  ☐ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA |
|---|---|

VITAL SIGNS: TEMP _98.4_  ⟨ORAL⟩ RECTAL  RESP. _20_  PULSE _88_  B/P _120/80_  RECHECK IF SYSTOLIC <100> 50  _/_

| NATURE OF INJURY OR ILLNESS | ABRASION /// | CONTUSION # | BURN xx/xx | FRACTURE Z/Z | LACERATION / ___ SUTURES |
|---|---|---|---|---|---|

S. body check for Seg placement by Reg. Doc.

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

O. No scratches, bruises or. lacerations noted.

A. Alterations none

P. None

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | ☑ DOC | CONDITION ON DISCHARGE |
|---|---|---|---|---|
| 04 /09 /04 | 11:35 AM/PM | Seg | ☐ AMBULENCE  ☐ | ☑ SATISFACTORY  ☐ POOR  ☐ FAIR  ☐ CRITICAL |

| NURSE'S SIGNATURE ___ | DATE 4/09/04 | PHYSICIAN'S SIGNATURE ___ | DATE 4/9/04 | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE)  Lindsay, Stephon | DOC# 207044 | DOB 9/6/77 | R/S B/m | FAC. Draper |
|---|---|---|---|---|

PHS-MD-70007    (White - Record Copy, Yellow - Pharmacy Copy)

PHS000020

**EMERGENCY**

PHS
PRISON
HEALTH
SERVICES
INCORPORATED

| ADMISSION DATE 4/6/04 | TIME 12:30 AM ☑PM | ORIGINATING FACILITY _Draper_ ☐SIR ☐PDL ☐ESCAPEE ☐ | | ☐ SICK CALL ☐ EMERGENCY ☑OUTPATIENT |
|---|---|---|---|---|

| ALLERGIES NKA | CONDITION ON ADMISSION ☑GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |
|---|---|

| VITAL SIGNS: TEMP 100.3 ⓞRAL RECTAL | RESP 20 164 | PULSE 110 98% | B/P 120 90 | RECHECK IF SYSTOLIC <100> 50 |
|---|---|---|---|---|

| NATURE OF INJURY OR ILLNESS | | | | |
|---|---|---|---|---|
| | ABRASION /// | CONTUSION # | BURN XX XX | FRACTURE Z Z | LACERATION / SUTURES |

S- Body Chart per request of
DOC. Inmate alleges he was
struck by a DOC official.



PROFILE RIGHT OR LEFT

RIGHT OR LEFT

PHYSICAL EXAMINATION

O-Ambulatory to HCU c Officer
Daniels. VSS noted. Inmate
very dark skinned but no
swelling or any bruising noted
to Knee of L side. No other
injuries noted. Inmate denies
any others.
A-1 Body Chart

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| P- No tx indicated @ this time. | | |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| DIAGNOSIS |
|---|

| INSTRUCTIONS TO PATIENT |
|---|

| DISCHARGE DATE 4/6/04 | TIME 1:30 ☐AM ☑PM | RELEASE / TRANSFERRED TO DCC | ☑DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☑SATISFACTORY ☐ POOR ☐FAIR ☐ CRITICAL |
|---|---|---|---|---|

| NURSE'S SIGNATURE G. Amy RN | DATE 4/6/04 | PHYSICIAN'S SIGNATURE | DATE 4/6/04 | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) Lindsay, Stephen | DOC# 207044 | DOB 9-6-11 | R/S BM | FAC. 207044 |
|---|---|---|---|---|

PHS MD 70007                    (White – Record Copy, Yellow – Pharmacy Copy

PHS000021

PHS000022

NAF...RE

## MEDICAL SEGREGATION LOG

Name: _Lindsay Stephen_   AIS _2 01044_   DOB: _____   Unit: _Ventress_   Year: _2003_

| MONTH | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JANUARY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| FEBRUARY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MARCH | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| PRIL | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MAY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| JUNE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| JULY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| AUGUST | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| SEPTEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| OCTOBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| NOBEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DECEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

NURSES SIGN AND INITIAL

Key: M-Medical
D-Dental
P-Psychiatric
N/C-No-Complaints

NC072

PHS000023

# Disciplinar  Segregation Medical  ocumentation

| **Initial Assessment** | Vital Signs: | BP | | P. | | | R |
|---|---|---|---|---|---|---|---|

| S   s of Trauma   ○ No   ○ Yes | Describe: |
|---|---|
| edical/Mental Health Complaints   ○ No   ○ Yes | Describe: |
| Existing Medical/Mental Health Conditions   ○ No   ○ Yes | Describe: |

| Signature | | Date | Time |
|---|---|---|---|

| Date/Time | 1/2/03 7-3 | 4/1/03 11 | 4-3-03 11 | 4-3-03 7-3 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Crying | | | | | | | | | | | | | |
| Signs of Trauma | | | | | | | | | | | | | |
| Oriented x's 3 | ✓ | | / | ✓ | | | | | | | | | |
| Withdrawn | | | | | | | | | | | | | |
| Hostile/Angry | | | | | | | | | | | | | |
| Quiet | ✓ | | / | ✓ | | | | | | | | | |
| Manic Behavior | | | | | | | | | | | | | |
| Denies Complaint | ✓ | | / | ✓ | | | | | | | | | |
| N     's Signature | C. Houston LPN | Lellawell J | Johnson | | | | | | | | | | |

Comments (By Date)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| nmate Name  Lindsey, Stephen | ID#/DOB  207044 | Race  B | Location  VCF |
|---|---|---|---|

Disciplinary Segregation Medical Documentation

NC05

# Disciplinary Segregation Medical Documentation

| **Initial Assessment** | Vital Signs: | BP 130/80 | | P 96 | WT 172 3/4 | R 20 | T 99.2 |
|---|---|---|---|---|---|---|---|

| | Describe: |
|---|---|
| Signs of Trauma: ● No ○ Yes | |
| Medical/Mental Health Complaints ● No ○ Yes | Describe: |
| Existing Medical/Mental Health Conditions ● No ○ Yes | Describe: |

Signature _M Benefield_  
Date 3-13-08   Time 1330

| Date/Time | 3-13 7-3 | | 11-7 | 7-3 3-14 | 3-14 3-15 | | 3-15 7-3 | | | | 3-16 7-3 | 3-16 3-11 | 3-17 11-7 | 7-3 | 3-17 3-11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Crying | | | | | | | | | | | | | | | |
| Signs of Trauma | | | | | | | | | | | | | | | |
| Oriented x's 3 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | | | ✓ | | ✓ | ✓ | |
| Withdrawn | | | | | | | | | | | | | | | |
| Hostile/Angry | | | | | | | | | | | | | | | ✓ |
| Quiet | ✓ | ✓ | ✓ | ✓ | | ✓ | | ✓ | | | ✓ | | | | |
| Manic Behavior | | | | | | | | | | | | | | | |
| Denies Complaint | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | | | ✓ | | ✓ | ✓ | |

Nurse's Signature

Comments (By Date)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Inmate Name _Lindsey, Stephon_ | ID#/DOB 207044 / 9-6-77 | Race B/m | Location VCF |
|---|---|---|---|

Disciplinary Segregation Medical Documentation

PHS000026

# DEPARTMENT OF CORRECTIONS

Wt. 172 3/4

## EMERGENCY/ *Unschedule* (OTHER) TREATMENT RECORD

Dis

| DATE 3-13-03 | TIME 13:15 AM (PM) | FACILITY *Ventres* ☐ SIR ☐ PDL ☐ ESCAPEE ☐ _____ | ☐ EMERGENCY ☑ OTHER |
|---|---|---|---|

| ALLERGIES | NCA | CONDITION ON ADMISSION ☐ GOOD ☑ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |
|---|---|---|

VITAL SIGNS: TEMP 99² (ORAL) RECTAL    RESP. 20    PULSE 96    B/P 130/80    RECHECK IF SYSTOLIC _____ <100 > 50

| NATURE OF INJURY OR ILLNESS | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE z z | LACERATION/ SUTURES |
|---|---|---|---|---|---|

O- BM brought to HCU by
Officer K Cargle for body
chart - inmate examined
without shirt - no cuts,
scrapes, bruises or
abrasion noted

A. DOC Body Chart

**PHYSICAL EXAMINATION**

P. Inmate returned
to custody g Officer
Cargle to be placed
in disciplinary Seg-
regation

**ORDERS, MEDICATION, etc.**

**DIAGNOSIS**

CONFIDENTIAL RECORD
NOT TO BE XEROX COPIED

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE 3/13/03 | TIME 13:21 AM (PM) | RELEASE/TRANSFERRED TO ☑ DOC ☐ AMBULANCE ☐ 3-13-03 | CONDITION ON DISCHARGE ☐ SATISFACTORY ☐ POOR ☑ FAIR ☐ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE *Mcneill* | DATE 3/13/03 | PHYSICIAN'S SIGNATURE | DATE 3/13/03 | CONSULTATION |
|---|---|---|---|---|

| PATIENT'S NAME (LAST, FIRST, MIDDLE) *Lindsey, Stephon* | AGE 27 | DATE OF BIRTH 9 16 77 | R/S B/m | AIS # 207044 |
|---|---|---|---|---|

NC 041          ORIGINAL - MEDICAL RECORD, YELLOW - TRANSFER AGENT

## NAPHCARE
## AMINISTRATIVE SEGREGATION LOG

Name: Lindsay Stephen    AIS 707044    DOB _____ UNIT 13-47    YEAR 200)

| MONTH | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JANUARY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| FEBRUARY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MARCH | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| APRIL | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MAY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| JUNE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| JULY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| AUGUST | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| SEPTEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| OCTOBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| NOVEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DECEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

CONFIDENTIAL RECORD
FOR PROFESSIONAL USE ONLY
NOT TO BE PHOTO COPIED

NURSES SIGN AND INITIAL

KEY:    M – MEDICAL
       D – DENTAL
       P – PSYCHIATRIC
       N/C-NO COMPLAINTS

PHS000026

N. HCARE

## AMINISTRATIVE SEGREGATION LOG

Name: Lindsey Stephen    AIS 202044    DOB _____    UNIT C/S    YEAR 2001

| MONTH | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JANUARY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| FEBRUARY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MARCH | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| APRIL | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MAY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| JUNE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| JULY | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| AUGUST | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| SEPTEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| OCTOBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| NOVEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DECEMBER | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

CONFIDENTIAL RECORD
FOR PROFESSIONAL USE ONLY
NOT TO BE PHOTO COPIED

NURSES SIGN AND INITIAL

R. Blanchette, LPN R.B. _____

_____ NRC

KEY:    M – MEDICAL
        D – DENTAL
        P – PSYCHIATRIC
        N/C – NO COMPLAINTS

# DISCIPLINARY SEGREGATION MEDICAL DOCUMENTATION

| INITIAL ASSESSMENT | VITAL SIGNS: | BP 130/76 | P 80 | R 20 |
|---|---|---|---|---|

Signs of Trauma  ☐ No  ☐ Yes  **Describe:**

Medical/Mental Health Complaints  ☐ No  ☐ Yes  **Describe:**

Existing Medical/Mental Health Conditions  ☐ No  ☐Yes  **Describe:**

Signature _M. Dillard LPN_  Date _11-17-06_  Time

| DATE/TIME | 2000 11/18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 12/1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Crying | | | | | | | | | | | | | | |
| Signs of Trauma | | | | | | | | | | | | | | |
| Oriented x's 3 | | | | | | | | | | | | | | |
| Withdrawn | | | | | | | | | | | | ✓ | | |
| Hostile/Angry | | | | | | | | | | | | | | |
| Quiet | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ |
| Manic Behavior | | | | | | ∅ | ∅ | ∅ | ∅ | | | | | |
| Denies Complaint | | | | | | | | | | | | | | |
| Nurse's Signature | | | | | | | | | | | | | | |
| Comments (By Date) | | | | | | | | | | | | | | |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

NAME: _Lindsay, Stephen_  ID#/DOB: _207042_  RACE:  LOCATION: _G 15_

620000SHd

# TREATMENT REQUEST AND RECORD    SEG

| of Request | Requested By | Patient Status | | Rx. Orders |
|---|---|---|---|---|
| 12-7-2000 | | ☐ IP    ☐ OP | | |

Clinical Diagnosis

Date of Onset
12-7-2000

Foot soak Q week
for 30 min. X4 (SEG)

Date of Surgery

## AREA OF TREATMENT (CIRCLE)

PROGRESS NOTES:

## RECORD OF TREATMENT

| MONTH | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dec. | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

FOR PROFESSIONAL USE ONLY
OR PERMANENT RECORD

Patient Last Name: Lindsey, Stephen    First    Middle    207044    Age    R/S

0E0000SHd3

## DEPARTMENT OF CORRECTIONS

### EMERGENCY/_____ TREATMENT RECORD
(OTHER)

| DATE 1-17-00 | TIME 1705 AM/PM | FACILITY St. Clair ☐ SIR ☐ PDL ☐ ESCAPEE ☐ _____ | ☐ EMERGENCY ☑ OTHER |
|---|---|---|---|

ALLERGIES  NKA

CONDITION ON ADMISSION
☑ GOOD  ☐ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA

VITAL SIGNS: TEMP 98⁶  ORAL/RECTAL  RESP. 18  PULSE 76  B/P 124/72  RECHECK IF SYSTOLIC _____ <100 > 50

**NATURE OF INJURY OR ILLNESS**

TO HCU per DOC for body
Chart

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION/ SUTURES |
|---|---|---|---|---|



**PHYSICAL EXAMINATION**

No cuts, bruises or lacerations
to head, chest, back or
legs. Denies any injuries
or illness at this time.

**ORDERS, MEDICATION, etc.**

No treatment at this time

**DIAGNOSIS**

FOR PROFESSIONAL USE ONLY

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE 11/17/00 | TIME 1710 AM/PM | RELEASE/TRANSFERRED TO ☑ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE J. Sanders LPN | DATE 11-17-00 | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|

| PATIENT'S NAME (LAST, FIRST, MIDDLE) Lindsay Stephon | AGE 23 | DATE OF BIRTH 9/06/77 | R/S BM | AIS # 207044 |
|---|---|---|---|---|

F-15              ORIGINAL - MEDICAL RECORD. YELLOW - TRANSFER AGENT

PHS000031

CORRECTIONAL MEDICAL SYSTEMS
## DISCIPLINARY SEGREGATION MEDICAL DOCUMENTATION

| INITIAL ASSESSMENT | VITAL SIGNS: | BP _____ | P _____ | R _____ |
|---|---|---|---|---|

Signs of Trauma ☐ No ☐ Yes   Describe:

Medical/Mental Health Complaints ☐ No ☐ Yes   Describe:

Existing Medical/Mental Health Conditions ☐ No ☐ Yes   Describe:

_____   _____ _____
Signature                             Date    Time

| DATE/TIME | 10/31 2000 | 11/1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Crying | | | | | | | | | | | | | | |
| Signs of Trauma | | | | | | | | | | | | | | |
| Oriented x's 3 | | | | | | | | | | | | | | |
| Withdrawn | | | | | | | | | | | | | | |
| Hostile/Angry | | | | | | | | | | | | | | |
| Quiet | ✓ | ✓ | ✓ | | | | | | | | | | | |
| Manic Behavior | | | | | | | | | | | | | | |
| Denies Complaint | | | | | | | | | | | | | | |
| Nurse's Signature | | | | | | | | | | | | | | |

Comments (By Date):

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

NAME: Lindsey Stephen    ID#/DOB: 207044   RACE: _____   LOCATION: C/2

# DEPARTMENT OF CORRECTIONS

## EMERGENCY/_____ TREATMENT RECORD
(OTHER)

| DATE 10-30-00 | TIME 2105 AM PM | FACILITY St. Clair ☐ SIR ☐ PDL ☐ ESCAPEE ☒____ | ☐ EMERGENCY ☒ OTHER |

**ALLERGIES** NKA

| CONDITION ON ADMISSION |
| ☒ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

VITAL SIGNS: TEMP 98.6 ORAL RECTAL RESP. 20 PULSE 80 B/P 130/72 RECHECK IF SYSTOLIC ____ <100 > 50

**NATURE OF INJURY OR ILLNESS**

Body Chat per DOC

| ABRASION/// | CONTUSION # | BURN xx xx | FRACTURE Z z | LACERATION/ SUTURES |

**PHYSICAL EXAMINATION**

Puncture wound F/m stated
stabbed c̄ ice pick
∅ c/o S&B. Lung sounds
clear bilat  no Acute distress
n/d

puncture

**ORDERS, MEDICATION, etc.**

1. Cleaned c̄ sterile H₂0
2. dsg c̄ 2x2

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**DIAGNOSIS**

Alt in comfort

**INSTRUCTIONS TO PATIENT**

Follow proper S/P procedure

| RELEASE/TRANSFER DATE 10 / 30 / 00 | TIME 2120 AM PM | RELEASE/TRANSFERRED TO ☒ DOC ☐ AMBULANCE  D.O.C | CONDITION ON DISCHARGE ☒ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE _____ | DATE 10-30-00 | PHYSICIAN'S SIGNATURE _____ | DATE 10-31-00 | CONSULTATION |

| PATIENT'S NAME (LAST, FIRST, MIDDLE) Lindsay Stephon | AGE 23 | DATE OF BIRTH 9 16 77 | R/S B/m | AIS # 207044 2944 |

F-15        ORIGINAL - MEDICAL RECORD, YELLOW - TRANSFER AGENT

## INTERDISCIPLINARY PROGRESS NOTES

| DATE | TIME | NOTES | SIGNATURE |
|------|------|-------|-----------|
| 3/27/05 | 8:13AM | Inmate seen in POP CR per request DOC officers who had witnessed "going off" behavior S: "I don't know what they are talking about right off. I don't rule it out though - I'm doing good - People are trying to provoke me some but I can't remember anything really bad - I get irritated but I find things to do - Tell them we can agree to disagree O: A, A, O - Calm, cooperative coherent - extremely polite No change in usual demeanor - Behavior appropriate - Mood good. Denies SI, HI Halls. A: PTSD- Functioning well in POP at present according to inmate P: Refer Dr. Earnshaw continue to monitor - See PRN or 1 month | |
| 6/16/05 | 808 AM | Inmate seen in POP. CR S: I'm doing pretty good. Haven't been in any confrontations. Still going to SAA. If I see a woman I just keep on going - Still working as a dorm cleaner - Got a Com | Leigh Dodd M.S. |

CONFIDENTIAL - NOT TO BE REPRODUCED

| Patient's Name, (Last, First, Middle) | AIS# | Age | R/S | Facility |
|---|---|---|---|---|
| Lindsey, Stephen | 207014 | 27 | B/M | Hol. |

F-61

PHS000033

## INTERDISCIPLINARY PROGRESS NOTES

| DATE | TIME | NOTES | SIGNATURE |
|------|------|-------|-----------|
| 8:52, | | | |
| 4/8/05 | 8:32AM | Inmate seen in gap ER | |
| | | S: Been kind of tough down | |
| | | there - Played a movie about a | |
| | | girl that was molested - Made | |
| | | me get a flashback. I got | |
| | | real angry. I went & talked | |
| | | to someone. | |
| | | O: A,A,O  Extremely polite, calm | |
| | | cooperative, coherent - Dawning | |
| | | insight, coping skills improving | |
| | | Highly motivated in therapy | |
| | | Denies SI, HI, Hallu. | |
| | | A: PTSD - Functioning well at | |
| | | present. | |
| | | P: Stress & Anger Materials | |
| | | See 1 month or as needed | John Doe M.S. |
| 5/18/05 | 8:16 AM | Inmate seen in gap CR. | |
| | | S: I'm doing okay - Finished | |
| | | an SLAA - Signed on to do | |
| | | another one - It's a 12 | |
| | | week program - Said about | |
| | | things that cause that | |
| | | state of mind - That SS | |
| | | state of mind - alt's been | |
| | | almost 6 months - I feel | |
| | | good - I feel like doing it | |
| | | sometimes & my behavior feels | |
| | | like it is gonna get aggressive | |
| | | I think of the things that | |
| | | keep me from it - People | |
| | | watch me to & that helps | |
| | | too. | |
| | | O: A,A,O  Calm, extremely polite, | |
| | | Coherent - Affect, behavior appropriate | John Doe M.S. |
| | | (Con) | |

| Patient's Name, (Last, First, Middle) | AIS# | Age | R/S | Facility |
|---|---|---|---|---|
| Lindsey, Stephan | 207044 | 21 | B/M | Hal |

F-61

PHS000034

# Alabama Department of Corrections
## Psychiatric Progress Note

| DATE: 2-9-04 | TIME: 0725 | | Today vs Before |
|---|---|---|---|
| Target Symptoms | Behavioral Rating Scale  0=No problem 5= worst | | |
| self-injurious behavior | | | 0    4 |
| | | | |
| | | | |
| | | | |
| | | | |
| Medications: None | | | Informed Consent |

Compliance:    Inmate report _____% vs MAR_____%

In addition to the information in the tables above and below, then inmate-patient:

**S** Cell cleaner. SbAA wkly. I saw behavior as child-like response tantrum. Feel good, contact family.

Side effects? N.A.

**O** A, A, O. Speech fluent, productive: mood intense & thoughtful. Obviously moving beyond primary process: evaluating his responses/options.

| Selected Issues | NO | YES | If yes, comment on pertinent positive findings |
|---|---|---|---|
| Psychosis | X | | |
| Serious Depression | X | | |
| Self-Injurious Thoughts | X | | |
| Suicidal intent | X | | ~~FOR PROFESSIONAL USE ONLY~~ |
| Aggressive | X | | ~~CONFIDENTIAL RECORD~~ |
| Seriously Impulsive | X | | ~~NOT TO BE PHOTO COPIED~~ |
| Situational Upset | X | | |

Lab info: N.A.  Labs Orderd_____ Labs Reviewed_____ AIMS ?_____

**A**SSESSMENT/Diagnosis (DSM-IV):
   PTSD
   Self injurious beh.

**P**lan: No meds. Continue SMI. Consider A to HIST p̄ 6-12 mos.

Return to clinic: 3 mos. Print last Name: Earnshaw  Sign W. Earnshaw-MO

| Patient's Name: (Last, First, Middle) | ASI# | Age | R/S | Code | Institution |
|---|---|---|---|---|---|
| Lindsay, Stephon | 207044 | 27 | B/M | SMI | Holman |

ADOC Form 61 P

PHS000035

## INTERDISCIPLINARY PROGRESS NOTES

| DATE | TIME | NOTES | SIGNATURE |
|------|------|-------|-----------|
| 12-23-04 | 0800 | See Psych Eval | W. Earnshaw MD |
| 1/31/05 | ~~Inmate~~ | | |
| 1/31/05 | 3 PM | Inmate seen in POP CR | |

S: Yes mam I know you are the psychiatrist lady - I am doing better - I ain't doing the stalking thing w/ women - I catch myself & I don't want to to like that - Thats why I was trying that string around my leg to remind me not to go to the door & commit another 38 - I was molested as a child - by a older male cousin - I also molested some child - one cousin & one stranger - I am trying to get stronger - I went to stop doing that stuff -

O: A, A, O, Polite, calm, coherent, cooperative - Appears to be motivated to change behavior. Unwilling to try Meds at present - Denies SI, HI, Hallu. PT- Reports mostly reading all day - "Got out of the Crips"

A: PTSD- Apparently motivated, responsive in therapy

P: See 1 month or PRN     Leslie Dodd M.S.

| Patient's Name, (Last, First, Middle) | AIS# | Age | R/S | Facility |
|---|---|---|---|---|
| Lindsay, Stephon | 207044 | 27 | B/M | Holman |

F-61

FOR PROFESSIONAL USE ONLY CONFIDENTIAL RECORD NOT TO BE PHOTO COPIED

**ALABAMA DEPARTMENT OF CORRECTIONS**
MENTAL HEALTH SERVICES

**PSYCHIATRIC EVALUATION**

PAGE 1

Referred by:
☐ Admission to Institution  ☐ Mental Health Staff  ☐ Medical Staff  ☒ Other _Psych Assoc_

---

**Reason for Referral (Presenting Problem):**
Sec Referral - broke down under prog review. Hx molestation. Sexual preoccupations.

---

**Psychiatric History (inpatient/outpatient/medications prescribed):**
27yo BM  14-or younger ΨMD (Sent sis for Nintendo duck hunting gun; stepdad thought wanted his gun. Beat pt up.)  ⊖ ΨMD until Kilby, no meds. Was to F/u (would have), but parents didn't.

FH: ⊖ Ψ hosps; Mom ΨMD; ⊖ suicide.
"some needed,"  .? meds/tx.
AA.

---

**Pertinent Medical History:** NKA.  On no meds.

---

**Substance Abuse History:**
MJ - 15yo. Last this year. Not daily.
EtOH on street.
⊖ inj.

---

**Pertinent Personal/Family History (inmate's sentence):** First incarceration.
120 yrs;  Dec/Nov 3 2008
Gadsden  ⊖ wife/GF/kids.  Father, only support.

---

**Institutional Adjustment (current placement):** Holman x 5-6yrs, Draper x "mos"
Ventress x > 1yr,  Holman x 13 mos,  St Clair x 14-15mos,
Kilby x 2wks,  Co x 9 mos.

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Inmate Name | AIS # |
|---|---|
| Lindsay, Stephon | 207044 |

DOC Form #456-01 Page 1 of 2

PHS000037

## ALABAMA DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

### PSYCHIATRIC EVALUATION

**PAGE 2**

**Mental Status Examination:**

**Appearance and Behavior:** *Poor eye contact.*

**Mood and Affect:** *Anxious. Tense.*

**Speech and Language:** *Soft. Responsive. Productive, but slow.*

**Thought Process:** *Logical, coherent. Magical @ times.*

**Thought Content and Perceptions:** *Grandiose thoughts @ times (make self ascend to heaven) Aud hallu conversation, derogatory, command.* — Page onset.

**Cognitive Assessment:** *to 9th. GED (Holman) Paint, plants, physical labor. Ⓢ men's Ⓡ hand in head. ⊖ Spec Ed, ⊖ disabilities.*

**Insight/Judgement:**

**Suicide/Violence Risk Assessment:**

**Past Suicidal Ideation/Attempts (dates and methods):** *× 2. 10yo; hang self, string broke. Felt bad 2° scar c̄ stitches on face. 2nd attempt same. "Hung there for awhile – took myself down."*

**Current Suicidal Ideation and Behavior:** *Denies*
*Beats self to punish for sexual thoughts and to not respond to command hallu.*

**Past Violent/Assaultive Behavior:** *Admits. Last 2̄ locked up. Responding to others' aggression.*

**Current Violent/Assaultive Ideas/Behavior:** *Denies.*

**Diagnostic Impression**

**Axis I:** *PTSD (molestation); self injurious behavior*

**Axis II:** *Mixed.*

**Axis III:** *No %*

**Axis IV:** *Incarceration*

**Axis V:** *55/55*

**Treatment Recommendations (including medications/labs ordered/special housing)**

*A to SMI.*
*Inmate does not want meds at this time.*

*Stephon Lindsay*

CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Psychiatric Follow-Up Required Within:** *30.* **Days**

*D. Earnshaw MD*
A.     **Psychiatrist Signature**

*12-23-04*
**Date**

| Inmate Name | AIS # |
|---|---|
| *Lindsay, Stephon* | *207044* |

DOC Form #456-01 Page 2 of 2

AR 456 – August 2 PHS000038

ALABAMA DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES
## REFERRAL TO MENTAL HEALTH

**REASON FOR REFERRAL:**

☐ **CRISIS INTERVENTION**

    ☐ Family problem:_____

    ☐ Problems with other inmates:_____

    ☐ Recent stress:_____

    ☐ Other:_____

☒ **EVALUATION OF MENTAL STATUS**

| | | |
|---|---|---|
| ☐ Suicidal | ☒ Anxious | ☐ Physical Complaints |
| ☐ Homicidal | ☒ Depressed | ☐ Sleep Disturbance |
| ☐ Mutilating | ☒ Withdrawn | ☐ Hallucinations/Delusions |
| ☐ Hostile, Angry | ☒ Poor hygiene | ☐ Suspicious |
| ☐ Other inappropriate behavior: _obsessive masturbation and sexual behavior_ | | |

☐ **HISTORY OF PSYCHOTROPIC MEDICATION PRIOR TO INTAKE**

☐ **REFERRAL TO 12 STEP PROGRAM OR WORKSHOPS (list Below)**

**COMMENTS:** Inmate broke down during process rollers inses. He went on and on into tears about being molested and his sexual behavior prior to prison and in prison. He punished himself by shaving his eyebrows + tied himself down before pill call to keep from exposing himself. took a big step asking for help. Shy of seeing mental health. Season Christmas may be affecting him. Psychiatric intervention is needed. May become sexual preditor. May harm self seriously to stop his obsession.

**Referred by:** Richard Holbrook LPC     **Phone Contact #:** 342     **Date:** 12/22/04

☐ Referral for psychiatrist (referral has been screened by mental health or medical staff)

**MENTAL HEALTH FOLLOW-UP: EVALUATION/TREATMENT/DISPOSITION**

_See Psych Eval._

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Follow-Up by:** N. Earnshaw MD.     **Date:** 12-23-04

| Inmate Name | Cell # | AIS # |
|---|---|---|
| Stephen Lindsey | 505 | 20744 |

Disposition: Medical file

Reference: ADOC AR 609,612,613,614, 627
ADOC Form **MH-008** – November 30, 2004

PHS000039

# PSYCHOLOGICAL UPDATE

Name: _Stephen Lindsey_    AIS#: _207044_    R/S: _BM_

Date: _05/9/02_    Date of Birth: _7/6/77_    Age: _____

Inmate _Lindsey_ was last evaluated by ADOC psychology staff member
on ____/____/____.

A diagnosis of _disturbance_ was made and the inmate was
recommended for participation in _mental disorder._

_____

_____

_____

---

The following observations and recommendations are made as a result of the current interview:

I.  **Educational Needs**
    _✓_ a. ABE    ____ b. Special Education    _X_ c. Trade School    ____ d. Junior College

II. **Mental Health Needs**

    ____ A. Refer to psychiatrist    ____ E. Sexual adjustment    ____ I. Self-concept enhancement

    ____ B. Substance abuse counseling    ____ F. Reality therapy    ____ J. Healthy use of leisure

    ____ C. Depression    ____ G. Anger-induced acting out    ____ K. Personal development

    ____ D. Stress management    ____ H. Values clarification

    Date referred to psychiatrist    ____/____/____

III. RECOMMENDATIONS/REMARKS: _____

_no history of mental health treatment_

_____

_____

_____

_____

_____

_____

_____

MENTAL HEALTH CODE:    SMI    HARM    HIST    NONE

Evaluation Completed by: _Deborah Williams LPC_    Date: _05/5/02_

N-259 A (2/2001)
*White to Central Records*
*Yellow to Institutional File*
*Pink to Data Entry and forwarding to Medical Record*

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS000040

## PSYCHOLOGICAL INTERVIEW / DATA ENTRY FORM

Name: _____    AIS #: 207044    R/S Bm

Date: 11 / 18 / 99    DOB: 4 / 16 / 77    AGE: 22

Beta II 67 WAIS ___ / ___ / WRAT-RL 98    Last School Grade Completed 7

MMPI Welsh Code 2'4"8"5'7'31-52/0: L'K-F-    Megargee Type _____

### General Appearance
____ a. Neat and generally appropriate

____ b. Poorly groomed

____ c. Other _____

____ c. Flat or avoiding interaction

____ d. Sad or worried

_____

_____

### I.  Interpersonal Functioning
____ a. Normal-good relationships likely

____ b. Withdrawn / apparent loner

____ c. Likely to ignore rights / needs

____ d. Lacks skill or confidence

____ e. Probably difficult to get along with

*Other (Specify) ____ 1. ____ 2.

____ 3. ____ 4. ____ 5. ____ 6. (See Copy) _____

_____

_____

### II.  Personality
____ a. Healthy

____ b. Antisocial

____ c. Paranoid

____ d. Explosive

____ e. Dependent

____ f. Passive-Aggressive

Other (Specify): ____ 1. Schizoid ____ 2. Schizotypal ____ 3. Histrionic ____ 4. Narcissistic

____ 5. Borderline ____ 6. Avoidant ____ 7. Compulsive ____ 8. Atypical/mixed

____ 9. See Copy (Write in your wording) _____

_____

### III.  Substance Abuse
____ a. Alcohol addiction / abuse history _____

_____

____ b. Drug addiction / abuse history _____

_____

FOR PROFESSIONAL USE ONLY

CONFIDENTIAL RECORD

NOT TO BE PHOTO COPIED

N-259

White to Central Records File
Yellow to Institutional File
Pink to Hospital Records

*See manual for selections and numbers for "other"

PHS000041

***** MMPI-2 ADULT INTERPRETIVE SYSTEM *****

developed by

Roger L. Greene, Ph.D.
Robert C. Brown, Jr., Ph.D.
and PAR Staff

--- CLIENT INFORMATION ---

Client      : Lindsay, Stephon          Age             : 22

Sex         : Male                      Marital Status  :

Education    :                          Date of Birth   : 09/06/77

File Name   : 207044

Prepared for: DEPARTMENT OF CORRECTIONS on 11/17/99

---------------------------------------------

The interpretive information contained in this report
should be viewed as only one source of hypotheses about the
individual being evaluated.  No decisions should be based solely
on the information contained in this report.  This material
should be integrated with all other sources of information in
reaching professional decisions about this individual.  This
report is confidential and intended for use by qualified
professionals only.  It should not be released to the individual
being evaluated.



FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTOCOPIED

Copyright (c) 1990 by Psychological Assessment Resources, Inc.
All rights reserved.

MMPI-2 is a registered trademark of the University of Minnesota.



**PHS**
PRISON HEALTH SERVICES, INC.

# YEARLY HEALTH EVALUATION

**I.    HISTORY – (LPN or RN)**

|  | YES | NO | COMMENT(S) |
|---|---|---|---|
| Weight Change (greater 15 lbs.) (Compare Weight Below) |  | ✓ | 166½   2-10-06  *Last weight at least 6 months ago* |
| Persistent Cough |  | ✓ |  |
| Chest Pain |  | ✓ |  |
| Blood in Urine or Stool |  | ✓ |  |
| Difficult Urination |  | ✓ |  |
| Other Illnesses (Details) |  | ✓ |  |
| Smoke, Dip or Chew | ✓ |  | H cig a day |
| ALLERGIES |  | ✓ |  |

Weight _158_ Temp _98⁸_ Height _6'1_ Pulse _78_ Resp _20_ Blood Pressure _120/70_

Eye Exam: _20/25_ OD  _20/40_ OS  _20/25_ OU  O₂Sat 98  If greater than > 140/90, repeat in 1 hour. Refer to M.D. if remains > 140/90.

**II.    TESTING – (LPN or RN)**

RESULTS  98
FSBS
Tuberculin Skin Test (q yr)          Date given _4-23-07_ Site _LFA_
                                     Read on _4-25-07_ Results _0_ mm
Past Positive TB Skin Test  →  Survey Completed
(Chest x-ray if clinical symptoms)   Date _____ Results _____
RPR (q 3 yrs)                        Date _2-18-05_ Results _NR_
EKG (baseline at 35, over 45 q 3 yrs)  _NA_
Cholesterol (at 35 then q 5 yrs)     _NA_
Tetanus/Diptheria (q 10 yrs) *per inmate* Last Given _2000_ Due _2010_ at Bullock Correctional
(if done today)                      Site given _–_ Dose _–_ Lot # _–_
Optometry Exam (@ 50 if not already seen)  _NA_
Mammogram                            Date _NA_ Results _—_
(females @ 40, q 2 yrs/other M.D. order)

**III.    PHYSICAL RESULTS – ( RN, Mid-Level, M.D.)**

Class  1 (2) 3  4  5          Restrictions _plate in left wrist_
Heart                        _RRR_
Lungs                        _bil clear_
Breast Exam                  _self exam taught_
Rectal (yearly after 45)     Result _NA_
     with Hemoccult          Result _____
Pelvic and PAP (q 1 yr)      Date _NA_ Results _____

Facility _VCF_      Nurse Signature _____ Date _4-23-07_

M.D. or Mid-Level Signature _____  Date _9/26/07_

| INMATE NAME | AIS# | D.O.B. | RACE/SEX |
|---|---|---|---|
| Lindsay, Stephen | 207044 | 7-6-77 | B/M |

PHS000043



**PHS**
PRISON HEALTH SERVICES, INC.

# HEALTH EVALUATION

| I. | HISTORY – (LPN or RN) | YES | NO | COMMENT(S) |
|---|---|---|---|---|
| | Weight Change (greater 15 lbs.) | | ✓ | 15℃ᵗᵗ |
| | (Compare Weight Below) | | | Last weight at least 6 months ago |
| | Persistent Cough | | ✓ | |
| | Chest Pain | | ✓ | |
| | Blood in Urine or Stool | | ✓ | |
| | Difficult Urination | | ✓ | |
| | Other Illnesses (Details) | ✓ | | hx of SᴸII |
| | Smoke, Dip or Chew    Ch safPPD | | ✓ | |
| | ALLERGIES | | ✓ | |

Weight 1606ᵗᵗ  Temp 97.5  Pulse 72  Resp 20  Blood Pressure 130/100

**If greater than > 140/60, repeat in 1hour.**
**Refer to M.D. if remains > 140/90.**

Eye Exam: 20/30 OD  20/25 OS  20/20 OU

## II.  TESTING – (LPN or RN)                    RESULTS

| | |
|---|---|
| ✓ Tuberculin Skin Test (q yr) | Date given 2/5/06 Site LFA |
| Tetanus due | Read on 2/16/06 Results ⊖ mm |
| Past Positive TB Skin Test → | **Survey Completed** N/a |
| (Chest x-ray if clinical symptoms) | Date N/a Results N/a |
| RPR (q 3 yrs) | Date 2-4-05 Results NR |
| EKG (baseline at 35, over 45 q 3 yrs) | N/a |
| Cholesterol (at 35 then q 5 yrs) | N/a |
| ✓ Finger Stick Blood Sugar | Results 87 |
| * If > than 200 repeat Finger Stick BS within 48 hours | Results N/a |
| Optometry Exam (@ 50 if not already seen) | N/a |
| Mammogram | Date n/a Results ——— |
| (females @ 40, q 2 yrs/other M.D. order) | |

## III.  PHYSICAL RESULTS – (RN, Mid-Level, M.D.)

| | |
|---|---|
| Heart | RRR |
| Lungs | clear BL |
| Breast Exam | ⊘ masses |
| Rectal (yearly after 45) | Results |
| with Hemoccult | Results N/a |
| Pelvic and PAP (q 1 yr) | Date N/a Results N/a |

CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Facility Halman  Nurse Signature M.Jordan RN  Date 2/5/06

M.D. or Mid-Level Signature **Delano Benjamin, M.D.**  Date 2/10/6

| INMATE NAME | AIS# | D.O.B. | RACE/SEX |
|---|---|---|---|
| Lindsay, Stephon | 207044 | 9/6/77 | B/M |

60513-AL   (rev 9/05)

PHS000044

E57

## CORRECTIONAL MEDICAL SERVICES
## MEDICAL HISTORY AND SCREENING

INSTITUTION _KCf_

| INMATE NAME: _Lindsey, Stephen_ | ID# _207044_ | RACE: _B_ | D.O.B. _9-6-77_ |
|---|---|---|---|

| INMATE QUESTIONNAIRE | (circle one) | | CURRENT MEDICAL CONDITIONS (circle terms that apply) | |
|---|---|---|---|---|
| 1. Do your have a medical problem such as bleeding or injuries that requires immediate medical attention? | Yes | **No** | Unconscious | Skin Infection |
| 2. Have you fainted or had a head injury within past six months? | Yes | **No** | Disoriented | Restricted Mobility |
| 3. Have you been seen by a doctor in the past six months? | Yes | **No** | Intoxicated | Skin Rash |
| 4. Do you wear glasses or contact lenses? | Yes | **No** | Lesions | Jaundice |
| 5. Do you have prosthesis, splint, crutches, cast or brace that you need while here? | Yes | **No** | Obvious Pain | Needle Marks |
| 6. Do you drink wine, beer or whiskey? How often? _daily_ How much? _6 pk_ Last time? _12 a.m._ | **Yes** | No | Bruises | Swollen Glands |
| | | | Fever | Active Cough |
| 7. Have you had seizures or blackouts when you stop drinking? | Yes | **No** | Nausea | Vaginal/Penile Discharge |
| 8. Do you use drugs? Type _Mar._ How often _daily_ Last time _11-8_ | **Yes** | No | Uses Tobacco | Dental Problems |

N/A

| MEDICAL HISTORY (circle terms that apply) | |
|---|---|
| Arthritis | Frequent Diarrhea |
| Diabetes | Genital Sores |
| Seizure Disorder | V.D. |
| Asthma | Hepatitis |
| Special Diet | HIV+ |
| Heart Condition | Tuberculosis |
| Hypertension | Persistant Sore Throat |
| Stomach Ulcer | Dental Problems |
| Cancer | Surgeries |
| Sickle Cell Anemia | Chest Pain |
| Emphysema | Jaundice |

N/A

| 9. Have you had withdrawal problems when you stop taking drugs? | Yes | **No** |
|---|---|---|
| 10. Are you currently detoxing? If yes, from what substance? | Yes | **No** |
| 11. Do you have any medical problems we should know about? | Yes | **No** |
| 12. Have you been in this facility before? | Yes | **No** |

| MENTAL HEALTH | | |
|---|---|---|
| 13. Have you ever been hospitalized or treated for psychiatric problem? | Yes | **No** |
| 14. Have you ever considered or attempted suicide? | Yes | **No** |
| 15. Are you feeling depressed or extremely sad? | Yes | **No** |
| 16. Do you want to hurt yourself or someone else? | Yes | **No** |
| 17. Are you hearing voices?____ If yes, what are they saying? | Yes | **No** |

| TB HISTORY | | | |
|---|---|---|---|
| Ever treated with TB Drugs? | Yes | **No** | |
| Previous PPD test? Yes No Previous Positive Reaction? Yes | **No** | | |
| When _12-99_ | | | |
| Where _Evansville_ | | | |
| Chronic Cough/Blood | Fever | | |
| Recent Weight Loss | Night Sweats | | |
| Recent Appetite Loss | Fatique | | |

| FEMALE INMATES ONLY | | |
|---|---|---|
| 18. Are you pregnant? ___LMP___ | Yes | No |
| 19. Do you use birth control? Type | Yes | No |
| 20. Have you recently had a baby, miscarriage or abortion? | Yes | No |

MEDICATIONS

Current Medications:

COMMENTS: (Explain "Yes" Responses)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| VITAL SIGNS | |
|---|---|
| HT _5'7"_ WT _166_ BP _110/82_ | |
| Pulse _80_ Resp _20_ Temp _98.3_ | |

| DISPOSITION | | ALLERGIES | | |
|---|---|---|---|---|
| Referrals _____None | Placement | Medication Allergies: | Yes | **No** |
| | | Type: | | |
| ____Emergency Room (Pre-booking injury) | ____Infirmary | Other Allergies: | Yes | **No** |
| ____Emergency Room (Acute Condition) | ____Detoxification | Type: | | |
| ____Physician | ____Setting | | | |
| ____Sick Call | ____Gen Population | | | |
| | ____Other | | | |

I acknowledge that I have answered all questions truthfully and have been told the way to obtain health services and consent to routine care provided by facility healthcare professionals. I understand that any medications not picked up within 30 days of release will be destroyed.

Inmate Signature: X _Stephen Lindsay_

Screened by: _____  Date: _11-16-99_  Time: _1:35 pm_

Reviewed by: _____  Date: _____  Time: _____

Revised 4/28/97 (CMS 7107)

**ALABAMA DEPARTMENT OF CORRECTIONS**
**MENTAL HEALTH SERVICES**
**TREATMENT PLAN: OUTPATIENT CARE  *(REVIEW)***

Treatment Plan Reviewed On: _8/01/05_   Treatment Plan Initiated On: _1/18/05_

Inmate's Current Housing Location: _Halma/seg_   Institution: _Helen_

## CURRENT STATUS:

Problem #1 _Self injurious behavior_

Target Date for Resolution: _6 mo (ongoing_
Status:        Resolved ☑   No Change ☐   Modified ☐

Outcome/Modification: _Insight into behavior, awareness reduced urge to injury self_

Staff Member Responsible: _MHP_          Frequency: _monthly_

---

Problem #2 _Intrusive thoughts recently trauma_

Target Date for Resolution: _ongoing_
Status:        Resolved ☐   No Change ☐   Modified ☑

Outcome/Modification: _Reduced flashbacks, minimal impact on adjusting feels more in control_

Staff Member Responsible: _MHP_          Frequency: _monthly_

---

Problem #3

Target Date for Resolution:
Status:        Resolved ☐   No Change ☐   Modified ☐

Outcome/Modification:

Staff Member Responsible:          Frequency:

---

Comments: _Inmate has improved, more in control, adjusting to pop. - will consider change to Hed. of program continues_

Second Page attached:    Yes ☐   No ☐

**Treatment Team Members**
Psychiatrist: _W. Earnshaw MD_          Date: _8-23-05_
Mental Health Nurse: _SHarrison LPN_          Date: _8-23-05_
Treatment Coordinator: _Blaine O Green PhD_          Date: _8-23-05_

Inmate Agreement: _Stephan Lindsay_          Date: _9-1-05_
Next Treatment Plan Review by:          (within six months)

Inmate Name _Lindsay Stephon_   |   AIS # _207044_

ALDOC Form 462-02

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

AR462– October 5, 2001

PHS000046

*No*

**ALABAMA DEPARTMENT OF CORRECTIONS**
**MENTAL HEALTH SERVICES**
**TREATMENT PLAN: OUTPATIENT CARE** *(REVIEW)*

Treatment Plan Reviewed On: 7/6/05   Treatment Plan Initiated On: 1/18/05

Inmate's Current Housing Location: Pop   Institution: Holmen

CURRENT STATUS:

Problem #1 Self injurious behavior
Target Date for Resolution: 6 months
Status:     Resolved ☐   No Change ☐   Modified ☒
Outcome/Modification: Behaviors significantly decreased
Staff Member Responsible: MHP/PHD      Frequency: 90/30

Problem #2 intrusive thoughts that recall traumatic events
Target Date for Resolution: 6 months
Status:     Resolved ☐   No Change ☐   Modified ☒
Outcome/Modification: inmate reports decrease in intrusive thoughts
Staff Member Responsible: MHP/PHD      Frequency: 90/30

Problem #3
Target Date for Resolution:
Status:     Resolved ☐   No Change ☐   Modified ☐
Outcome/Modification:
Staff Member Responsible:      Frequency:

Comments: Inmate continues to function well in population - continue therapeutic interventions

Second Page attached:   Yes ☐  No ☐

**Treatment Team Members**
Psychiatrist: D. Earnshaw MD   Date: 10-11-05
Mental Health Nurse: Harrison Jpn   Date: 7-6-05
Treatment Coordinator: Leigh Wood M.S.   Date: 7/6/05
Inmate Agreement: Stephen Lindsey   Date: 7-6/05
Next Treatment Plan Review by:   (within six months)

Inmate Name
Lindsey, Stephen

AIS #
287044

ALDOC Form 462-02

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

AR462– October 5, 2001

**ALABAMA DEPARTMENT OF CORRECTIONS**
**MENTAL HEALTH SERVICES**
**TREATMENT PLAN: OUTPATIENT CARE**

Treatment Plan Initiated On: 1/18/05  Treatment Coordinator: _Leslyn Dodd M.S._

Inmate's Housing Location: _Seg._    Institution: _Holman_

**DSM IV Diagnosis:**
Axis I: _PTSD (moderate-severe) self injurious behavior_
Axis II: _Mixed_
Axis III: _Review Chart_
Axis IV: _Incarceration_
Axis V: _GAF - 55_

| Problem #1 _Self-injurious behavior_ |
| --- |
| Goal: _Eliminate attempts at self-injury_ |
| Target Date for Resolution: _6 months_ |
| Intervention: 1. _Identify life factors that precede self-injurious behavior._ 2. _Assist in developing appropriate strategies to deal w/ stress_ |
| Staff Member Responsible: _MHP/PHP_    Frequency: _30/30_ |

| Problem #2 _intrusive thoughts that recall traumatic events_ |
| --- |
| Goal: _Reduce neg. impact that moderate-severe has had on many aspects of life & return to previous level of func._ |
| Target Date for Resolution: _6 months_ |
| Intervention: 1. _Practice & implement relaxation training as a coping mechanism for dealing w/ stress, panic, anxiety._ 2. _Replace neg. self defeating activities w/ positive accurate self esteem_ |
| Staff Member Responsible: _MHP/PHP_    Frequency: _30/30_ |

| Problem #3 |
| --- |
| Goal: |
| Target Date for Resolution: |
| Intervention: |
| Staff Member Responsible:    Frequency: |

Second Page attached:    Yes ☐    No ☐

<u>Treatment Team Members</u>
Psychiatrist: _W Earnshaw MD_    Date: _1-18-05_
Mental Health Nurse: _Scott Harrison, Lpn_    Date: _1-18-05_
Treatment Coordinator: _Leslyn Dodd M.S._    Date: _1/18/05_

Inmate Agreement: _Stephon Lindsey_    Date: _1/18/05_
Treatment Plan Review by:    (within six months)

| Inmate Name _Lindsey, Stephon_ | AIS # _207044_ |
| --- | --- |

ALDOC Form 462-01


FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS000048



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: Stephon Lindsay          Date of Request: 1.27.05
ID # 207044          Date of Birth: 9.6.77    Location: 3 Cell·B·71·T
Nature of problem or request: I have a tooth that needs to be pulled. It's a
tooth that was filled in the past. Sometime my gums bleed in the area of my
mouth where the to is located.

Stephon Lindsay
Signature

## DO NOT WRITE BELOW THIS LINE

Date: 2 / 3 / 05
Time: _____ AM PM
Allergies: _____

RECEIVED
Date: 1-25-5
Time: 1200
Receiving Nurse Intials _____

**(S)ubjective:** Same as above

**(O)bjective  (V/S): T:** _____ **P:** _____ **R:** _____ **BP:** _____ **WT:** _____

**(A)ssessment:** Pt needs exam to check for Ext or
adjustment of filling

**(P)lan:** Pt to be sched. for dental TX.

Return to Clinic PRN

Refer to:  MD/PA  Mental Health  Dental  Daily Treatment
CIRCLE ONE

Check One:  ROUTINE ( )    EMERGENCY ( )      Yes ( )  No ( )
If Emergency was PHS supervisor notified:    Yes ( )  No ( )
Was MD/PA on call notified:    Yes ( )  No ( )

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

K. Stephens
SIGNATURE AND TITLE

WHITE:    INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

PHS000049

**CORRECTIONAL MEDICAL SERVICES**
**HEALTH SERVICES REQUEST FORM**

Print Name: _Stephen Lindsay_____ Date of Request: _12-4-2000___

ID #: _207044_____ Date of Birth: _9-8-77___ Housing Location: _C1-219_

Nature of problem or request: _I have two cavities that I hereby ask_
_to have filled? THANK YOU._

I consent to be treated by health staff for the condition described.

_Stephen Lindsay_____
SIGNATURE

**PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA**
**DO NOT WRITE BELOW THIS AREA**
**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

**HEALTH CARE DOCUMENTATION**

Subjective:

Objective: BP _____ P _____ R _____ T _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Assessment: _Caries #29 & 32_

Plan: _op #29 & 32_                 _co pay signed_

Refer to: _____ PA/Physician _____ Mental Health _✓_ Dental

Signature: _____ Title: _Dentist_ Date: _1/8/01_ Time: _1000_

CMS 7166 REV. 10/94

PHS000050

**CORRECTIONAL MEDICAL SERVICES**
**HEALTH SERVICES REQUEST FORM**

Print Name: Stephon Lindsay    Date of Request: 12-7-2000

ID #: 207044    Date of Birth: 9-6-77    Housing Location:

Nature of problem or request: I have two cavities that I hereby asked to have filled? Thank You.

I consent to be treated by health staff for the condition described.

SIGNATURE: Stephon Lindsay

RECEIVED
NOV ~
CPOL
By

**PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA**
**DO NOT WRITE BELOW THIS AREA**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**HEALTH CARE DOCUMENTATION**

Subjective:

Objective: BP _____ P _____ R _____ T _____

copay stored

Assessment:

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Plan:
11/30/00 2:15pm seg unable to bring at this time - will call for again
12/1/00 - no #16 op

Refer to: ____ PA/Physician ____ Mental Health ✓ Dental

Signature: CPOL    Title: _____    Date: 12/1/00    Time: 845

CMS 7166 REV. 10/94

## CORRECTIONAL MEDICAL SERVICES
## HEALTH SERVICES REQUEST FORM

Print Name: STEPHON LINDSAY _____ Date of Request: ~~10-4-000~~

ID #: 207044 _____ Date of Birth: 9-6-77 ____ Housing Location: R1-207

Nature of problem or request: I HAVE 3 CAVITIES THAT ARE TROUBLING ME.
AND WITH THIS SICK CALL SLIP, I ASK TO HAVE THE CAVITIES THAT ARE
TROUBLING ME FILLED.

I consent to be treated by health staff for the condition described.

_Stephon Lindsay_
SIGNATURE

### PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
### DO NOT WRITE BELOW THIS AREA
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### HEALTH CARE DOCUMENTATION

Subjective:

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Objective: BP _____ P _____ R _____ T _____

RECEIVED
OCT 05 REC'D
By _____

Assessment:

Plan:

Refer to: ____ PA/Physician ____ Mental Health __✓__ Dental

Signature: _CPee_ _____ Title: _____ Date: 10/6/00 Time: _____

CMS 7166 REV 10 94

## CORRECTIONAL MEDICAL SERVICES
## HEALTH SERVICES REQUEST FORM

Print Name: _Stephen Lindsay_    Date of Request: _12-7-99_

ID #: _207044_    Date of Birth: _9-6-77_    Housing Location: _M-Dorm_

Nature of problem or request: _I Have three tooth's that I haft to get pulled. The Cold weather we're experiencing in the mornig makes them ache Ache I also have three other tooths that are bothering me. These three need cleaning. The gum around these three teeth bleed and Ache a lot._

I consent to be treated by health staff for the condition described.

_Stephen Lindsay_
SIGNATURE

## PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
## DO NOT WRITE BELOW THIS AREA
**************************************************************

### HEALTH CARE DOCUMENTATION

Subjective:

Objective: BP _____ P _____ R _____ T _____

Assessment:

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Plan:
No Show

Refer to: ____ PA/Physician ____ Mental Health ____ Dental

Signature: _M. Squire_    Title: _RDH_    Date: _12-8-99_    Time: _2:00pm_

CMS 7166 REV. 10/94

AL
DEPARTMENT OF CORRECTIONS                    Name: Lindsay Stephon

RADIOLOGY SERVICES REQUEST AND REPORT          State ID No: 207044

INSTITUTION: Bullock                         DOB  9-6-77

                                             Race: BLK    Sex Male

NOTE: PERTINENT CLINICAL INFORMATION AND TENTATIVE DIAGNOSIS MUST BE PROVIDED FOR X-RAY EXAMINATION TO BE PERFORMED

| Requesting Physician/PA/NP | Date of request | Time of request | Routine | Priority | Transportation or special needs |
|---|---|---|---|---|---|
| Subba | 1/8/07 | | | | |

HISTORY/DIAGNOSIS:

X-Ray (R) arm + (L) lower leg
*pain mid shaft
& Tib/Fib*

### X-RAY REQUEST

| | | | |
|---|---|---|---|
| ABDOMEN/KUB | FINGERS | NAVICULAR VIEW | SOFT TISSUE STUDIES |
| ACROMIO-CLAVICULAR JOINTS (W/WO WEIGHT) | FOOT | ORBITS | STERNUM |
| ANKLE | HAND | OS CALCIS (HEEL) | TEMPORO-MANDIBULAR JOINTS |
| CERVICAL SPINE | HIP | PELVIS | THORACIC SPINE |
| CHEST PA / LATERAL | HUMERUS | RADIUS/ULNA (L) | TIBIA/FIBULA (L) |
| COCCYX | KNEE | RIBS | TOES |
| CONE DOWN SELLA TURCICA | LUMBAR SPINE | SACRO-ILIAC JOINTS | WRIST |
| ELBOW (L) | MANDIBLE | SCAPULA | ZYGOMA |
| FACIAL BONES | MAXILLA | SHOULDER | ZYGOMATIC ARCH |
| FEMUR | NASAL BONES | SKULL | |

### REPORT

Lindsay

TIBIA AND FIBULA:  There is no evidence of any definite bony abnormality.  The AP view, however is underpenetrated, which limits evaluation of the tibia and fibula.   If symptoms persist, follow up would be suggested.

LEFT FOREARM:  There is a transverse fracture involving the distal shaft of the left ulna with mild deformity at the fracture site.  No other fractures are identified.
IMPRESSION:  ACUTE FRACTURE DISTAL LEFT ULNAR SHAFT.

D & T: 01-11-07  Howard P. Schiele, M.D./km Board Certified Radiologist  (Signature on file)

11/11/07

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| X-RAY TECHNOLOGIST'S NAME (PRINT) | X-RAY TECHNOLOGIST'S SIGNATURE | DATE, TIME EXAM PERFORMED |
|---|---|---|
| RADIOLOGIST'S NAME (PRINT) | RADIOLOGIST'S SIGNATURE | DATE SIGNED |

PHS000054

**AL** *Please leave copy of film*

**DEPARTMENT OF CORRECTIONS**

Name: *Lindsey Stephon*

State ID No: *207044*

DOB: *9-6-77*

RADIOLOGY SERVICES REQUEST AND REPORT

Race: *B*     Sex: *M*

INSTITUTION: *Bullock*

NOTE: PERTINENT CLINICAL INFORMATION AND TENTATIVE DIAGNOSIS MUST BE PROVIDED FOR X-RAY EXAMINATION TO BE PERFORMED

| Requesting Physician/PA/NP | Date of request | Time of request | Routine | Priority | Transportation or special needs |
|---|---|---|---|---|---|
| *Dr. Siddig* | *1-31-06* | | | | |

HISTORY/DIAGNOSIS:

*X-ray L arm*     *through partial cast*

### X-RAY REQUEST

| | | | |
|---|---|---|---|
| ABDOMEN/KUB | FINGERS | NAVICULAR VIEW | SOFT TISSUE STUDIES |
| ACROMIO-CLAVICULAR JOINTS (W/WO WEIGHT) | FOOT | ORBITS | STERNUM |
| ANKLE | HAND | OS CALCIS ( HEEL ) | TEMPORO-MANDIBULAR JOINTS |
| CERVICAL SPINE | HIP | PELVIS | THORACIC SPINE |
| CHEST PA / LATERAL | HUMERUS | RADIUS/ULNA | TIBIA/FIBULA |
| COCCYX | KNEE | RIBS | TOES |
| CONE DOWN SELLA TURCICA | LUMBAR SPINE | SACRO-ILIAC JOINTS | ✓ WRIST (L) |
| ELBOW | MANDIBLE | SCAPULA | ZYGOMA |
| FACIAL BONES | MAXILLA | SHOULDER | ZYGOMATIC ARCH |
| FEMUR | NASAL BONES | SKULL | *arm left* |

### REPORT

Lindsey

**LEFT WRIST:** The left wrist area is enclosed in a splint fixing the fracture of the distal ulnar. The wrist itself appears to be intact on the basis of these films.

**IMPRESSION:** POSTSURGICAL CHANGES INVOLVING THE DISTAL ULNAR THAT REMAINS IN GOOD POSITION AND ALIGNMENT.

D & T: 02-01-07 Maurice H. Rowell/km  Board Certified Radiologist (Signature on file)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| X-RAY TECHNOLOGIST'S NAME (PRINT) | X-RAY TECHNOLOGIST'S SIGNATURE | DATE, TIME EXAM PERFORMED *1-31-07* |
|---|---|---|
| RADIOLOGIST'S NAME (PRINT) | RADIOLOGIST'S SIGNATURE | DATE SIGNED |



**BioReference**
LABORATORIES

| | | |
|---|---|---|
| **D O C T O R** | BULLOCK CORR. FAC.<br>104 BULLOCK DR. HWY.82<br>UNION SPRINGS, AL  36089 | BOOK/CASE: |
| | (A0112-6)   Bio-Net Print | -FINAL-  Original Report 01/17/2007 |

| NAME<br>LINDSAY, STEPHON | PATIENT I.D. / ROOM NO.<br>207044.383 | DOCTOR / GROUP NAME<br>SIDDIQ, TAHIR |
|---|---|---|

| LAB I.D. NO.<br>103464284 | DATE COLLECTED<br>01/16/2007 11:04 AM | DATE RECEIVED<br>01/17/2007 10:38 | DATE OF REPORT<br>1/17/2007 10:38 | AGE<br>29 Y | SEX<br>M |
|---|---|---|---|---|---|

| Test Description | Result | Abnormal | Reference Range |
|---|---|---|---|

Tests Ordered : CBC W/DIFF & PLTS, ,
-----------------------------* HEMATOLOGY *-----------------------------

| | | | |
|---|---|---|---|
| WBC | 6.6 | | 3.40-11.80 | x10(3) |
| RBC | 5.2 | | 4.20-5.90 | x10(6) |
| HGB | 14.8 | | 12.3-17.0 | gm/dl |
| HCT | 45.5 | | 39.3-52.5 | % |
| MCV | 87.0 | | 80.0-100.0 | FL |
| MCH | 28.3 | | 25.0-34.1 | pg |
| MCHC | 32.5 | | 30.0-35.0 | gm/dl |
| RDW | 13.1 | | 10.9-16.9 | % |
| POLYS | 49 | | 36-78 | % |
| LYMPHS | 38 | | 12-48 | % |
| EOS | 4 | | 0-8 | % |
| BASOS | 1 | | 0-2 | % |
| MONOS | 8 | | 0-13 | % |
| Platelet Count | 237 | | 144-400 | x10(3) |

Final Report                                    Page: 1

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**James Weisberger, M.D.**
LABORATORY DIRECTOR

481 EDWARD H. ROSS DR.
ELMWOOD PARK, NJ 07407
1-800-229-LABS
PHS000056

## UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

Form must be Complete and Legible. You must Type or Print
Please send this form with the Authorization Letter to the service provider at the time of the Appointment

**PHS**

### DEMOGRAPHICS

| Site Name & Number: | Patient Name: (Last, First) | Date: (mm/dd/yy) |
|---|---|---|
| BULLOCK 832 | Lindsay  Stephon | 01,16,06 |

Site Phone #
( 3 3 4 )7 3 8 - 5 6 2 5

Alias: (Last, First)

Date of Birth: (mm/dd/yy)
09,06,72

Site Fax #
( 3 3 4 )7 3 8 - 8 7 6 3

Inmate #
207044

PNS Custody Date: (mm/dd/yy)
/    /

SS Number:

Potential Release Date: (mm/dd/yy)
00,00,00

RECEIVED JAN 16 2007

Will there be a charge?  ☒ Yes  ☐ No
Sex  ☒ Male  ☐ Female

Responsible party:  ☒ PHS   ☐ Auto Ins.
☐ Health Ins. (Excludes Medicare/Medicaid Managed Care alternative plans )
☐ Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services)

### CLINICAL DATA

Requesting Provider:  ☒ Physician   ☐ NP, PA   ☐ Dental

Facility Medical Director Signature and date:

☐ Service meets criteria for "approval via protocol"

Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.

☐ Office Visit (OV)   ☐ X-ray (XR)   ☐ Scheduled Admission (SA)
☒ Outpatient Surgery (OS)   ☐ Dialysis (DA)

☐ Routine   ☐ Urgent

Estimated Date of Service (mm/dd/yy)    /    /

(This starts the approval window for the "open authorization period")

Multiple Visits/Treatments:   ☐ Radiation therapy   ☐ Chemotherapy
Number of Visits/Treatments: _____   ☐ Other:

Specialist referred to:  Baptist East Dr. Chung

Type of Consultation, Treatment, Procedure or Surgery:
Dr Chung   813.82

Diagnosis:  Fractured ulna
ICD-9 code:

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.

☐ Pertinent Documents have been attached and faxed.

History of Illness/Injury/symptoms with Date of Onset:
Inmate c̄ Fracture
forearm needs Surgery
on 1/19/07

Results of a complaint directed physical examination:
Fractured ulna

Previous treatment and response (including medications):
Ace

***For security and safety, please do not inform patient of possible follow-up appointments***

### UM DETERMINATION:

☐ Alternative Treatment Plan (explain here):

☐ More Information Requested: (See Attached)

☐ Resubmitted with requested information.

Date resubmitted:    /    /

☐ Offsite Service Recommended and Authorized

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Regional Medical Director Signature, printed name and date required:
1,16,07    (mm/dd/yy)

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Cert Type: | Med Class: | CPT code: | UR Auth #: |
|---|---|---|---|
| OS  OS | | 25560 | 16867782 |

05a - UM Referral review form

IQ met

# UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

Form must be Complete and Legible. You must Type or Print
Please send this form with the Authorization Letter to the service provider at the time of the Appointment

**PHS**

## DEMOGRAPHICS

| Site Name & Number: | Patient Name: (Last, First.) | Date: (mm/dd/yy) |
|---|---|---|
| BULLOCK 832 | Lindsay Stephen | 01,23,07 |

| Site Phone # | Alias: (Last, First.) | Date of Birth: (mm/dd/yy) |
|---|---|---|
| (334)738-5625 | | 09,06,77 |

| Site Fax # | Inmate # | PHS Custody Date: (mm/dd/yy) |
|---|---|---|
| (334)738-8763 | 207044 | _ / _ / _ |

| | SS Number | PHS Custody Date: (mm/dd/yy) |
|---|---|---|
| | _ - _ - _ | |

| Will there be a charge? | Sex | Potential Release Date: (mm/dd/yy) |
|---|---|---|
| ☑ Yes ☐ No | ☑ Male ☐ Female | 00,00,00 |

RECEIVED JAN 2 2 2007

| Responsible party: | ☑ PHS | ☐ Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans ) |
|---|---|---|
| | ☐ Auto Ins. | ☐ Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services): |

## CLINICAL DATA

| Requesting Provider: | ☑ Physician | ☑ NP, PA | ☐ Dental |
|---|---|---|---|

**Facility Medical Director Signature and Date:**

☐ Service meets criteria for "approval via protocol"

**Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.**

| ☑ Office Visit (OV) | ☐ X-ray (XR) | ☐ Scheduled Admission (SA) |
|---|---|---|
| ☐ Outpatient Surgery (OS) | ☐ Dialysis (DA) | |

| ☐ Routine | ☐ Urgent |
|---|---|

**Estimated Date of Service (mm/dd/yy)** _ / _ / _
(This starts the approval window for the "open authorization period")

| Multiple Visits/Treatments: | ☐ Radiation therapy |
|---|---|
| | ☐ Chemotherapy |
| Number of Visits/Treatments: ___ | ☐ Other: |

**Specialist referred to:** Dr. Chung 3 8 /

**Type of Consultation, Treatment, Procedure or Surgery:**
Dr Chung 813

**Diagnosis:** Fractured Forearm (ORIF)

**ICD-9 code:** ___

You must include copies of pertinent reports such as lab results, ray interpretations and specialty consult reports with this form.

☐ Pertinent Documents have been attached and filed.

**History of Illness/Injury/symptoms with Date of Onset:**

F/u after surgery to fractured Forearm

**Results of a complaint directed physical examination:**

OSR

**Previous treatment and response (including medications):**

sched

***For security and safety, please do not inform patient of possible follow-up appointments***

## UM DETERMINATION:

☑ Offsite Service Recommended and Authorized

| ☐ Alternative Treatment Plan (explain here): | **FOR PROFESSIONAL USE ONLY** |
|---|---|
| ☐ More Information Requested : (See Attached) | **CONFIDENTIAL RECORD** |
| ☐ Resubmitted with requested information. | **NOT TO BE PHOTO COPIED** |

Date resubmitted: _ / _ / _

**Regional Medical Director Signature, printed name and date required:**

1/22/07

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Cert Type: OK 11 OV | Med Class: OV | CPT code: 99024 | UR Auth #: 768 78 343 |
|---|---|---|---|

05a - UM Referral review form

FAX JAN 2007

# PRISON HEALTH SERVICES: AUTHORIZATION LETTER

| | | | |
|---|---|---|---|
| **Patient Name:** | Lindsay, Stephon | **Inmate Number:** | 207044LI |
| **Service Authorized:** | Office Visits: Op Surgical Followup Referral | **Effective Dates:** | 01/22/2007 |
| **Effective:** | Visits authorized for 60 days from effective date. | **Visits Authorized:** | 1 |
| **Responsible Facility:** | Bullock Correctional Facility | **Contact Name:** | Michelle Pope |
| **Authorization Number:** | 16878343 | **Telephone Number:** | (334)395-5973 Ext 14 |

**Note to Provider of Services:**

- **Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.**
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
Attn: Claims Department
105 West Park Drive, #200
Brentwood, TN 37024-0967

**The consulting physician should complete this section.**
**The completed form will be sealed in the attached envelope and returned with an officer to the correctional facility.**

**Clinical Summary or Attached Report**

f/u ORIF c ulna [illegible]
Ex wound clean
[illegible] [illegible]
P Replace splint
[illegible] for [illegible]

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

***** For security and safety, please do not inform patient of possible follow-up appointments. *****

Signature of Consulting Physician: [signature] Date Time

Reviewed and Signed By Medical Director: 2/6/07 Date Time

Dr. Chung
6936 Winton Blount
Montgomery, AL
260-2288
February 5 at 10 AM

01/22/2007

| Patient Name: | Lindsay, Stephon | Inmate Number: | 207044LI |
|---|---|---|---|
| Service Authorized: | Office Visits: Op Surgical Followup Referral | Effective Dates: | 01/22/2007 |
| Effective: | Visits authorized for 60 days from effective date. | Visits Authorized: | 1 |
| Responsible Facility: | Bullock Correctional Facility | Contact Name: | Michelle Pope |
| Authorization Number: | 16878343 | Telephone Number: | (334)395-5973 Ext 14 |

**Note to Provider of Services:**
- **Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.**
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
Attn: Claims Department
105 West Park Drive, #200
Brentwood, TN 37024-0967

---

**The consulting physician should complete this section.**
**The completed form will be sealed in the attached envelope and returned with an officer to the correctional facility.**

**Clinical Summary or Attached Report**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**\*\*\* For security and safety, please do not inform patient of possible follow-up appointments. \*\*\***

| Signature of Consulting Physician: | | Date | Time |
|---|---|---|---|
| Reviewed and Signed By Medical Director: | | Date | Time |

Dr. Chung
6936 Winton Blount
Montgomery, AL
260-8288
February 5 at 10 Am

01/22/2007

PHS000060

# UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

**PHS**

This form must be Complete and Legible. You must Type or Print.
*Please send this form with the Authorization Letter to the service provider at the time of the Appointment*

## DEMOGRAPHICS

| | | |
|---|---|---|
| **Site Name & Number:** BULLOCK 832 | **Patient Name: (Last, First.)** Lindsay Stephon | **Date: (mm/dd/yy)** 01 23 07 |
| **Site Phone #** ( 3 3 4 ) 7 3 8 - 5 6 2 5 | **Alias: (Last, First.)** | **Date of Birth: (mm/dd/yy)** 09 06 77 |
| **Site Fax #** ( 3 3 4 ) 7 3 8 - 8 7 6 3 | **Inmate #** 207044 | **PHS Custody Date: (mm/dd/yy)** _ _ / _ _ / _ _ |
| | **SS Number** _ _ _ - _ _ - _ _ _ _ | **Potential Release Date: (mm/dd/yy)** 00 00 00 |
| **Will there be a charge?** ☑ Yes ☐ No   **Sex** ☑ Male ☐ Female | | |

**Responsible party:** ☑ PHS ☐ Auto Ins. ☐ Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans ) ☐ Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services):_____

## CLINICAL DATA

**Requesting Provider:** ☑ Physician ☑ NP, PA ☐ Dental

**Facility Medical Director Signature and Date:**

☐ Service meets criteria for "approval via protocol"

**Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.**

☑ Office Visit (OV) ☐ X-ray (XR) ☐ Scheduled Admission (SA)
☐ Outpatient Surgery (OS) ☐ Dialysis (DA)

☐ Routine ☐ Urgent

**Estimated Date of Service (mm/dd/yy)** _ _ / _ _ / _ _
**(This starts the approval window for the "open authorization period")**

**Multiple Visits/Treatments:** ☐ Radiation therapy ☐ Chemotherapy
**Number of Visits/Treatments:** _____ ☐ Other:_____

**Specialist referred to:** Dr. Chung

**Type of Consultation, Treatment, Procedure or Surgery:**
Dr. Chu

**Diagnosis:** Fractured Forearm ORIF
**ICD-9 code:**

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

**History of illness/injury/sypmptoms with Date of Onset:**
Flu after surgery to fractured Forearm

**Results of a complaint directed physical examination:**
cast

**Previous treatment and response (including medications):**
sched

***For security and safety, please do not inform patient of possible follow-up appointments***

## UM DETERMINATION: ☐ Offsite Service Recommended and Authorized

☐ Alternative Treatment Plan (explain here):

☐ More Information Requested: (See Attached)

☐ Resubmitted with requested information.   **Date resubmited:** _ _ / _ _ / _ _

**Regional Medical Director Signature, printed name and date required:**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| **Cert Type:** | **Med Class:** | **CPT code:** | **UR Auth #:** |
|---|---|---|---|

05a - UM Referral review form




# STATE OF ALABAMA
# INMATE HEALTHCARE AUTHORIZATION

Enrollment
Telephone (334) 833-5948
Toll Free (866) 853-1384
Fax (334) 240-1488

Blue Cross Blue Shield of Alabama
(877) 231-7239

Prison Health Services
Telephone (334) 395-5973
Toll Free (877) 279-1335
Fax (334) 395-8156

1/30/2007

| | | | |
|---|---|---|---|
| **Inmate Name** | **LINDSAY , STEPHON** | **Inmate #** | **00207044** |
| **Facility Name** | **BULLOCK CORRECTIONAL FACILITY** | | |

| | |
|---|---|
| **Facility Address1** | **POB 5107** |
| **Facility Address2** | |
| **City** | **UNION SPRINGS** |
| **State** | **AL** |
| **Zipcode** | **36089** |

## * Attention Health Care Provider *

**For Hospital/Facility Claims:**

All facility claims for inpatient and outpatient services should be submitted directly to Blue Cross and Blue Shield of Alabama. Please submit your facility charges to Blue Cross under group **57688** with contract number **XAJ624592946** as you currently do for all other Blue Cross subscribers. This process applies to facility charges only and does not include physician services.

**Utilization Management Review:**

All concurrent in-patient reviews must be provided to PHS Regional Office in Montgomery. The contact person is Michelle Pope, Utilization Management Coordinator. (334) 395-5973   Ext 14

**For charges not covered under SEIB - BC/BS Program:**

For Payment, Please Submit Claims with Inmate number to:
Prison Health Services
P.O.Box 967
Brentwood TN 37024-0967



- Medicare/Medicaid does not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number).
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until a clinical summary is received.

# UTILIZATION MANAGEMENT REFERRAL REVIEW FORM
Form must be Complete and Legible. You must Type or Print
Please send this form with the Authorization Letter to the service provider at the date of the Appointment

## DEMOGRAPHICS

| Site Name & Number: | Patient Name: (Last, First) | Date: (mm/dd/yy) |
|---|---|---|
| BULLOCK 832 | Lindsay - Stephan | 01.16.01.07 |
| Site Phone #: | Alias: (Last, First) | Date of Birth: (mm/dd/yy) |
| (334) 738-5625 | | 09.06.77 |
| Site Fax #: | Inmate #: | PHS Custody Date: (mm/dd/yy) |
| (334) 738-8763 | 207044 | |
| Will there be a charge? Sex | SS Number: | Potential Release Date: (mm/dd/yy) |
| ☑ Yes ☐ No ☑ Male ☐ Female | | 00.00.00 |

Responsible party: ☑ PHS ☐ Auto Ins.
☐ Health Ins (includes Medicare/Medicaid Managed Care alternative plans )
☐ Other, be specific (includes Medicare, Medicaid and Veterans Administration Services

## CLINICAL DATA

Requesting Provider: ☑ Physician ☐ NP, PA ☐ Dentist

History of illness/injury/symptoms with Date of Onset:

Inmate c̄ fractured ulnar shaft

Facility Medical Director Signature and Date:

☐ Service needs criteria for "approval via protocol"

Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.

☑ Office Visit (OV)   ☐ X-ray (XR)   ☐ Scheduled Admission (SA)
☐ Outpatient Surgery (OS)   ☐ Dialysis (DX)
☐ Routine   ☐ Urgent

Results of a complaint directed physical examination:

Estimated Date of Service (mm/dd/yy): _____/_____/_____
(This starts the approval window for the "open authorization period")

Multiple Visits/Treatments:   ☐ Radiation Therapy
Number of Visits/Treatments: _____   ☐ Chemotherapy   ☐ Other

Specialist referred to: Dr. Chung

Type of Consultation, Treatment, Procedure or Surgery:
Dr. Chung

Previous treatment and response (including medications):

Advil

Diagnosis: Fractured ulna
ICD-9 code:
You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.
☐ Pertinent documents have been attached and faxed

***For security and safety, please do not inform patient of possible follow-up appointments***

UM DETERMINATION:
☐ Alternative Treatment Plan (explain here):   ☑ Office Service Recommended and Authorized
☐ More Information Requested (See Attached)
☐ Re-submit with requested information.   Date resubmitted: _____/_____/_____

Regional Medical Director Signature, printed name and date required:

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

1, 16, 07

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Get Type: OH | Mod OV | CPT Code: 99201 | UR Auth #: 1085179 |
|---|---|---|---|

05a - UM Referral review form



**%**

E0701800445  LINDSAY,STEPHON
DOB: 09/06/77  Age:29Y  MR #:297831
Admit Date/Time: 01/19/07  0916A
2015 CHUNG,TAI Q



## PHYSICIAN'S ORDERS

---

Height:_____  Weight:_____

Drug Sensitivities and Allergies  ☐ NKDA  ☐ Yes, list: _____

**New Admissions Only:**
1. Diagnosis:
2. Admit Status:    ☐ **Inpatient Admission**    ☐ **Outpatient Status**    ☐ **Observation Status**

| Date | Time | |
|------|------|---|
| | | Dr. |
| 1/15/07 | | Please make a Xerox copy of my orders |
| | | for his attendants to return to his facility |
| | | ① Elevate ⊍ arm |
| | | ② Change dressing prn |
| | | Keep split on |
| | | ③ Vicodin TT po Q4h prn pain |
| | | Cephalexin 500 mg po Q6h x 2d |
| | | ④ Bottom bunk bed |
| | | ⑤ See me in 1 wk |
| | | Tai Q.B Chung |
| | | [signatures] |
| | | 1/19/07 |
| | | [signature] |
| | | 1/21/07 |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Physician Signature: _____

**The following abbreviations are not to be written or used!**


PH 350

| Q.O.D., QOD, q.o.d, qod | Trailing zero (X.0 mg) | Lack of leading zero (.X mg) | MS | MSO4 | MgSO4 | U | q.d., QD, qd | IU |
|---|---|---|---|---|---|---|---|---|

Form #PH 35001 Revised 11/18/05

PHS000064

# PRISON HEALTH SERVICES: AUTHORIZATION LETTER

| Patient Name: | Lindsay, Stephon | Inmate Number: | 207044LI |
|---|---|---|---|
| Service Authorized: | Outpatient Surgery: Op One Day Surgery | Effective Dates: | 01/16/2007 |
| Effective: | Visits authorized for 60 days from effective date. | Visits Authorized: | 1 |
| Responsible Facility: | Bullock Correctional Facility | Contact Name: | Michelle Pope |
| Authorization Number: | 16867782 | Telephone Number: | (334)395-5973 Ext 14 |

**Note to Provider of Services:**

- Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
Attn: Claims Department
105 West Park Drive, #200
Brentwood, TN 37024-0967

---

**The consulting physician should complete this section.**
**The completed form will be sealed in the attached envelope and**
**returned with an officer to the correctional facility.**

| Clinical Summary or Attached Report |
|---|
| |
| |
| |
| FOR PROFESSIONAL USE ONLY CONFIDENTIAL RECORD NOT TO BE PHOTO COPIED |
| |

**\*\*\* For security and safety, please do not inform patient of possible follow-up appointments. \*\*\***

| | Date | Time |
|---|---|---|
| Signature of Consulting Physician: | | |
| Reviewed and Signed By Medical Director: | Date | Time |

Baptist East Hospital - Dr. Chung
Montgomery, AL
January 19 at 9:30
Surgery

01/17/2007

PHS000065

**UTILIZATION MANAGEMENT REFERRAL REVIEW FORM**

PHS

Fo... must be Complete and Legible. You must Type or Pr...
*Please send this form with the Authorization Letter to the service provider at the time of the Appointment*

## DEMOGRAPHICS

| | | |
|---|---|---|
| **Site Name & Number:**<br>BULLOCK 832 | **Patient Name: (Last, First,)**<br>*Lindsay Stephon* | **Date: (mm/dd/yy)**<br>01/16/06 |
| **Site Phone #**<br>(334) 738 - 5625 | **Alias: (Last, First,)** | **Date of Birth: (mm/dd/yy)**<br>09/06/77 |
| **Site Fax #**<br>(334) 738 - 8763 | **Inmate #**<br>207044 | **PHS Custody Date: (mm/dd/yy)**<br>/ / |
| **Will there be a charge?** ☑Yes ☐No  **Sex** ☑Male ☐Female | **SS Number**<br>_ _ _ - _ _ - _ _ _ _ | **Potential Release Date: (mm/dd/yy)**<br>00/00/00 |

**Responsible party:** ☑PHS ☐Auto Ins. ☐Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans ) ☐Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services):_____

## CLINICAL DATA

**Requesting Provider:** ☑Physician ☐NP, PA ☐Dental

_____

**Facility Medical Director Signature and Date:**

_____

☐ Service meets criteria for "approval via protocol"

**Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.**

☐ Office Visit (OV)  ☐ X-ray (XR)  ☐ Scheduled Admission (SA)
☑ Outpatient Surgery (OS)  ☐ Dialysis (DA)

☐ Routine                    ☐ Urgent

**Estimated Date of Service (mm/dd/yy)** _ _ / _ _ / _ _
(This starts the approval window for the "open authorization period")

**Multiple Visits/Treatments:**       ☐ Radiation therapy
                                        ☐ Chemotherapy
**Number of Visits/Treatments:** ___  ☐ Other:

**Specialist referred to:** Baptist East- Dr. Chung

**Type of Consultation, Treatment, Procedure or Surgery:**
*Dr Chung*

**Diagnosis:** *Fractured Ulna*
**ICD-9 code:**

You must include copies of pertinent reports such as lab results, x ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

**History of Illness/injury/sypmtoms with Date of Onset**
*Inmate c Fractured
Forearm needs Surgery
on 1/19/07*

**Results of a complaint directed physical examination:**
*Fractured Ulna*

**Previous treatment and response (including medications):**
*Adv*

*****For security and safety, please do not inform patient of possible follow-up appointments*****

**UM DETERMINATION:**    ☐ Offsite Service Recommended and Authorized

☐ Alternative Treatment Plan (explain here):

☐ More Information Requested: (See Attached)

☐ Resubmited with requested information.    **Date resubmited:** _ _ / _ _ / _ _

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

**Regional Medical Director Signature, printed name and date required:**
_____  / / (mm/dd/yy)

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| **Cert Type:** | **Med Class:** | **CPT code:** | **UR Auth #:** |
|---|---|---|---|

05a - UM Referral review form

PHS000066



# STATE OF ALABAMA
# INMATE HEALTHCARE AUTHORIZATION

Enrollment
Telephone (334) 833-5948
Toll Free (866) 853-1384
Fax (334) 240-1488

Blue Cross Blue Shield of Alabama
(877) 231-7239

Prison Health Services
Telephone (334) 395-5973
Toll Free (877) 279-1335
Fax (334) 395-8156

1/16/2007

| | | | |
|---|---|---|---|
| Inmate Name | **LINDSAY , STEPHON** | Inmate # | **00207044** |
| Facility Name | **BULLOCK CORRECTIONAL FACILITY** | | |

| | |
|---|---|
| Facility Address1 | **POB 5107** |
| Facility Address2 | |
| City | **UNION SPRINGS** |
| State | **AL** |
| Zipcode | **36089** |

## * Attention Health Care Provider *

### For Hospital/Facility Claims:

All facility claims for inpatient and outpatient services should be submitted directly to Blue Cross and Blue Shield of Alabama. Please submit your facility charges to Blue Cross under group **57688** with contract number **XAJ624592946** as you currently do for all other Blue Cross subscribers. This process applies to facility charges only and does not include physician services.

### Utilization Management Review:

All concurrent in-patient reviews must be provided to PHS Regional Office in Montgomery. The contact person is Michelle Pope, Utilization Management Coordinator. (334) 395-5973   Ext 14

### For charges not covered under SEIB - BC/BS Program:

For Payment, Please Submit Claims with Inmate number to:
Prison Health Services
P.O.Box 967
Brentwood TN 37024-0967

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

- Medicare/Medicaid does not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number).
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until a clinical summary is received.

# PRISON HEALTH SERVICES: AUTHORIZATION LETTER

| | | | |
|---|---|---|---|
| **Patient Name:** | Lindsay, Stephon | **Inmate Number:** | 207044LI |
| **Service Authorized:** | Office Visits: Op Orthopedics Referral | **Effective Dates:** | 01/10/2007 |
| **Effective:** | Visits authorized for 60 days from effective date. | **Visits Authorized:** | 1 |
| **Responsible Facility:** | Bullock Correctional Facility | **Contact Name:** | Michelle Pope |
| **Authorization Number:** | 16851579 | **Telephone Number:** | (334)395-5973 Ext 14 |

**Note to Provider of Services:**

- **Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.**
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
Attn: Claims Department
105 West Park Drive, #200
Brentwood, TN 37024-0967

---

**The consulting physician should complete this section.
The completed form will be sealed in the attached envelope and
returned with an officer to the correctional facility.**

| Clinical Summary or Attached Report |
|---|
| *[handwritten clinical notes, illegible]* |

**\*\*\* For security and safety, please do not inform patient of possible follow-up appointments. \*\*\***

Signature of Consulting Physician: *[signature]*   Date: 1/13/07   Time:

Reviewed and Signed By
Medical Director:   Date:   Time:

*[handwritten]* Dr. Chung
6936 Winton Blount
Montgomery, AL
260-2288
January 12 at 10:15

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

01/10/2007

PHS000068

TAI Q. CHUNG M.D.

DATE _____ 1/1/07 _____

NAME _____ Stephen Lindsay _____

PHONE _____ HOME _____ WORK _____

PROCEDURE _____ ORIF c u/ne. _____

_____

DX _____ Fr (to ulna) _____ CPT _____

WHERE _____ (OUTPATIENT) _____

TIME NEEDED _____ 1hr _____

ANETHESIA (GENERAL) ____ BLOCK ____ LOCAL ____ CHOICE _____

SPEICAL EQUIPMENT __ Small fragment set _____

_____ C-arm _____

ASSISTANT _____

LABS _____

BLOOD TRANSFUSIONS _____

OTHER INSTRUCTIONS _____

SURGERY OR TEST DATE _____

INSURANCE INFORMATION _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

*Stephen Lindsay*

Patient Information

 **Baptist** HEALTH

# PHYSICIAN'S ORDERS

Height:_____  Weight:_____

Drug Sensitivities and Allergies   ❑ NKDA   ❑ Yes, list: _____

| Date | Time | ROUTINE PRE OPERATIVE ORDERS |
|------|------|------|
| | | DR.  *JM CAONC* |
| | | ① Operative permit for: *Open reduction and internal fixation* |
| | | *(L) ulna* |
| 1/12/5 | | ② **LAB: check appropriate diagnosis** |
| | | A. _____ **CBC:** |
| | | _____ Pre op patient [V72 83]    _____ Abdominal pain |
| | | _____ Long term use of medications    _____ Other |
| | | _____ Fever |
| | | |
| | | B. _____ **TYPE & SCREEN** |
| | | |
| | | C. _____ **CHEM 7:** |
| | | _____ Edema    _____ Nephropathology |
| | | _____ Hypertensive disease    _____ Dizziness |
| | | _____ Long term use of medications    _____ Other |
| | | _____ Diabetic |
| | | |
| | | D. _____ **PT PTT** |
| | | _____ Known or suspected    _____ Cirrhosis hepatitis |
| | | _____ coagulation abnormality    _____ CHF |
| | | _____ Anticoagulatn therapy    _____ Cardiac dysrhythmia |
| | | _____ Hemorrhage or anemia    _____ Dysfunctional uterine bleeding |
| | | _____ Pulmonary congestion    _____ Menorrhagia |
| | | _____ Other |
| | | |
| | | E. _____ **DRUG LEVELS:  circle appropriate drug** |
| | | _____ Patients taking  Digoxin   Tegretol   Theophylline   Dilantin   Depakote |
| | | _____ Phenobarb |
| | | _____ Other |
| | | |
| | | F. _____ **URINE PREGNANCY** |
| | | _____ On all menstruating females |
| | | Physician Signature: _____ |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Page 1 of  2

**The following abbreviations are not to be written or used!**

| Q.O.D., QOD, q.o.d, qod | Trailing zero (X.0 mg) | Lack of leading zero (.X mg) | MS | MSO4  MgSO4 | U | q.d., QD, qd | IU |
|------|------|------|------|------|------|------|------|

PH 350

Form #PH 35020     Revised 11/18/05

PHS000070

 **Baptist** HEALTH     **PHYSICIAN'S ORDERS**

Patient Information

Height: _____  Weight: _____

Drug Sensitivities and Allergies    ⏌ NKDA    ⏌ Yes, list: _____

| Date | Time | ROUTINE PRE OPERATIVE ORDERS |
|------|------|------------------------------|

DR. _____

**G. _____ UA:**

| | |
|--|--|
| _____ Diabetic | _____ Fever |
| _____ Renal glycosuria | _____ Dysuria |
| _____ Dehydration | _____ Abdominal & pelvic pain |
| _____ Stress incontinence | _____ Long term use medication |

**H. ADDITIONAL LAB TESTS:**

**3. EKG:**

| | |
|--|--|
| _____ MVP/murmer or other | _____ Tachycardia/palpitation |
| valve disorder | _____ Ischemic heart disease (hx MI) |
| _____ Chest pain discomfort | _____ Dizziness |
| pressure | _____ Other |
| _____ Hypertensive disease | |
| _____ Pulmonary congestion & hypostasis (CHF) | |
| _____ Electrolyte/fluid abnormality | |

**4. CHEST XRAY:**

_____ Existing pulmonary disease (asthma COPD etc)

Specify:

_____ Existing cardiac disease (hypertension CHF etc)

_____ Internal Injury

_____ Fever

_____ Cough

_____ Disorders of bone & cartilage (arthritis)

_____ Other

5. _____ / **Antibiotic:**

6. _____ ✓ **NPO after midnight**

7. _____ ❏ **TED or** ❏ **SCD hose prior to surgery**

8. _____ **Other Orders:**

9. **Anesthesia Consult** ❏ Yes    ❏ No

Physician Signature: _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Page 2 of 2**

The following abbreviations are not to be written or used!

| Q.O.D., QOD, q.o.d, qod | Trailing zero (X.0 mg) | Lack of leading zero (.X mg) | MS | MSO4 | MgSO4 | U | q.d., QD, qd | IU |
|---|---|---|---|---|---|---|---|---|

# PRISON HEALTH SERVICES: AUTHORIZATION LETTER

| | | | |
|---|---|---|---|
| **Patient Name:** | Lindsay, Stephon | **Inmate Number:** | 207044LI |
| **Service Authorized:** | Office Visits: Op Orthopedics Referral | **Effective Dates:** | 01/10/2007 |
| **Effective:** | Visits authorized for 60 days from effective date. | **Visits Authorized:** | 1 |
| **Responsible Facility:** | Bullock Correctional Facility | **Contact Name:** | Michelle Pope |
| **Authorization Number:** | 16851579 | **Telephone Number:** | (334)395-5973 Ext 14 |

**Note to Provider of Services:**

- Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
Attn: Claims Department
105 West Park Drive, #200
Brentwood, TN 37024-0967

---

**The consulting physician should complete this section.
The completed form will be sealed in the attached envelope and
returned with an officer to the correctional facility.**

---

### Clinical Summary or Attached Report

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**\*\*\* For security and safety, please do not inform patient of possible follow-up appointments. \*\*\***

| | Date | Time |
|---|---|---|
| Signature of Consulting Physician: | | |
| Reviewed and Signed By Medical Director: | Date | Time |

Dr. Chung
6936 Winton Blount
Montgomery AL
260-2388
Monday 12 at 10¹⁵

# UTILIZATION MANAGEMENT REFERRAL REVIEW — RM

**PHS**

Form must complete and Legible. You must Type or Print
Please send this form with the Authorization Letter to the service provider at the time of the Appointment

## DEMOGRAPHICS

| Site Name & Number: | Patient Name: (Last, First) | Date: (mm/dd/yy) |
|---|---|---|
| BULLOCK 832 | *Lindsay Stephon* | 01 16 07 |
| **Site Phone #** | **Alias: (Last, First)** | **Date of Birth: (mm/dd/yy)** |
| ( 3 3 4 ) 7 3 8 - 5 6 2 5 | | 09 06 77 |
| **Site Fax #** | **Inmate #** | **PHS Custody Date: (mm/dd/yy)** |
| ( 3 3 4 ) 7 3 8 - 8 7 6 3 | *207044* | / / |
| **Will there be a charge?** Sex | **SS Number** | **Potential Release Date: (mm/dd/yy)** |
| ☑ Yes ☐ No  ☑ Male ☐ Female | | 00 00 00 |

Responsible party: ☑ PHS  ☐ Auto Ins.    ☐ Health Ins (Excludes Medicare/Medicaid Managed Care alternative plans )
☐ Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services)

## CLINICAL DATA

**Requesting Provider:**  ☑ Physician  ☐ NP, PA  ☐ Dental

| | **History of Illness/injury/symptoms with Date of Onset:** |
|---|---|
| **Facility Medical Director Signature and Date:** | *Inmate c Fractured Ulnar shaft* |
| ☐ Service meets criteria for "approval via protocol" | |

**Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.**

☑ Office Visit (OV)  ☐ X-ray (XR)  ☐ Scheduled Admission (SA)
☐ Outpatient Surgery (OS)  ☐ Dialysis (DX)

☐ Routine  ☐ Urgent

**Estimated Date of Service (mm/dd/yy):** ___/___/___
(This starts the approval window for the "open authorization period")

**Results of a complaint directed physical examination:**

**Multiple Visits/Treatments:**  ☐ Radiation Therapy  ☐ Chemotherapy
**Number of Visits/Treatments:** ___  ☐ Other:

**Specialist referred to:** *Dr. Chung*

**Type of Consultation, Treatment, Procedure or Surgery:**

**Previous treatment and response (including medications):**

*Advil*

**Diagnosis:** *Fractured Ulna*
**ICD-9 code:**

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

***For security and safety, please do not inform patient of possible follow-up appointments***

**UM DETERMINATION:**    ☐ Offsite Service Recommended and Authorized

☐ Alternative Treatment Plan (explain here):

☐ More Information Requested: (See Attached)

☐ Resubmitted with requested information.  Date resubmitted: ___/___/___

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Regional Medical Director Signature, printed name and date required:**   ___/___/___ (mm/dd/yy)

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Cert Type: | Med Class: | CPT code: | UR Auth #: |
|---|---|---|---|

05a - UM Referral review form



# STATE OF ALABAMA
## INMATE HEALTHCARE AUTHORIZATION

Enrollment
Telephone (334) 833-5948
Toll Free (866) 853-1384
Fax (334) 240-1488

Blue Cross Blue Shield of Alabama
(877) 231-7239

Prison Health Services
Telephone (334) 395-5973
Toll Free (877) 279-1335
Fax (334) 395-8156

1/11/2007

| | | | |
|---|---|---|---|
| **Inmate Name** | **LINDSAY , STEPHON** | **Inmate #** | **00207044** |
| **Facility Name** | **BULLOCK CORRECTIONAL FACILITY** | | |
| **Facility Address1** | **POB 5107** | | |
| **Facility Address2** | | | |
| **City** | **UNION SPRINGS** | | |
| **State** | **AL** | | |
| **Zipcode** | **36089** | | |

**\* Attention Health Care Provider \***

**For Hospital/Facility Claims:**
All facility claims for inpatient and outpatient services should be submitted directly to Blue Cross and Blue Shield of Alabama. Please submit your facility charges to Blue Cross under group **57688** with contract number **XAJ624592946** as you currently do for all other Blue Cross subscribers. This process applies to facility charges only and does not include physician services.

**Utilization Management Review:**
All concurrent in-patient reviews must be provided to PHS Regional Office in Montgomery. The contact person is Michelle Pope, Utilization Management Coordinator. (334) 395-5973   Ext 14

**For charges not covered under SEIB - BC/BS Program:**
For Payment, Please Submit Claims with Inmate number to:
Prison Health Services
P.O.Box 967
Brentwood TN 37024-0967

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE FAXED OR COPIED

- Medicare/Medicaid does not cover any health services provided to an inmate in custody except certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number).
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until a clinical summary is received.

Fortress

| Facility Name: **Bullock** | | | | | | | | | | | | Month/Year of Charting: **4/07** | | | | | | | | | | | | | | | | | | |

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

**Amoxil 500mg
po TID x 10 Days**

| Hour | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0400 | 9 | 9 | | m | m | m | 9 | 9 | 9 | 9 | 9 | 9 | | | | | | | | | | | | | | | | | | | |
| 1100 | | m | m | m | 9 | 9 | 9 | | 9 | | 9 | 9 | | | | | | | | | | | | | | | | | | | |
| 1700 | P | P | P | P | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | | | | | | | | | | | | | | | | | | | |

Start Date: **4/2/07**   Prescriber: **Siddiq**
Stop Date: **4/13/07**   RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

**CTm ÷ po TID
x 10 Days**

| Hour | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0400 | 9 | 9 | | m | m | m | 9 | 9 | 9 | 9 | 9 | 9 | | | | | | | | | | | | | | | | | | | |
| 1100 | | m | m | m | 9 | 9 | 9 | | 9 | | 9 | 9 | | | | | | | | | | | | | | | | | | | |
| 1700 | P | P | P | P | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | | | | | | | | | | | | | | | | | | | |

Start Date: **4/2/07**   Prescriber: **Siddiq**
Stop Date: **4/13/07**   RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

Start Date:   Prescriber:
Stop Date:   RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

Start Date:   Prescriber:
Stop Date:   RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

Start Date:   Prescriber:

FOR PROFESSIONAL USE
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

Start Date:   Prescriber:
Stop Date:   RX #:

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
|  | P. Marin LPN | A | J. Juice RN | gpr | 1. Discontinued Order |
| Allergies |  |  | James LPN |  | 2. Refused |
|  |  |  |  |  | 3. Patient out of facility |
|  |  |  |  |  | 4. Charted in Error |
| Housing Unit: |  |  |  |  | 5. Lock Down |
| Patient ID Number: **207044** |  |  |  |  | 6. Self Administered |
| Patient Name: |  |  |  |  | 7. Medication out of Stock |
| **Lindsey, Stephen** | | | Date of Birth: | | 8. Medication Held |
|  |  |  |  |  | 9. No Show |
|  |  |  |  |  | 10. Other |

PHS000075

Copy 4-05-07

| Facility Name: | | Month/Year of Charting: |
|---|---|---|

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| Amoxill 500mg po tid X10 days | 3A | 9999999 |
| | 9A | 99999999 |
| | 3p | Bl 9 99999 |

| Start Date: 4-02-07 | Prescriber: Siddig |
|---|---|
| Stop Date: 4-12-07 | RX #: |

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| CTM i po Bid X10 days | 3A | 9999999 |
| | 3p | Bl9999 99 |

| Start Date: 4-02-07 | Prescriber: Siddig |
|---|---|
| Stop Date: 4-12-07 | RX #: 8 |

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| | | |

| Start Date: | Prescriber: |
|---|---|
| Stop Date: | RX #: |

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| | | |

| Start Date: | Prescriber: |
|---|---|
| Stop Date: | RX #: |

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| | | |

| Start Date: | Prescriber: |
|---|---|
| Stop Date: | RX #: |

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Start Date: | Prescriber: |
|---|---|
| Stop Date: | RX #: |

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | | | B. Leike RN | BL | 1. Discontinued Order |
| Allergies NKDA | | | | | 2. Refused |
| | | | | | 3. Patient out of facility |
| | | | | | 4. Charted in Error |
| | | | | | 5. Lock Down |
| Housing Unit: | | | | | 6. Self Administered |
| Patient ID Number: 207044 | | | M Benefield | MB | 7. Medication out of Stock |
| Patient Name: | | | | | 8. Medication Held |
| Lindsey, Stephon | | | Date of Birth: 9-06-77 | | 9. No Show |
| | | | | | 10. Other |

PHS000076

| Facility Name: Bullock | | | | | | | | | | | | | | | | | | | Month/Year of Charting: 1/07 | | | | | | | | | | | |

Percogesic ¨i¨ po tid x 2 days

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0600 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1700 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Start Date: 1/20/07    Prescriber: Siddiq
Stop Date: 1/22/07    RX #:

Cephalexin 500mg tid x 2 days

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0600 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1700 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Start Date: 1/20/07    Prescriber: Siddiq
Stop Date: 1/22/07    RX #:

Change dsg to ARM PRN

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| R | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| N | | | | | | | | | | | | | | | | | | | | PFPF | | | | | | | | | | | |

Start Date: 1/20/07    Prescriber: Siddiq
Stop Date: 1/31/07    RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | Roberts RN | SR | P Brazier LPN | PF | 1. Discontinued Order |
| Allergies N/C A | James LPN | JX | J. Huber RN | JH | 2. Refused<br>3. Patient out of facility<br>4. Charted in Error<br>5. Lock Down<br>6. Self Administered<br>7. Medication out of Stock<br>8. Medication Held<br>9. No Show<br>10. Other |

Housing Unit:
Patient ID Number: 207044
Patient Name: Lindsey Stephen
Date of Birth:

PHS000077



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 4-05-07 | 1755) Received to Ventren Health. Oriented to sick call procedure & pill call times. Denied hx of hepatitis or need to speak c̄ Mental Health. No cleared for kitchen duty due to no current PPD on chart. B. Luke RN |
| 4/05/07 4pm | Chart reviewed per Mental Health Staff — C Tarrop |
| 4-23-07 | O - Annual physical complete, TB Skin test done — |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Lindsey, Stephon | 207044 | 9-06-77 | B/m | VCF |

PHS-MD-70049          **Complete Both Sides Before Using Another Sheet**

PHS000078

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

DEPARTMENT OF CORRECTIONS
# TRANSFER & RECEIVING SCREENING FORM

RECEIVED: Inmate/Health Record

Institution: Ventres

Date: 4-05-07  Time: 1755  AM/PM

RECEIVED FROM:
Institution/Work Release Center/Free-World Hospital
_____

RECEIVING MEDICAL STATUS

[X] Population

[ ] Infirmary

[ ] Isolation

RELEASED: Inmate/Health Record

Institution: Bullock

Date: _____  Time: _____  AM/PM

RELEASE FROM:
[ ] Infirmary    [ ] Segregation
[ ] Population   [ ] Mental Health
[ ] Other _____

RELEASE TO:
[ ] DOC   [ ] Infirmary   [ ] Mental Health
[ ] _____
Institution/Work Release Center/Free-World Hospital

ALLERGIES:

NKA

PHYSICAL EXAMINATION

Date of last exam: 02-05-06

Chest X-Ray Date: _____ Result: _____

PPD Reading 02-07-06 Negative

Classification: _____

Limitations: _____

| LAB RESULTS - - LAST REPORT | Date | Normal | Abnormal | | YES | NO | |
|---|---|---|---|---|---|---|---|
| CBC | _____ | [ ] | [ ] | Wears Glasses/Contacts | [ ] | [X] | Plate (L) arm |
| Urinalysis | _____ | [ ] | [ ] | Dental Prosthesis | [ ] | [X] | |
| | | [ ] | [ ] | Hearing Aide | [ ] | [X] | B. Leike RN |
| | | | | Other Prosthesis | [X] | [ ] | Recieving Nurse |

CURRENT OR CHRONIC MEDICAL/DENTAL/MENTAL HEALTH PROBLEMS OR COMPLAINTS


CURRENT MEDICATION - - DOSAGE AND FREQUENCY

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

SCHEDULE FOR CHRONIC CARE CLINIC

DATE: _____  LAST CLINIC: _____

| MEDICATIONS | [ ] Sent w/ inmate | [ ] Not sent w/ inmate |
|---|---|---|
| X-RAY FILM | [ ] Sent w/ inmate | [ ] Not sent w/ inmate |
| HEALTH RECORD | [ ] Sent w/ inmate | [ ] Not sent w/ inmate |

Released to: _____

Date: _____ Time: _____ AM/PM

| MEDICATIONS | [ ] Received | [ ] Not Received |
|---|---|---|
| X-RAY FILM | [ ] Received | [ ] Not Received |
| HEALTH RECORD | [X] Received | [ ] Not Received |
| CHART REVIEWED | [X] YES | [ ] NO |

Received by: B. Leike RN
Signature of Receiving Nurse

Date: 4-05-07  Time: 1755  AM/PM

FOLLOW-UP CARE NEEDED     Date     Time     With Whom - - Location (Sending Nurse)     Date/Appt. Made w/Whom (Rec. Nurse)

[ ] Medical   [ ] Dental   _____   _____

[ ] Mental Health   _____   _____

NURSING ASSESSMENT (SENDING NURSE)
(Noted from health record documentation)

| HISTORY | | Yes | No |
|---|---|---|---|
| | Drug Use | | |
| | Mental Illness | | |
| | Suicide Attempt | | |
| | Chronic Care | | |

| STATUS | | | |
|---|---|---|---|
| | Special Diet | | |
| | Appearance | | |

OTHER PERTINENT NURSING ASSESSMENT

NURSING ASSESSMENT (RECEIVING NURSE)
(Noted from inmate assessment)

| SKIN | | Yes | No |
|---|---|---|---|
| | Open Sores | | [X] |
| | Lice | | [X] |
| | Edema | [X] | |
| | Warm & Dry | [X] | |
| | Cool & Moist | | [X] |

| CONDITION | | | |
|---|---|---|---|
| | Alert | [X] | |
| | Oriented | [X] | |
| | Uncooperative | | [X] |
| | Depressed | | [X] |

INTAKE Edema LLE @ X's

Sick Call Procedures Explained   yes

Height   6'1"

Weight   160 #

Blood Pressure   140/90

Temperature   98.4

Pulse Resp.   80/20

Other ↓ strength (L) arm

B. Leike RN                          4-05-07
_____     _____     _____     _____
Signature of Nurse Completing Assessment (Sending Nurse)     Date     Signature of Intake Screening Nurse (Receiving Nurse)     Date

INMATE NAME (LAST, FIRST, MIDDLE)

Lindsey, Stephon

| DOC# | DOB | Race/Sex | FAC. |
|---|---|---|---|
| 207044 | 9-6-77 | B/m | Bullock |

PHS-MD-70009

(White - Medical Jacket, Yellow - Transfer Coordinator)

PHS000079



# Nursing Evaluation Tool: Upper Respiratory Complaints

**Facility:** Alabama Department of Corrections

**Patient Name:** Lindsay _Last_  Stephon _First_

**Inmate Number:** 207044  **Date of Birth:** 9 | 9 | 77 _MM DD YYYY_ MI

**Date of Report:** 4 | 2 | 07 _MM DD YYYY_  **Time Seen:** 0500 (AM) PM Circle One

**Subjective:** Chief Complaint(s): (Check All That Apply) ☒ Runny/Stuffy Nose ☐ Sneezing ☐ Sore Throat ☐ Swollen Glands ☒ Headache ☐ Fever
☐ Malaise ☐ Earache Cough: ☐ No ☒ Yes: ☐ Non-productive ☒ Productive: (sputum description): _Yellowish-Red_
☐ Other: _____
Onset: _X 2 week_
History: _None relevant_
(Continue on back if necessary)

☐ Check Here if additional notes on back
History of Asthma: ☒ No ☐ Yes  Cardiac/CHF history: ☒ No ☐ Yes  History of HIV Disease: ☒ No ☐ Yes

**Objective:** Vital Signs: (If Indicated) T: _98⁸_ P: _82_ RR: _20_ B/P: _130 | 80_  _Fit tot 158_

Eyes: ☐ Clear ☐ Watery ☐ Injected (red) Drainage: ☐ No ☐ Yes: _____
Nose: Congestion: ☐ No ☒ Yes  Drainage: ☒ No ☐ Yes: _____
Throat examination: ☒ Normal ☐ Red ☐ Enlarged tonsils ☐ Edematous
Neck: ☒ Normal ☐ Enlarged Lymph Nodes

| Lung sounds: | Right | Left |
|---|---|---|
| Clear | ☒ | ☒ |
| Diminished | ☐ | ☐ |
| Crackles | ☐ | ☐ |
| Rhonchi | ☐ | ☐ |
| Wheezing | ☐ | ☐ |

☐ Additional Examination: _____
(Continue on back if necessary)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

☐ Check Here if continued on back

**Assessment: (Referral Status)**
☐ Referral **NOT Required**  Preliminary Determination(s): _Cold Symptoms_

☒ Referral **Required** referral due to the following: (Check all that apply)
☐ Abnormal Vital Signs ☐ Inability to swallow ☐ Significant shortness of breath ☐ Recurrent Complaint (More than 2 visits)
☐ Abnormal Lung exam ☐ Significant Wheezing which does not improve with inhaler ☐ Other: _____

**Comment:** You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

**Plan:** Check All That Apply:
☒ Advise rest and oral fluid intake  ☒ Warm saline gargles PRN
☒ If no referral is made, advise to return in 3 - 5 days if symptoms have not resolved
☒ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up. ☒ YES ☐ NO (If NO then schedule patient for appropriate follow-up visits)
☐ Other: _____
(Describe)

☐ OTC Medications given (CTM 4 mg, Tylenol 650 mg Bid po prn x 2 days) ☒ NO ☐ YES (If Yes List): _____

Referral: ☐ NO ☒ YES (If Yes, Whom/Where): _Dr Siddiq_  Date for referral: 4 | 2 | 07 _MM DD YYYY_
Referral Type: ☒ Routine ☐ Urgent ☐ Emergent (if emergent who was contacted?): _____ Time _____

_Martha Jackson_
Nurses Signature  Name: _Martha Jackson LPN_
Printed

PHS000080



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Stephon Lindsay_    Date of Request: _4·2·07_
ID # _207044_    Date of Birth: _9·6·77_ Location: _E2-27A_
Nature of problem or request: _I have a cold / I ask for cold_
_medicine treatment to help me get over it_

_____

_____

_____ Signature

---

**DO NOT WRITE BELOW THIS LINE**

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

> RECEIVED
> Date: 04/02/07
> Time: 2.00
> Receiving Nurse Intials CH

**(S)ubjective:**

**(O)bjective    (V/S)   T:_____ P:_____ R:_____    BP:_____    WT:_____**

**(A)ssessment:**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**(P)lan:**

Refer to:    MD/PA    Mental Health    Dental    Daily Treatment    Return to Clinic PRN
CIRCLE ONE
Check One:   ROUTINE ( )      EMERGENCY ( )
        If Emergency was PHS supervisor notified:    Yes ( )     No ( )
        Was MD/PA on call notified:    Yes ( )     No ( )

_____

*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:   INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

PHS000081



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Stephon Lindsay_          Date of Request: _4·2·07_
ID # _207044_                    Date of Birth: _9·6·77_ Location: _E2-27A_
Nature of problem or request: _I ask to have my teeth checked_
_and cleaned please ?_

_Thank You ._
_Stephon Lindsay_
Signature

---

### DO NOT WRITE BELOW THIS LINE

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

```
RECEIVED
Date: 04/02/07
Time: 2100/07
Receiving Nurse Intials CF
```

**(S)ubjective:**

**(O)bjective**   (V/S): T:___   P:___   R:___   BP:___   WT:___

NO Show 4/3/07

**(A)ssessment:**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment      Return to Clinic PRN
                              CIRCLE ONE
Check One:   ROUTINE ( )      EMERGENCY ( )
       If Emergency was PHS supervisor notified:   Yes ( )      No ( )
              Was MD/PA on call notified:   Yes ( )      No ( )

_____
*SIGNATURE AND TITLE*

WHITE:   INMATES MEDICAL FILE
YELLOW:   INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

PHS000082



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Stephen Lindsay_ _____ Date of Request: _3 - 7 - 07_
ID # _____ Date of Birth: _9.6.77_ Location: _____
Nature of problem or request: _I have a cut out of a side or poo_
_Do some try M self going to help me cut out_

_____
_Signature_

---

**DO NOT WRITE BELOW THIS LINE**

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

*Was seen by Dr. Side on 3/9/07 Blake*

┌─────────────────────────────┐
│           RECEIVED          │
│ Date: 03-09-07              │
│ Time: 2:50                  │
│ Receiving Nurse Intials CF  │
└─────────────────────────────┘

**(S)ubjective:**

**(O)bjective**   **(V/S):** **T:** _____   **P:** _____   **R:** _____   **BP:** _____   **WT:** _____

**(A)ssessment:**

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment      Return to Clinic PRN
CIRCLE ONE
Check One:  ROUTINE ( )      EMERGENCY ( )
     If Emergency was PHS supervisor notified:   Yes ( )    No ( )
     Was MD/PA on call notified:   Yes ( )    No ( )

_____
*SIGNATURE AND TITLE*

WHITE:   INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

PHS000083



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: *Stephen Lindsay*                    Date of Request: *3 - 8 - 07*
ID # *215341*                    Date of Birth: *9-9-77* Location: *Seg Cell 11*
Nature of problem or request: *I have a real bad cold and I ask to be*
*prescribed some type of cold medicine treatment &*

*Thank You!*

*Stephen Lindsay*
                                        *Signature*

---

### DO NOT WRITE BELOW THIS LINE

Date: _____/_____/_____
Time: _____ AM  PM
Allergies: _____

> **RECEIVED**
> Date: *03/08/07*
> Time: *2:30*
> Receiving Nurse Intials *CF*

**(S)ubjective:**

**(O)bjective**   **(V/S): T:** _____   **P:** _____   **R:** _____   **BP:** _____   **WT:** _____

**(A)ssessment:**

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

**(P)lan:**

Refer to:    MD/PA   Mental Health   Dental   Daily Treatment      Return to Clinic PRN
                              CIRCLE ONE
Check One:   ROUTINE ( )      EMERGENCY ( )
        If Emergency was PHS supervisor notified:    Yes ( )    No ( )
        Was MD/PA on call notified:    Yes ( )    No ( )

_____

*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:   INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

PHS000084



**PRISON**
**HEALTH**
**SERVICES**
**INCORPORATED**

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: _Stephen Bedford_____    Date of Request: _2-2-07_____

ID # _____    Date of Birth: _9-6-77_ Location: _Seg Cell 11_

Nature of problem or request: _I've aqired a cold and I ask to be_

_givin some cold medicne so I do not get sicker._

_____

_____    Thank You_

_____    _Stephen Bedford_
                                          *Signature*

## DO NOT WRITE BELOW THIS LINE

Date: ___/___/____
Time: _____ AM  PM
Allergies: _____

```
┌──────────────────────────────────┐
│            RECEIVED              │
│  Date:                           │
│  Time:                           │
│  Receiving Nurse Intials _____  │
└──────────────────────────────────┘
```

**(S)ubjective:**

**(O)bjective  (V/S):  T:**_____    **P:**_____    **R:**_____    **BP:**_____    **WT:**_____

**(A)ssessment:**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**(P)lan:**

Refer to:    MD/PA    Mental Health    Dental    Daily Treatment        Return to Clinic PRN
                                    CIRCLE ONE
Check One:   ROUTINE ( )      EMERGENCY ( )
        If Emergency was PHS supervisor notified:    Yes ( )    No ( )
              Was MD/PA on call notified:    Yes ( )    No ( )

_____
                *SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:   INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: _Steven Linton_     Date of Request: _2 - 27 - 07_

ID # _207044_     Date of Birth: _9-6-77_ Location: _Seg cell_

Nature of problem or request: _I have a slight cold and I'm itching_
_____

_____

_____

_____
_Signature_

---

## DO NOT WRITE BELOW THIS LINE

Date: ___/___/___

Time: _____ AM  PM

Allergies: _____

| RECEIVED |
|---|
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective**  (V/S): T: _____  P: _____  R: _____  BP: _____  WT: _____

**(A)ssessment:**

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**(P)lan:**

Refer to:  MD/PA  Mental Health  Dental  Daily Treatment    Return to Clinic PRN

CIRCLE ONE

Check One:  ROUTINE ( )   EMERGENCY ( )

If Emergency was PHS supervisor notified:  Yes ( )   No ( )

Was MD/PA on call notified:  Yes ( )   No ( )

_____

*SIGNATURE AND TITLE*

WHITE:  INMATES MEDICAL FILE

YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY | Bccf | ☐ SICK CALL | ☐ EMERGENCY |
|---|---|---|---|---|---|
| 01/08/07 | 4:00 AM/PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | | ☐ OUTPATIENT | |

| ALLERGIES NKA | CONDITION ON ADMISSION |
|---|---|
| | ☐ GOOD ☑ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

| VITAL SIGNS: TEMP | ORAL RECTAL | RESP. 22 | PULSE 76 | B/P 130/88 | RECHECK IF SYSTOLIC <100> 50 NA |
|---|---|---|---|---|---|

| NATURE OF INJURY OR ILLNESS | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / SUTURES |
|---|---|---|---|---|---|

S- Body Chart for DOC

O- Blk Male, escorted to
Hosp c Hand Cuffed behind
his back - Accomp by several
Officers - c/Male Alert &
Oriented X3 Resp reg even
Color adeg - Skin warm & dry
c Small abrasion noted back
⊕⊕ elbow and ⊕ lower leg on
Shin bone Substained ⊕
medium Size opened Area

PHYSICAL EXAMINATION

- hx noted. Checked & examined
by Dr Siddig - eyes redden due
to uses of Pepper Spray -
As Alteration in comfort to
bodies injuries.



PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

P- Eyes rinsed c Sterileyes
- Solution -
- Area Cleanse H₂O - N/S
followed by Trpl drsg
- Adult BOOMg PO Tid X 10 days
- X-Ray of ⊕ lower arm & ⊕ lower leg.

DIAGNOSIS

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

INSTRUCTIONS TO PATIENT
Return PRN

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE |
|---|---|---|---|
| 01/8/07 | 4:35 AM/PM | ☑ DOC ☐ AMBULANCE | ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE Bobbin X | DATE 1/8/07 | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) Lindsay Stephon | DOC# 207044 | DOB 9/6/77 | R/S B/M | FAC. Bccf |
|---|---|---|---|---|

PHS000087

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

DEPARTMENT OF CORRECTIONS
# TRANSFER & RECEIVING SCREENING FORM

| RECEIVED: Inmate/Health Record | RELEASED: Inmate/Health Record | ALLERGIES: |
|---|---|---|

RECEIVED: Inmate/Health Record

Institution: Bullock

Date: 8/10/06  Time: 1900  AM/PM

RECEIVED FROM:
Institution/Work Release Center/Free-World Hospital

RECEIVING MEDICAL STATUS
- [x] Population
- [ ] Infirmary
- [ ] Isolation

RELEASED: Inmate/Health Record

Institution: Holman

Date: 7/27/06  Time: _____ AM/PM

RELEASE FROM:
- [ ] Infirmary
- [ ] Segregation
- [x] Population
- [ ] Mental Health
- [ ] Other

RELEASE TO:
- [ ] DOC
- [ ] Infirmary
- [ ] Mental Health
- [ ] _____
Institution/Work Release Center/Free-World Hospital

ALLERGIES:

PHYSICAL EXAMINATION
Date of last exam: _____
Chest X-Ray Date: _____ Result: _____
PPD Reading _____
Classification: _____
Limitations: _____

| LAB RESULTS - - LAST REPORT | Date | Normal | Abnormal | | YES | NO |
|---|---|---|---|---|---|---|
| CBC | NONE | [ ] | [ ] | Wears Glasses/Contacts | [ ] | [x] |
| Urinalysis | | [ ] | [ ] | Dental Prosthesis | [ ] | [x] |
| | | [ ] | [ ] | Hearing Aide | [ ] | [x] |
| | | [ ] | [ ] | Other Prosthesis | [ ] | [ ] Recieving Nurse |

CURRENT OR CHRONIC MEDICAL/DENTAL/MENTAL HEALTH PROBLEMS OR COMPLAINTS

NONE

CURRENT MEDICATION - - DOSAGE AND FREQUENCY

NONE

| | |
|---|---|
| MEDICATIONS | [ ] Sent w / inmate  [x] Not sent w / inmate |
| X-RAY FILM | [ ] Sent w / inmate  [x] Not sent w / inmate |
| HEALTH RECORD | [x] Sent w / inmate  [ ] Not sent w / inmate |
| Released to: | |

CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| | |
|---|---|
| MEDICATIONS | [ ] Received  [ ] Not Received |
| X-RAY FILM | [ ] Received  [ ] Not Received |
| HEALTH RECORD | [x] Received  [ ] Not Received |
| CHART REVIEWED | [x] YES  [ ] NO |

SCHEDULE FOR CHRONIC CARE CLINIC

DATE: NONE  LAST CLINIC: _____

Received by: _____
Signature of Receiving Nurse
Date: 8/10/06  Time: 1900  AM/PM

| FOLLOW-UP CARE NEEDED | Date | Time | With Whom - - Location (Sending Nurse) | Date/Appt. Made w/Whom (Rec. Nurse) |
|---|---|---|---|---|
| [ ] Medical  [ ] Dental | NONE | | | |
| [ ] Mental Health | | | | |

| HISTORY (Noted from health record documentation) | | Yes | No |
|---|---|---|---|
| | Drug Use | | [x] |
| | Mental Illness | | [x] |
| | Suicide Attempt | | [x] |
| | Chronic Care | | [x] |
| STATUS | Special Diet | | [x] |
| | Appearance | | WNL |

OTHER PERTINENT NURSING ASSESSMENT

NURSING ASSESSMENT (SENDING NURSE)

| NURSING ASSESSMENT (RECEIVING NURSE) (Noted from intake assessment) | | Yes | No |
|---|---|---|---|
| SKIN | Open Sores | | [x] |
| | Lice | | [x] |
| | Edema | | [x] |
| | Warm & Dry | [x] | |
| | Cool & Moist | | [x] |
| CONDITION | Alert | [x] | |
| | Oriented | [x] | |
| | Uncooperative | | [x] |
| | Depressed | | [x] |

INTAKE
Sick Call Procedures Explained  YS
Height _____
Weight _____
Blood Pressure _____
Temperature _____
Pulse Resp. _____
Other _____

Signature of Nurse Completing Assessment (Sending Nurse)  Date

Signature of Intake Screening Nurse (Receiving Nurse)  8/10/06  Date

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | Race/Sex | FAC. |
|---|---|---|---|---|
| Lindsay, Stephen | 207044 | 9/26/77 | B/M | Holman |

PHS-MD-70009    (White - Medical chart, Yellow - Transfer Coordinator)

PHS000088



**PRISON
HEALTH
SERVICES
INCORPORATED**

## PROGRESS NOTES

| Date/Time | Inmate's Name: Lindsey, Stephen, 207044 | D.O.B.: 9 / 6 / 77 |
|---|---|---|

1/28/06 7ꝑ Rec'd @ Bullock c̄ Vol I & I. Had of meds and
of mar. ————————— J. Howard mᴿᴺ—

1/20/07  Pt returned from Baptist H. Medical Center. Surgery
to ® arm. Dsg. dry & intact, Pt alert & orientated x 3.
C/o some discomfort. Medication for pain given as
ordered. Recommended f/u in 2 wks c̄ Dr. Chung. Will
Confer c̄ M D, Dr. Siddig. ————————— S. Roberts RN

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

60111 (5/85)    **Complete Both Sides Before Using Another Sheet**

Lindsay, Steven



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: | D.O.B.: / / |
|---|---|---|
| 4/11/7 | S) Cold | |
| | O) URI | |
| | Cough | |
| | Congestion | |
| | | |
| | A) URI | |
| | P) will give Amoxil x10d | |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

60111 (5/85)    **Complete Both Sides Before Using Another Sheet**

PHS000090



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

### PHYSICIANS' ORDERS

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  /  / <br> ALLERGIES: | FOR PROFESSIONAL USE ONLY <br> CONFIDENTIAL RECORD <br> NOT TO BE COPIED |
| Use Last    Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  / <br> ALLERGIES: | |
| Use Fourth    Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  / <br> ALLERGIES: | |
| Use Third    Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

| NAME: Lindsey, Stephon #207094 | DIAGNOSIS (If Chg'd) <br> Amoxil 500 po tid x2 days <br> ATT  po bid x2 days |
|---|---|
| D.O.B.  / <br> ALLERGIES: 3.9.92 | |
| Use Second    Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

| NAME: Lindsey, Stephon 207094 | DIAGNOSIS <br> 1) Elevate Arm <br> 2) Percogesic ii po x2days tid <br> 3) Cephalexin 500mg tid x2days <br> 4) Bottom Bunk Bed <br> 5) Change dressing PRN per T.O. Dr Siddiq |
|---|---|
| D.O.B.  /  / <br> ALLERGIES: | |
| Use First    Date / 1 20 07 | ☑ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED    S.Herbert RN |

MEDICAL RECORDS COPY

J110 (4/03)

PHS000091



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PHYSICIANS' ORDERS

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  /  / | |
| ALLERGIES: | |
| Use Last     Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  /  / | |
| ALLERGIES: | |
| Use Fourth     Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  /  / | |
| ALLERGIES: | |
| Use Third     Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

FOR ~~ ~~ ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  /  / | |
| ALLERGIES: | |
| Use Second     Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

| NAME: Lindsey, Steven | DIAGNOSIS  ① Amoxil sw loðd x(0) |
|---|---|
| D.O.B.  /  / | ② CTM ↑ loðd x(0) |
| ALLERGIES: | |
| Use First     Date  /  / | ☐ GENERIC SUBSTITUTION IS <u>NOT</u> PERMITTED |

## *NaphCare, Inc.*
## Health Services Request Form

Inmate Name _Stephon Lindsay_          Date of Request _4·12·2003_

AIS No. _207044_          Date of Birth _9·6·77_          Housing Loc. _10 B Seg._

Nature of problem or request _I have a swollen area on the right side of my face._
_It started out as a small bump, but after I busted it, it quickly_
_swole up and now the area on my face where ~~the bump is~~_
_~~but it the lift is~~ is the swelling is located is aching_
_and by way of this form I ask to have the swollen of my face examined/treated_
_if possible._

Sign here for consent to be treated by health staff for the condition described above. _Stephon Lindsay_

Place this slip in Medical Box or designated area

### DO NOT WRITE BELOW THIS LINE

RECEIVE APR 13 2003

Health Care Documentation

Subjective: _"I a raised bump on my face and my face is swollen"_

Objective:  BP _110/80_   P _74_   R _20_   T _98.8_   WT _164_
_O2 Sat 97 area on right side of face raised c̄_
_dark scab on it no drainge_

Assessment: _skin integry alt_

Plan: _See Dr Daboye_
_4-23-03_

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Refer to: (PA/ Physician)   _4/14/07_   Mental Health   _Boil educational sin_
Education:   _+ education_

Protocol used: (specify) _____

Signature _A Mart_   Title _LPN_   Time _1845_   Date _4-13-03_

**NaphCare, Inc.**

# Health Services Request Form

Inmate Name _Stephon Lindsay_ Date of Request _3·23·2003_

AIS No. _207044_ Date of Birth _9·6·77_ Housing Loc. _10 B Seg_

Nature of problem or request _I have a Risen on the back of my neck and by way of this request I ask to have it examined?_

Sign here for consent to be treated by health staff for the condition described above. _Stephon Lindsay_

Place this slip in Medical Box or designated area

## DO NOT WRITE BELOW THIS LINE

Health Care Documentation

Subjective: _"I got a risen on the back of my neck"_

Objective: BP _120/80_ P _78_ R _20_ T _97⁸_ WT _166_
_Unable to see a ~~raised~~ raised area on back of neck, no drainage noted, c/o area itchy_

Assessment: _Skin integrity alt_

Plan: _See MS Coog_
_3·31·03_

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

Refer to: (PA/ Physician) _CCooley CRNP 3/28/03_ Mental Health Dental

Education: _Bail proctoral Abscess and explained Inmate stated he understood_

Protocol used: (specify) _____

Signature _A Mank_ Title _RN_ Time _1930_ Date _3·24·03_

# Health Services Request For:

Inmate Name _STEPHON LINDSAY_                    Date of Request _2-27-2003_

AIS No. _207044_          Date of Birth _9-6-77_          Housing Loc. _8A-37T_

Nature of problem or request _On the back of my right thigh there is an area that is somewhat swollen and I ask that this area of my thigh be examined. _____ Thank You_

**RECEIVED**
**FEB 27 2003**

Sign here for consent to be treated by health staff for the condition described above. _Stephon Lindsay_

### Place this slip in Medical Box or designated area

### DO NOT WRITE BELOW THIS LINE

---

### Health Care Documentation

**Subjective:** _"I have a swollen thigh."_

**Objective:** BP _120/80_    P _82_    R _18_    T _98.4_    WT _169_
_R upper outter thigh back side has a nickle size round nodule. No redness or swelling noted to thigh. Denies pain or tenderness. Denies injury._

**Assessment:** _Alt in comfort._

**Plan:** _To see March 7_

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Refer to:** PA/ Physician  _2/28/07_          Mental Health          Dental

**Education:** _To keep MD appt._

Protocol used: (specify) _____

Signature _O'Neal_          Title _PA_          Time _7:00_          Date _2-27-03_

**NAPHCARE**
HOLMAN

HEALTH SERVICES REQUEST FORM

Print Name: _Stephon Lindsay_    Date of Request: _? Today !_

ID#: _207044_    Date of Birth: _9·6·77_    Housing Location: _13U7_

Nature of problem or request: _At times, when I move, the left side of my_
_body ~~also Takes~~ ~~down~~ in the area between my hip & ribcage._
_And so I ask that I be examined concerning my sick call request._

_____

Sign here for consent to be treated by health staff for the condition described

**RECEIVED** JUN 0 9

FOR PROFESSIONAL USE ONLY

**CONFIDENTIAL RECORD** NOT TO BE PHOTO COPIED

PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
DO NOT WRITE BELOW THIS AREA

********************************************************

NKA

HEALTH CARE DOCUMENTATION

Subjective: "My side hurts between my hip & my ribcage. Hurts about 4 days now. No new exercise. Haven't hurt myself. Hurts if I move certain way like reaching down, tying my shoes. Aching type pain. Don't feel it all time. Occasionally. I don't have any money.

Objective: BP 120/70 P 67 R 20 T 9.6 Wt 155#
- Alert & oriented x 3. Skin warm & dry to touch.
- Abd soft. Not tender, nor distended. ⊕ Flank pain when moves certain way. Lungs clear bilaterally. Ambulate c̄ steady gait.

Assessment: alteration in comfort

Plan: Refer medical chart to MD    Dr. Millard McWhorter
Holman Health Unit

Refer to: ___ PA/Physician    · Mental Health ___ Dental

Signature: _____    Title: ___    Date: _6/11/06_    Time: _0100_

## CORRECTIONAL MEDICAL SERVICES
## HEALTH SERVICES REQUEST FORM

Print Name: _Stephon Lindsay_  Date of Request: _4·17·2000_

ID #: _207044_  Date of Birth: _9·6·77_  Housing Location: _C-13_

Nature of problem or request: _I have a slightly scored area on the sole of my left foot that was correctly treated as callus at St. Clairs Correctional Facility. I was restationed here at Kilby Correctional Facility before my last treatment, which was medicated callus pads, and the problem appears 2 be reoccuring and I here by ask 2 have it examined?_

I consent to be treated by health staff for the condition described.

_Stephon Lindsay_
SIGNATURE

## PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
## DO NOT WRITE BELOW THIS AREA

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## HEALTH CARE DOCUMENTATION

**Subjective:** _I have a hard callus ↓ the bottom of my foot._

**Objective:** BP _140/90_ P _80_ R _20_ T _97.9_
_A + O to 3. Resp. regular z ease. Skin warm + dry to touch. Has small callus under lt. foot_

**Assessment:** _Alt. in comfort R/T callus under lt foot_

**Plan:** _Apply callus removal pad to callus_

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Refer to: _✓_ PA/Physician ____ Mental Health ____ Dental

Signature: _R. Burkett_  Title: _LPN_  Date: _4/18/00_ Time: _1100_

CMS 7166 REV. 10/94

## CORRECTIONAL MEDICAL SERVICES
## HEALTH SERVICES REQUEST FORM

Print Name: STEPHON LINDAY          Date of Request: 11-28-2000          216

ID #: 207044     Date of Birth: 9-6-77     Housing Location: C-15 ROOM

Nature of problem or request: I have a rash or something on the soul of my Left foot, and slowy spreading, Its appears to be somewhat infected, and I ask thata Doctor or some of that Nature have a look at it for me? Thank you

I consent to be treated by health staff for the condition described.

Stephon Linday
SIGNATURE

**PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA**
**DO NOT WRITE BELOW THIS AREA**

*********************************************************

## HEALTH CARE DOCUMENTATION

Subjective: C/o sore on bottom of L foot since Sept 11, 2000

Objective: BP 110/76   P 72   R 20   T 98⁴
Lesion noted bottom L foot. Slight edema noted
∅ drainage noted

Assessment: Alteration in skin Integrity

Plan: Chart to M.D.   FOR PROFESSIONAL USE ONLY
12-1-00
1115

CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Refer to: _____ PA/Physician _____ Mental Health _____ Dental

Signature: M. Bullard     Title: LPN     Date: 11/30/00     Time: 0025

CMS 7166 REV. 10/94

PHS000098

## INTRASYSTEM TRANSFER FOR...

**HEALTH STATUS**

| Transferring Facility: *Kilby* | Name: *Lindsey Stgeler* |
|---|---|
| | Number: *Ju 7044* |   Race: B W H Other |
| | Age: _____   Date of Birth: *9 / 6 / 77*   Sex: M F |

Date: *12/14/99*

Time: *530* AM PM

Allergies: *NKDA* _____   Food Handler Approved: Y / N

Current Acute Conditions/Problems: Ø _____

Chronic Conditions/ Problems: Ø _____

Current Medications - Name, Dosage, Frequency, Duration:

Acute Short-term Medications: Ø _____

Chronic Long-term Medications: Ø _____

Chronic Psychotropic Medications: Ø _____

Current Treatments: Ø _____

Follow-up Care Needed: Ø _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Last PPD: *11·16·99* Results *Ø* mms    Last Physical: *11/16/99*

Chronic Clinics: Ø _____    Specialty Referrals: Ø _____

Significant Medical History: Ø _____

Physical Disabilities/Limitations: Ø _____

Assistive Devices/Prosthetics: Ø _____    Glasses: Ø    Contacts: Ø

Mental Health History/Concerns:

Substance Abuse:  Y / N    Alcohol: Y / N    Drugs: Y / N

| NO | Hx Suicide Attempt:  Date: ___/___/___ |
|---|---|
| | Hx Psychotropic Medication |
| | Previous Psychiatric Hospitalizations |

*R. Burkette, LPN*
Signature and Title    Date: *12-14-99*

**TRANSFER RECEPTION SCREENING**

Date: *12/15/99*   Time: *1810*  AM PM

Receiving Facility: *SCCF*    *Cards Made*

**S:** Current Complaint: Ø _____

Current Medications/Treatment: Ø _____

_____

_____

**O:** Physical Appearance/Behavior:
*Not seen by nurse @ this time.*

Deformities: Acute/Chronic: _____

T ___ P ___ R ___ B/P ___/___

**A:** _____

**P:** Disposition: (Instructions: Check or circle as appropriate)

___ Routine, Sick Call
___ Instructions Given
___ Emergency Referral
___ HIV/TB Instruction Given
___ Physician Referral:
      Urgent / Routine
      ___ Medication Evaluation
      ___ Work/Program Limitation
      ___ Special Housing
      ___ Specialty Referrals
      ___ Chronic Clinics
      ___ Mental Health
      ___ OTHER
      ___ Infirmary Placement

Other: _____

Signature and Title

PHS000099