**IN THE UNITED STATES DISTRICT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISON**

| | | |
|---|---|---|
| STEPHON LINDSAY, AIS #207044 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | NO. 2:07-CV-399-MHT |
| | ) | |
| | ) | |
| RICHARD ALLEN, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**SPECIAL REPORT**

**COMES NOW** the Defendants, ALLEN, CUMMINS, GILES, NETTLES, PERRY, HUDSON, HERBERT, STREETER, HAMPTON, TALLEY, BENNETT, JACKSON, BASKIN, MARTIN, HILL, CURRY, BEECHUM, BAILEY, and HAYNES (hereinafter referred to individually or collectively as " the State Defendants", by and through counsel, and pursuant to this Court's Order dated June 13, 2007, file their Special Report by submitting the following:

**PLAINTIFF'S ALLEGATIONS**

1.    The Plaintiff, Stephon Lindsay (AIS# 207044) [hereinafter referred to as "Lindsay"] is an inmate in the Bullock Correctional Facility located in Union Springs, Alabama.    Lindsay claims that the State Defendants and the prison's medical staff violated his constitutional rights. (See Complaint at p. 2). Lindsay claims that on January 8, 2007, some of the State Defendants, correctional officers, engaged him into a verbal and physical confrontation after he allegedly exposed himself to a female correctional officer (Plaintiff's Aff. @ pp.1-2). Lindsay alleges that he was subsequently injured as a

result of excessive force by these corrections officers. (Id.). Lindsay says further that he was taken to the health care unit at Bullock Correctional Facility where corrections officers continued to use excessive force (Id. p. 5). Lindsay also alleges that Warden Cummins, Warden Giles, Captain Nettles, Sergeant Perry and Commissioner Allen are liable for the alleged actions of these corrections officers. Thereafter, Lindsay claims that the medical staff was deliberately indifferent to his medical needs in that they failed to give him adequate treatment for his injuries (Id)

2.      Lindsay amended his complaint claiming that Allen caused a "pervasive policy of brutality" alleging, in sum,  that Allen was deliberately indifferent to excessive  force being used by subordinates (see Amended Complaint). Additionally, Lindsay suggests that Warden Cummins, Giles, Nettles, and Perry either used or allowed excessive force to be used and, thereafter, were deliberately indifferent to the medical care that Lindsay received. (Id.) The remaining state defendants in the amended complaint have been charged with using excessive force or failing to prevent from occurring. (Id.)

3.      Lindsay seeks a declaratory judgment, compensatory and monetary damages (See Complaint). Lindsay amends his complaint asking for additional and specific amounts of damages (See Amended Complaint).

4.      As directed, the Defendants have undertaken a review of the Lindsay's claims to determine facts and circumstances relevant thereto. At this time, the Defendants are submitting this Report, which is supported by the Affidavit of Commissioner Richard F. Allen (see Exhibit "A"), Affidavit of John Cummins, Warden of Bullock Correctional Facility, (see Exhibit "B"); Affidavits of Sandra Giles, Warden of Bullock Correctional Facility, (see Exhibit "C"); the Affidavit of S. Nettles, Captain at Bullock Correctional

Facility (see Exhibit "D"); the Affidavit of Ruthie Perry, Sergeant at Bullock Correctional Facility (see Exhibit "E"), the Affidavit of Jeffery Hudson, Corrections Officer I at Bullock Correctional Facility (see Exhibit "F"), the Affidavit of Preston Herbert, Corrections Officer I at Bullock Correctional Facility (see Exhibit "G"), the Affidavit of Adrian Jackson, Corrections Officer I at Bullock Correctional Facility (see Exhibit "H"), the Affidavit of Roderick Talley, Corrections Officer I at Bullock Correctional Facility (see Exhibit "I"), the Affidavit of Juan Baskin, Corrections Officer I at Bullock Correctional Facility (see Exhibit "J"), the Affidavit of Henry Hill, Corrections Officer I at Bullock Correctional Facility (see Exhibit "K"), the Affidavit of Pedehel Martin, Corrections Officer I at Bullock Correctional Facility (see Exhibit "L"), the Affidavit of Corey Bennett, Corrections Officer I at Bullock Correctional Facility (see Exhibit "M"), the Affidavit of Melvin Curry, Corrections Officer I at Bullock Correctional Facility (see Exhibit "N"), the Affidavit of Cedric Streeter, Corrections Officer I at Bullock Correctional Facility (see Exhibit "O"), the Affidavit of Edward Haynes, Corrections Officer I at Bullock Correctional Facility (see Exhibit "P"), the Affidavit of Bruce Hampton, Corrections Officer I at Bullock Correctional Facility (see Exhibit "Q"), the Affidavit of Larry Beachem, Corrections Officer I at Bullock Correctional Facility (see Exhibit "R"), the Affidavit of Johnny Bailey, Corrections Officer I at Bullock Correctional Facility (see Exhibit "S"), the Affidavit of John Cummins, Warden and Custodian of Records at Bullock Correctional Facility( see Exhibit "T").

## STATE DEFENDANTS

1.  Richard F. Allen, Commissioner, Alabama Department of Corrections, 301 S. Ripley Street, Montgomery, Alabama 36130.

2.  John Cummins, Warden, Bullock Correctional Facility, POB 5107, Union Springs, Alabama.

3.  Sandra Giles, Warden, Bullock Correctional Facility, POB 5107, Union Springs, Alabama.

4.  Sylvester Nettles, Sr., Captain, Bullock Correctional Facility, POB 5107, Union Springs, Alabama.

5.  Sgt. Ruthie Perry, Bullock Correctional Facility, POB 5107, Union Springs, Alabama.

6.  Jeffery Hudson, Corrections Officer I, address same as number (2) two.

7.  Preston Herbert, Corrections Officer I, address same as number (2) two.

8.  Adrian Jackson, Corrections Officer I, address same as number (2) two.

9.  Roderick Talley, Corrections Officer I, address same as number (2) two.

10.  Juan Baskin, Corrections Officer I, address same as number (2) two.

11.  Henry Hill, Corrections Officer I, address same as number (2) two.

12.  Pedehel Martin, Corrections Officer I, address same as number (2) two.

13.  Corey Bennett, Corrections Officer I, address same as number (2) two.

14.  Melvin Curry, Corrections Officer I, address same as number (2) two.

15.  Cedric Streeter, Corrections Officer I, address same as number (2) two.

16.  Edward Haynes, Corrections Officer I, address same as number (2) two.

17.  Bruce Hampton, Corrections Officer I, address same as number (2) two.

18.  Larry Beachem, Corrections Officer I, address same as number (2) two.

19.    Johnny Bailey, Corrections Officer I, address same as number (2) two.

## DEFENSES

The State Defendants assert the following defenses to the Plaintiff's claims:

1.    The State Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2.    The State Defendants plead not guilty to the charges in the Plaintiff's Complaint.

3.    The Plaintiff's complaint fails to state a claim upon which relief can be granted.

4.    The Plaintiff is not entitled to any of the relief requested.

5.    The Plaintiff's claims are barred by the doctrines of waiver and/or laches.

6.    The Plaintiff's claims are barred by the statute of limitations.

7.    The Court lacks jurisdiction over this dispute.

8.    The Plaintiff lacks standing to bring this action.

9.    The State Defendants plead the defense of qualified immunity and aver that any purported action taken by any of them was reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

10.    The State Defendants are entitled to qualified immunity and avers it is clear from the face of the complaint that the Plaintiff has not alleged specific facts indicating that any State Defendant violated any clearly established constitutional right.

11.    The State Defendants cannot be held liable on the basis of *respondent superior,* agency, or vicarious liability theories.

12.    The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

13.    The allegations contained in the Plaintiff's Complaint and Amended Complaint against the State Defendants, fail to comply with the heightened specificity requirement of Rule 8 in

§ 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F. 2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Edu. Of Escambia County, 880 F. 2d 305, 309 (11th. 1989).

14.   The State Defendants plead all applicable immunities, including but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

15.   The State Defendants were at all times acting under the color of state law and therefore, they are each entitled to substantive immunity.

16.   The Defendants plead the general issue.

17.   This Court lacks subject matter jurisdiction due to the fact that even if Plaintiff's allegations should be proven, the allegations against these State Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights.

18.   All claims of Plaintiff against these State Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

19.   The State Defendants plead the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to the Plaintiff.

20.   The State Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

21.   The State Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

22.    The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. §1997e (a) and as such these claims should be dismissed.

23.    The State Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

24.    The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing *in forma pauperis* actions in federal court.

25.    Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e) (c).

26.    The State Defendants plead that they should be able in good faith to rely upon the expertise and medical judgment of their medical provider and it s staff.

## <u>LINDSAY'S CLAIMS PER LOCATION</u>

### "In the Gym"

Lindsay claims that while he was sitting on the bleachers in the gym at the Bullock Correctional facility, Hudson and Herbert became unreasonably physical and verbal towards him (See Affidavit of Lindsay, p. 2)]. Hudson admits ordering Lindsay off the bleachers (See Exhibit "F"). However, as Hudson ordered, Lindsay allowed his penis to be exposed out of his pants (Id.). Of course, Lindsay denies this (See Affidavit of Lindsay, p.2). Thereafter, Hudson says that Lindsay

became aggressive towards him (See Exhibit F). In order to stop the inmate from unreasonably getting too close, Hudson extended his arm (Id.). Lindsay escalated this minor contact by approaching Hudson "swinging his arms in an aggressive manner". (Id.) As a result, Hudson pulled his baton in a defensive manner (Id). Hudson was immediately grabbed by Lindsay when Herbert entered the room to assist Hudson. (Id.)With his baton, Herbert struck Lindsay who was holding Hudson. (Id) Lindsay then grabs Herbert's baton whereupon Hudson strikes him with his baton (Id.). Lindsay suggests both officers struck him with their batons, simultaneously. (See Lindsay's Affidavit, p.3).

During the alleged fight, Lindsay claims that his wrist was broken as a result of Hudson striking it with a baton (Id.) Hudson admits striking Lindsay to force him to let go of the Herbert's baton ( See Exhibit "F"). Thereafter, Lindsay claims that he attempted to escape (See Affidavit of Lindsay, p. 3). Hudson says that Lindsay ran outside contrary to his orders to stop (See Exhibit "F"). Thereafter, Lindsay claims that he was unreasonably gassed by Hudson (See Affidavit of Lindsay, p. 4). Hudson agrees that he used his chemical spray only after Lindsay continued to aggressively resist, and refuse to obey Hudson's verbal commands. (See Exhibit "F").

Lindsay alleges other officers joined the attack that purportedly continued (See Affidavit of Lindsay, pp. 3-4). He says that he attempted to retreat behind other inmates but was cut off by Jackson (Id.) Jackson testifies that he remembers coming upon number of officers who were only struggling with Lindsay in the exercise yard(See Exhibit "H"). Jackson told Lindsay to lie on the ground (Id.). After Lindsay was ultimately handcuffed, Jackson assisted in Lindsay's escort to the health care unit (Id.). Afterwards, Jackson returns to his assigned post and never entered the health care unit (Id.). This is contrary to Lindsay's claims that he was surrounded from every angle; being beaten by batons by a number of officers (See Affidavit of Lindsay, pp. 3-4) Lindsay insists that he

covered his face with his arms and claims that Hudson and Jackson were beating him with batons. (Id. pp. 3-4). Lindsay further suggests that Hudson "bloodied" his forearm by hitting him with a baton and Jackson busted his left leg open in three (3) places (Id). Lindsay states that it was at this point when he was cuffed (Id.). He then claims that Talley rammed his head into a wall twice and indicated verbally of his intentions to give Lindsay more in the infirmary (Id.) Talley denies ramming Lindsay's head and giving any verbal warning, but says he only assisted Hampton and Jackson in escorting him to the health care unit (See Exhibit "I").

Lindsay suggests that after Hampton arrived to assist that he begged Hampton to stop the other officers from beating him (See Affidavit of Lindsay, pp. 3-4). Hampton states that Lindsay was under control on the ground, and after Hampton placed handcuffs on him, he merely led Lindsay to the health care unit (See Exhibit "Q").

### "In the Health Care Unit"

Lindsay claims that in the presence of medical staff, he was assaulted in the face by Hill, Baskin, Martin, and Jackson (See Affidavit of Lindsay, p. 4). Jackson indicates that he never entered the health care unit (See Exhibit "H"). Martin says that entered the health care unit but only momentarily making it impossible to do any of what as been claimed, denying any physical contact.(See Exhibit "L") Baskin suggests the claims against him are impossible as he was not on duty the day of these events. (See Exhibit "J"). Hill states that he escorted Lindsay to the infirmary. (See Exhibit "K"). Hill suggests he stayed with Lindsay, as inmates are not to be left alone in the infirmary. (Id.) He denies witnessing any continued use of excessive force. (Id.)

Lindsey says that Bennett yelled at him and Curry claimed to "know" him (See Affidavit of Lindsay, p. 5). Lindsay then claims between the intermittent assaults that over hears a purported conspiracy, plotting to charge him with inciting a riot (Id.). He claims that Baskin

acknowledged to Jackson the awareness of his arm being broken and Jackson giving an uncaring response (Id.). The aforesaid latter allegations are impossible as neither defendant was present (See Exhibits "H" and "J").

Lindsay further claims that at one point, Cummins, Giles and Nettles arrive at the health care unit. Lindsay also complains that these defendants laughed about Hampton running or jogging to the scene (See Affidavit of Lindsay, p. 5). Perry indicates that she merely arrived after the event had concluded (See Exhibit "E"). Giles says that she did enter the health care unit where Lindsay was being treated by the medical staff pursuant to their protocol. (See Exhibit "C"). Lindsay did exhibit some abrasions but there was no bleeding (Id. See also affidavit "A"). Giles further opines that the Bullock Correctional Facility does not condone the use of excessive force, and that this event has been investigated by the (ADOC) Investigation and Intelligence Unit (Id.). This unit determined no excessive force was used (Id., but see also Exhibit "U"). Warden Cummins and Captain Nettles arrived after the fact and similarly say no excessive force was used and Lindsay received adequate medical care (See Exhibits "B" and "D"). Commissioner Allen suggests that there are adequate policies for appropriate and reasonable force to be used and all corrections officers are trained to use appropriate force. (See Exhibit "A")

**"Released to Segregation"**

Contrary to the allegations, Lindsay was given appropriate medical treatment and then released (See Medical Defendants' Special Report and Exhibits (hereinafter referred to as "Doc. No 21"). He was placed into segregation where he claims he failed to receive proper medical attention for a number of days (See Lindsay's Affidavit, pp.  6-7). The treating physician determined that Lindsay's arm was broken and he received surgery at Baptist Health in Montgomery, Alabama (see "Exhibit A" of Doc. No 21.). Afterwards, Lindsay was brought back

to the prison and placed into segregation (See Affidavit of Lindsay, p.7.) He claims that Bailey and Beechum laughed at him when he demanded medication (Id.).Haynes describes that part of his duties in segregation includes relaying requests of inmates (See Exhibit "P"). If these requests are not satisfied, then the inmate may make requests to visiting nurse (Id.). Bailey says the same, indicating that if any inmate, like Lindsay, needs medical attention, he can request of the nurses on duty (See Exhibit "S").  Lindsay concludes his complaints by accusing that the nurses failed to follow the instructions of the free world physician. (See Affidavit of Lindsay, p. 7.) Streeter is accused of failing to protect Lindsay from the use of excessive force but, submits he was not at work on that day (See Exhibit "O").

## ARGUMENT

### Allen, Cummins, Giles, Nettles, Perry: State Supervisory Defendants

The Plaintiff sues the State Defendants assuming on § 1983 (See Complaint and Amended Complaint). In his attempt to do so, Lindsay complaints are focused on some officers using excessive force, and other officers failing to prevent that excessive force. Lindsay further claims denial of adequate medical care by all, including the medical staff. (Id.). Lindsay claims that Allen, Cummins, Giles, Nettles and Perry (State Supervisory Defendants) are somehow liable because they established a "policy" of allowing excessive force and were deliberately indifferent to Lindsay's medical care that he thereafter received. As such, the language of 42 U.S.C. § 1983 requires proof of a casual connection between the purported actions or omissions of these State Defendants and any constitutional deprivation. Jones v. Pruett & Mauldin, 851 F. 2d 1321(11th Cir. 1988). The requisite casual connection may be shown by the personal participation of any of these State Supervisory Defendants, a policy or custom established by any of these Defendants that resulted in a deliberate indifference to the plaintiff's rights or breach of

a duty imposed by state or local law. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986). Inasmuch as this needs to be proven, Lindsay's complaint and amended complaint fail to specifically allege these State Supervisory Defendants personally participated in the alleged acts or omissions or how these Defendants had the ability to establish a custom or policy in regards to the alleged actions or omissions of the others at the facility.   With only the exception of Commissioner Allen, the State Supervisory Defendants did have possible contact with Lindsay, but, as pled both in the Complaint and Amended Complaint plus the testimony of these State Supervisory Defendants, there is no evidence of any using the alleged excessive force and or failing to prevent the same. Additionally, Lindsay fails to establish the subjective component of any supervisory state defendant to raise proof that any had the necessary culpable mental state. In sum, Lindsay fails to properly allege how any of these State Supervisory Defendants had knowledge of any purported act or omission that caused his alleged claims.

Secondly, however, some of the State Supervisory Defendants may have had the ability to establish a custom or policy, but without a doubt, the actual custom or policy that existed was to use reasonable force only when necessary and to maintain security. There is absolutely no evidence that any of these State Supervisory Defendants allowed excessive force to become a practice, custom or policy. Lindsay's "knee-jerk" and conclusory assertions are baseless. There is uncontroverted and obvious evidence before this Court proving no deliberate indifference by these State Supervisory Defendants in regards to medical care. These State Supervisory Defendants can reasonably rely upon the good, professional and quality medical care provided by the medical defendants (PHS) in this case. (See Doc. No 21). The allegations of Lindsay against these State Supervisory Defendants should be dismissed or judgment at law entered in their favor.

**Excessive Force and Failure to Prevent Excessive Force-Hudson, Herbert, Streeter (Screecher), Hampton, Talley, Bennett, Jackson, Baskin, Martin, Hill, Curry, Beecham, Bailey, and Hanes.**

The Plaintiff specifically claims that excessive force was used by Hudson, Jackson, Herbert, Talley and others in the gym. He further claims that in the health care unit, Hill, Baskin, Martin, and Jackson continued to periodically assault him thereafter. All of these claims are without merit. These State Defendants, the medical defendants and other witnesses have submitted affidavits, special reports, and statements denying any excessive force or evidence of the same.

In sum, Lindsay was the initial aggressor against Hudson who took reasonable physical efforts to stop Lindsay's advances in the gym. The confrontation escalated with Lindsay striking Hudson. Herbert responded to the immediate need of Hudson to regain control over Lindsay who broke free and ran to the exercise yard. As a result, more reasonable and necessary force was used to subdue Lindsay.

It does appear that during the confrontation, Lindsay broke his wrist when he refused to release Hudson's baton. If this was the result of any defendant, using a baton to strike that wrist, then it was reasonably justified however unfortunate. A broke bone is a misfortune for Lindsay, but realistically, if one engages in combatant behavior with security in prison, the results occasionally end with injury. This injury was minor since the treating physician notes that Lindsay made no specific reference to any significant level of pain from the fracture. (See Doc. No. 21 Affidavit "A", pp. 9-12) Lindsay tries to tell that he was repeatedly beaten with batons by numerous corrections officers on his forearms and legs. Clearly his description of the severity and numbers of these alleged blows are not evidenced in any of his medical records. (Id) Some the alleged force was purportedly done in full view of medical personnel and this was, most certainly, not reflected in any of the medical records. (See Doc. No. 21, Affidavit "A" pp. 9-12)

Lindsey apparently is claiming that the actions of these State Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment's prohibition of cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). The Supreme Court held in Hudson v. McMillian, 503 U.S. 1, 7 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." In extending Whitley to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

Id. at 6 (citations omitted). In considering an Eighth Amendment excessive force claim, the court must consider both a subjective and objective component: (1) whether the "officials act[ed] with a sufficiently culpable state of mind" and (2) "if the alleged wrong doing was objectively harmful enough to establish a constitutional violation." See Hudson at 8.With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. These factors include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response;

and 5) the extent of the injury suffered by the inmate. The <u>Hudson</u> Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id*. at 7.   In this circuit, in order to avoid summary judgment on an excessive force claim, the plaintiff is required to produce some evidence of injury beyond a minimal one. <u>Bennett v. Parker</u>, 898 F.2d 1530 (11th Cir. 1990). Additionally, any evidence of an injury does not mean that the constitutional rights of inmates are violated every time a prisoner is injured." <u>Gillatte v. Patts, 654 F. 2d 1007, 1012 (5th Cir. 1981)</u>

In the present case, the injuries immediately observed by Dr. Tahir Siddiq were (1) small abrasion to left elbow and left lower leg; (2) pepper sprayed eyes; and (3) a broken wrist, discovered only x-rays two (2) days after the incident.  (See Doc. No. 21, Affidavit "A") Siddiq further said that Lindsay presented no symptoms of apparent distress as a result of his wrist injury. (Id) Medical records did not validate the level and extent of any of the injuries that he now complains that these State Defendants administered or watched others perform. (Doc. No. 21, Affidavit "C") Clearly, he never used any of the established processes to complain about not getting treatment for any of these supposed injuries. (Id. Affidavit "A") He, obviously, knew how to do so. (Id) One can review the medical records to see that Lindsay was well aware of the processes. In sum, the evidence is clear that any injuries received were not serious regardless of the disputed facts leading to them.

The force used was reasonable, necessary, and resulted after Lindsay escalated the initial encounter with Hudson by charging at him and then grabbing him. Lindsay then took the encounter to a greater level by acting aggressively. Defendant Herbert saw Hudson's troubles

with Lindsay and he gave appropriate assistance. Jackson and Talley joined to help but only finalized the handcuffing and transported Lindsay to the health care unit. Most assuredly, there is absolutely no evidence of Lindsay's head being rammed into a wall. In sum, reasonable and appropriate force was used to maintain control over Lindsay that unfortunately ended with a resulting injury to Lindsay's wrist and minor abrasions to his forearm and leg. The Plaintiff was the aggressor who needed to be restrained and controlled. "[W]here officers use force against inmates in prison to protect their own safety in spontaneous reactions or out of fear, they are not acting in violation of the constitution" Williams v. Kelley, 624 F. 2d 695, 698 (5th Cir. 1980). These Defendants' actions can not be considered punitive at all.

As a result of the apparent minor injuries, all of the corrections officers made their primary goal to seek proper and adequate medical care for Lindsay. If the state furnishes its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, so as to avoid the imposition of cruel ad unusual punishment that ends its obligations under the Eighth Amendment. Newman v. State of Alabama, 55 F. 2d 283 (CA5th1977). In construing cruel and unusual punishment clause of the Eighth Amendment, the court must confine its inquiry to whether conditions of confinement "shocked the conscience," are greatly disproportionate to offense, or offend evolving notions of decency. U.S. v. Thevis, 526 F. 2d 989 (CA 5 1976). Appropriate relief from prison conditions that violate Eighth Amendment is to require discontinuance of any improper practices or to require correction of any condition causing cruel and unusual punishment. Fernandez v. U.S., 91 F. 2D 1488. Two part analysis governs Eighth Amendment challenges to conditions of confinement; first a prisoner must prove that the conditions that he complains of is sufficiently serious to violate the Eighth Amendment, and second, under the "subjective component" the prisoner must show that the defendant prison

16

officials acted with sufficiently culpable state of mind with regard to the condition at issue Lindsay's claims fail on both parts. The evidence of these State Defendants clearly refutes Lindsay's conclusory claims.

**Eleventh Amendment Immunity**

Additionally, to the extent that Lindsay has sued any of State Defendants in their official capacities, they are all employees of the State of Alabama and cannot be held liable in damages in their official capacities, for their own acts or those of their employees because they enjoy Eleventh Amendment immunity. Such officers are entitled to dismissal of any claims for damages brought against them in their official capacities as state officials. The United States Supreme Court has said:

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such suit. Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S. Ct. 347, 89 L. Ed. 2d 389 (1985).

To the extent that Lindsay has sued these Defendants in their official capacities, the suit is against the state. These Defendants are absolutely immune from suit.

Pursuant to the Court's June 13, 2007, Order, the State Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment. The State Defendants have demonstrated through their evidence and appropriate precedent that there is not any genuine issue of material fact relating to a constitutional violation and that the State Defendants are therefore, entitled to a judgment in their favor as a matter of law. Lindsay's submissions clearly fail to meet his required burden.

## <u>CONCLUSION</u>

The Plaintiff's complaint is due to be dismissed on its face, and is, further, disproved by the evidence now before the Court. Accordingly, the State Defendants request that this Honorable Court either dismiss the Plaintiff's Complaint and Amended Complaint, with or without prejudice, or enter a judgment in their favor.

Respectfully submitted,

KIM T. THOMAS
DEPUTY ATTORNEY GENERAL
GENERAL COUNSEL


 /s/GREG BIGGS
GREG BIGGS (BIG004)
ASSISTANT ATTORNEY GENERAL
ASSISTANT GENERAL COUNSEL




<u>ADDRESS OF COUNSEL:</u>

Alabama Department of Corrections
Legal Division
301 South Ripley Street
P.O. Box 301501
Montgomery, AL  36130
334-353-3885

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on the 28th of August 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system,

And I hereby certify that I have mailed a copy of the forgoing via United States Mail properly addressed, postage prepaid first class to:

Inmate Stephon Lindsay
AIS # 207044
Ventress Correctional Facility
P.o. Box 767
Clayton, AL.  36016-0767


 /s/Greg Biggs
Greg Biggs
Assistant Attorney General

## IN THE UNITED STATES DISTRICT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISON

| | | |
|---|---|---|
| STEPHON LINDSAY, AIS #207044 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | NO. 2:07-CV-399-MHT |
| | ) | |
| | ) | |
| RICHARD ALLEN, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF RICHARD F. ALLEN

STATE OF ALABAMA          )
                                             )
COUNTY OF MONTGOMERY    )

Before me, the undersigned Notary Public, personally appeared RICHARD F. ALLEN who, after being duly sworn, states as follows:

1.      My name is Richard F. Allen. I am over the age of nineteen (19) years and I have personal knowledge of the information contained in this affidavit.

2.      I am currently serving as Commissioner of the Alabama Department of Corrections ("ADOC"). I was appointed to this position on February 15, 2006, approximately one year after the filing of the above-referenced action. As Commissioner, my duties and responsibilities generally include administrative oversight of every aspect of Alabama's correctional system which encompass a wide array of areas, including budgeting, forecasting, correctional personnel, facilities management, criminal investigations regarding prison crime,

classification, transportation, correctional industries, vocational and educational programs, work release and community corrections programs and food services. As Commissioner, I do not oversee or supervise the provision of medical services to the prisoners in the custody of the Department of Corrections.

3. It is the policy of the Alabama Department of Corrections to use only reasonable and necessary force upon an inmate when circumstances dictate to maintain security and order. Clearly, neither I nor this Department condone or tolerate the use excessive force in any way. Our corrections officers receive extensive training on the appropriate use of force. This training begins at our Selma Academy and continues annually. I am not aware of any policy, procedure, protocol, custom or practice adopted, approved or ratified by me or my predecessor which would condone or allow excessive force.

4. I am not licensed to practice as a nurse or physician in the State of Alabama. have not received any substantive medical training of any kind and am not authorized to provide medical advice to any inmate, diagnose any inmate's medical conditions, prescribe medication, refer any inmate to any medical specialist or review the medical decisions made by the physicians working in the ADOC system. I have not served on the medical staff at the Bullock or any other correctional facility in the State of Alabama. I have not provided any medical care directly to any inmate incarcerated in the State of Alabama. I have not made any medical decisions for or pertaining to any inmate incarcerated in the State of Alabama.

5. I am not responsible for approving or declining any requests for medical treatment from any inmate in Alabama or any requests for any specialty medical treatment prescribed by the medical staff at Bullock. I have never instructed any member of the medical staff at Bullock to withhold or refuse any type of medical treatment of any kind for any inmate. I am not

involved in any personnel decisions (i.e. hiring, firing, disciplinary or assignment of duties and responsibilities) regarding the medical personnel at Bullock. I have not been notified that any inmate at Bullock required (or had even requested) any type of medical treatment or services, which had not been provided.

6. I was not aware that Stephon Lindsay was incarcerated in an ADOC facility prior my appointment as Commissioner and notification of this lawsuit. I have not had any communication of any kind with him. I was not aware of any medical conditions allegedly suffered by any of inmates prior to my appointment as Commissioner. I have not reviewed any portion of any of Lindsays' medical records. I have not been apprised of any complaints of Lindsay before the filing of his claims. I have not received or reviewed any of the grievances submitted by him. I have not communicated in any way with any members of the medical staff at Bullock regarding Lindsay's medical conditions, symptoms, treatment or complaints.

7. I am not aware of any policy, procedure, protocol, custom or practice adopted, approved or ratified by me or my predecessor which prevented or delayed the provision of necessary medical care to Lindsay.

Further affiant sayeth not.

_____
Richard F. Allen

SWORN TO and SUBSCRIBED before this the 14th day of August, 2007.

_____
Notary Public
My Commission Expires: 3/31/08

(SEAL)

3

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

STEPHON LINDSAY,                    )
AIS #207044                         )
                                    )
    Plaintiff,          )
                                    )
    v.                  )    CASE NO. 2:07-CV-399
                                    )
RICHARD ALLEN, et al.,              )
                                    )
    Defendants.         )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared John Cummins II, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is John Cummins II, and I am presently employed as a Correctional Warden III, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

On January 8, 2007, at approximately 4:00 p.m., the approximate time of this incident, I was in my office. I received a phone call at approximately 4:15 p.m., from Warden I Sandra Giles, informing me that there had been an incident in the Gym. I reported to the Infirmary where I observed Officers Preston Herbert, Jeffery Hudson, and inmate Stephon Lindsay, BM/207044, receiving treatment for various injuries.

Page 2

Another inmate, Lamario Averhart, BM/217106, was also present, and receiving an examination for placement in Segregation. I remained in the Infirmary for approximately thirty (30) minutes, and at no time did I observe any force being used, nor did I see inmate Lindsay bleeding profusely.

According to the Body Chart completed on January 8, 2007, inmate Lindsay was examined by Dr. Siddiq. I did not deny inmate Lindsay medication for pain and infection.

To the best of my knowledge, inmate Lindsay received adequate medical attention for his injuries.

_____
John Cummins II

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _28th_ day of _June_ 2007.

_____
NOTARY PUBLIC

My Commission Expires: _2/24/2009_.

SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,          )
AIS #207044              )
                           )
     Plaintiff,        )
                           )
    v.             )     CASE NO. 2:07-CV-399
                           )
RICHARD ALLEN, et al.,   )
                           )
     Defendants.     )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Sandra Y. Giles, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Sandra Y. Giles, and I am presently employed as a Correctional Warden I, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one (21) years of age.

On January 8, 2007, I, Sandra Y. Giles, Warden I, was notified of a physical altercation involving inmate Stephon Lindsay, B/207044. I entered the Infirmary and observed inmate Lindsay in the Exam Room, being examined by Nurse P. Robbins. I observed abrasions on inmate Lindsay, but no profusely or active bleeding. Inmate Lindsay was treated by the medical staff, according to their protocol. I have no

Page 2

knowledge of the lack of adequate medical treatment, nor did I receive a complaint about such from inmate Lindsay.

Excessive use of force is not condoned at Bullock Correctional Facility. The incident was referred to the Investigations and Intelligence Division of the ADOC for review. It was determined that excessive force was not used.

Sandra Y. Giles

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _26th_ day of _July_ 2007.

NOTARY PUBLIC

My Commission Expires: _2/24/2009_.

SEAL

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| STEPHON LINDSAY, <br> AIS #207044 <br><br>     Plaintiff, <br><br>     v. <br><br> RICHARD ALLEN, et al., <br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)   CASE NO. 2:07-CV-399<br>)<br>)<br>)<br>) |

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Sylvester Nettles Sr., who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Sylvester Nettles Sr., and I am presently employed as a Correctional Captain, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

On the day in question, I, Sylvester Nettles Sr., did go to the scene, but when I got there, it was over. I then started to question some officers about the incident, and then went to the Infirmary. When I arrived at the Infirmary, the officers were being treated and, also, inmate Lindsay.



Page 2

What I said to Officer Hampton was not about inmate Lindsay, it was about who did what. Inmate Lindsay has no way of knowing what I or anyone else was thinking, unless someone told him what was on their minds.

As for the scratches, at that time, that was all I could tell his father, because that's all I knew. The medical staff handled all injuries. I also allowed inmate Lindsay to talk to his father a few days later.

_____
Sylvester Nettles Sr.

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the ___26th___ day of ___July___ 2007.

_____
          NOTARY PUBLIC

My Commission Expires: ___2/24/2009___.

SEAL

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| STEPHON LINDSAY, | ) | |
| AIS #207044 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-399 |
| | ) | |
| RICHARD ALLEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Ruthie Perry, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Ruthie Perry, and I am presently employed as a Correctional Sergeant, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one (21) years of age.

I, Ruthie Perry, was named as a defendant in this lawsuit, Case No. 2:07-CV-399; however, no specific allegations were made against me.

On the day of the incident, I responded to a Code Red over the radio. I then proceeded toward the Gym. When I arrived to the Gym, the incident was over. I observed two (2) inmates with handcuffs on, being escorted toward the Infirmary. I then returned to the Payroll Office in the Administration area, where I was assigned to work that date.

Page 2

_Ruthie S. Perry_
Ruthie Perry

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the ___24th___ day of ___July___ 2007.

_____
NOTARY PUBLIC

My Commission Expires: __2/24/2009__

SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,            )
AIS #207044                )
                           )
    Plaintiff,            )
                           )
    v.                    )    CASE NO. 2:07-CV-399
                           )
RICHARD ALLEN, et al.,     )
                           )
    Defendants.           )

## **A F F I D A V I T**

Before me, the undersigned authority, a Notary Public, in and for said County

and State of Alabama at Large, personally appeared Jeffery Hudson, who being known

to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Jeffery Hudson, and I am presently employed as a Correctional

Officer, with the Alabama Department of Corrections, Bullock County Correctional

Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one

(21) years of age.

On January 8, 2007, I, Officer Jeffery Hudson, was assigned as the Gym Rover.

In reference to an incident that occurred during my tour of duty (see Incident Report

BCF:07-386), inmate Stephon Lindsay makes several claims against me. On this date, I

was the only officer in the Gym with several inmates. Inmate Lindsay claims that I

walked outside for two minutes and came back with Officer Herbert. I could not leave

the Gym because there were other inmates in the gym, and I was the only officer

Page 2

assigned to the Gym. An officer cannot leave his/her assigned post without a relief and permission from the supervisor. Inmate Lindsay was sitting on the bleachers. I never approached him, but I did order him to come down off the bleachers. As inmate Lindsay was approaching me, I extended my left hand for him to stop and not get too close. Inmate Lindsay claims that I pushed him in the chest, causing him to almost fall. My hand was already extended. Inmate Lindsay continued walking toward me, therefore, walking into my hand, which caused me to slightly push him. I did not push him a second time. When inmate Lindsay approached me, he was swinging his arms in an aggressive manner, so I reached for my baton and ordered him a second time to get back. I did not reach out, grab or shake inmate Lindsay.

Officer Preston Herbert then entered the Gym to assist me. Inmate Lindsay claims that Officer Herbert started beating him with the baton he (Herbert) was holding, so he (Lindsay) grabbed me and steered me around until I was between him and Officer Herbert. Officer Herbert did strike inmate Lindsay with his baton so that he (Lindsay would turn loose the hold he had on me. Lindsay grabbed Officer Herbert's baton and tried to take it. At this time, I did strike inmate Lindsay in an effort to make him turn loose Officer Herbert's baton. Inmate Lindsay then ran outside on the yard. Inmate Lindsay claims that he wasn't given any orders to do anything. As he ran outside, I ordered him, several times, to stop. After he did not comply, I did spray him with my chemical mace (Freeze +P), which I am qualified to carry. At no time did I continue to beat inmate Lindsay. When I sprayed inmate Lindsay, he was still being aggressive,

Page 3

and I wrestled him to the ground. I could not strike him because we were both on the ground. Officer Hampton then handcuffed inmate Lindsay and he was then escorted to the Infirmary by Officer Hampton and Officer Jackson. At no time did I beat inmate Lindsay while he was handcuffed (see attached Incident Report Number BCF: 07-025).

Additionally, I have attached Incident Report Number BCF: 07-386, concerning inmate Lindsay's actions on 3-22-07, for your review.

Jeffery Hudson

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _20th_ day of _August_ 2007.

NOTARY PUBLIC

My Commission Expires: _2/24/2009_.

SEAL

**STATE OF ALABAMA**
**DEPARTMENT OF CORRECTIONS**
**INCIDENT REPORT**

| 1. Institution: BULLOCK COUNTY CORRECTIONAL FACILITY | 2. Date: 01-08-2007 | 3. Time: 4:00 p.m. | 4. Incident Number: BCF: 07-025 | Class Code: B |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: Gym | 6. Type of Incident: #29 Assault on a Person Associated with DOC Official/Use of Force |
|---|---|

| 7. Time Incident Reported: 4:15 p.m. | 8. Who Received Report: *Michael McCraney, Cor Lieutenant* Michael McCraney. Correctional Lieutenant |
|---|---|

**9. Victims:**

| | Name | | AIS |
|---|---|---|---|
| a. | Jeffery Hudson | No. | Correctional Officer |
| b. | | No. | |
| c. | | No. | |

**10. Suspects:**

| | Name | | AIS |
|---|---|---|---|
| a. | Stephon Lindsay | No. | B/207044 |
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |

**11. Witnesses:**

| | Name | | AIS |
|---|---|---|---|
| a. | N/A | No. | |
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |
| f. | | No. | |
| g. | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence

N/A

13. Description of Evidence:

N/A

14. Chain of Evidence:

a. N/A
b.
c.
d.
e.

15. Narrative Summary: On January 8, 2007, Officer Jeffery Hudson was assigned as the Gym Rover. At approximately 4:00 p.m., while roving in front of the bleachers, Officer Hudson observed several inmates sitting in the bleachers with big coats on. Officer Hudson then ordered inmate Stephon Lindsay, B/207044, to step down off the bleachers. Inmate Lindsay stood up, his penis was erect hanging out of his (inmate Lindsay) pants. Inmate Lindsay then became hostile, stating you (Officer Hudson) didn't see me do shit. Inmate Lindsay was swinging his arms in a back and forth motion while walking towards Officer Hudson in an aggressive manner. Officer Hudson then reached his left hand out and ordered inmate Lindsay to get back. Inmate Lindsay then started coming closer to (Officer Hudson) in an aggressive manner. Officer Hudson reached for his baton and again ordered inmate Lindsay to back up. Inmate Lindsay began swinging his closed fist, striking Officer Hudson several times in the chest area. At approximately 4:02 p.m., Officer Preston Herbert (Yard Rover) reported to assist me (Officer Hudson). Officer Herbert struck inmate Lindsay several times on inmate Lindsay left leg. Inmate Lindsay then grabbed Officer Herbert's baton and tried to take the baton away from Officer Herbert. Officer Hudson then began striking inmate Lindsay on his right arm causing inmate Lindsay to turn Officer Herbert's baton a loose. Officer Hudson then called Code Red. Officer Herbert then regain control of his baton and Officer Herbert began striking inmate Lindsay in the right leg area below the knee. Officer Herbert baton hit Officer Hudson baton causing Officer Hudson's baton to fall to the floor. Inmate Lindsay attempted to pick up the baton. Officer Hudson then grabbed inmate Lindsay as he reached down for his baton. Inmate Lindsey ran to the back door of the Gym on the yard. Officer Hudson ordered inmate Lindsay several times to stop; inmate Lindsay refused. Officer Hudson pulled his Chemical Spray (Freeze + P) and sprayed inmate Lindsay. Officer Hudson

Distribution:   ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
             COPY to Institutional File                                     COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
INCIDENT REPORT/DUTY OFFICER REPORT
CONTINUATION

| Institution:<br>BULLOCK COUNTY CORRECTIONAL FACILITY | Incident Number:<br>BCF: 07-025 | Class Code:<br>B |
|---|---|---|
| Date:<br>01-08-2007 | Type of Incident:<br>#29 Assault on a Person Associated with DOC/Use of Force | |

Narrative Summary (Continued, Page No. 2)

then wrestled inmate Lindsay to the ground. Inmate Lindsay continued to be aggressive. At approximately 4:05 p.m., Officer Bruce Hampton placed handcuffs on inmate Lindsay. At approximately 4:06 p.m., Officer Hampton and Officer Adrian Jackson escorted inmate Lindsay to the Infirmary for a body chart (see attached body chart). At approximately 4:10 p.m., Officer Hudson entered the Infirmary for a body chart (see attached body chart). At approximately 4:12 p.m., Officer Herbert entered the Infirmary for a body chart (see attached body chart). At approximately 4:27 p.m., Officer Herbert was transported by Sgt. Ruthie Perry to Bullock County Hospital Emergency Room for treatment. Officer Herbert was examined by Dr. Talda Malk, MD and was released back to BCCF. Lt. Michael McCraney did an Employee First Report of Injury and a copy was faxed to the Division of Risk Management. Inmate Lindsay was escorted to the Segregation Unit and placed in Segregation Cell #19, pending disciplinary action for violation of Rule #29, Assault on a Person Associated with DOC. Lt. McCraney faxed a Duty Officer Report to Commissioner Greg Lovelace and Division of I & I.

_____
Jeffery Hudson, Correctional Officer I

**S T A T E M E N T**

On January 8, 2007, at approximately 4:00 p.m., Officer Bruce Hampton was sitting in the ICS office when Officer Hampton heard via radio; Code Red in the Gym. Officer Hampton rushed to the Gym. Upon arrival Officer Hampton saw inmate Stephon Lindsay, B/207044, lying on the ground. Officer Hampton instructed inmate Lindsay to get up and turn around. Inmate Lindsay complied. Officer Hampton then placed handcuffs on inmate Lindsay and escorted him (Lindsay) to the Health Care Unit. No further action taken.

_____
Bruce Hampton, Correctional Officer I

ADOC Form 302-B – June 1, 2005

**STATE OF ALABAMA**
**DEPARTMENT OF CORRECTIONS**
**INCIDENT REPORT**

| 1. Institution: BULLOCK COUNTY CORRECTIONAL FACILITY | 2. Date: 3-22-2007 | 3. Time: 7:03 p.m. | 4. Incident Number: BCF: 07-386 | Class Code: C |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: Back door of Gym on Yard | 6. Type of Incident: Informational Purposes |
|---|---|

| 7. Time Incident Reported: 7:08 p.m. | 8. Who Received Report: Patricia Lockley |
|---|---|

**9. Victims:**   Name                                                            AIS

a.   N/A                                              No.  N/A
b.                                                    No.
c.                                                    No.

| **10. Suspects:** Name | AIS | **11. Witnesses:** Name | AIS |
|---|---|---|---|
| a. Stephon Lindsay | No. B/207044 | a. N/A | No. |
| b. Edwin Coventry | No. W/209975 | b. | No. |
| c. | No. | c. | No. |
| d. | No. | d. | No. |
| e. | No. | e. | No. |
| | | f. | No. |
| | | g. | No. |

**PHYSICAL EVIDENCE:**
**12. Type of Evidence**
N/A

**13. Description of Evidence:**
N/A

**14. Chain of Evidence:**
a.   N/A
b.
c.
d.
e.

**15. Narrative Summary:** On March 21, 2007, Officer Jeffery Hudson was assigned as the Gym Officer. At approximately 6:00 p.m., Stephon Lindsay, B/207044 entered the Gym. While inmate Lindsay was in the Gym he (inmate Lindsay) constantly walked back and forth pass Officer Hudson while staring in Officer Hudson direction. On March 22, 2007, Officer Hudson was assigned as the Gym Officer. At approximately 7:03 p.m., Officer Hudson was standing at the back of the Gym door waiting on the inmates to come off the yard before he (Officer Hudson) close the Gym door along with Officer Adrian Jackson. At this time, inmate Lindsay and Edwin Coventry, W/209975 departed the Gym enroute to their Dorms. Inmate Lindsay looked back at Officer Hudson and began pointing his finger at Officer Hudson mumbling some words that Officer Hudson could not hear. Inmate Lindsay action caused inmate Coventry to also look back at Officer Hudson and begin to laugh. Inmate's Coventry and Lindsay continued to walk, look back and point at Officer Hudson several times. At approximately 7:08 p.m., Officer Hudson advised Sgt. Lockley of this incident. Officer Hudson also advised Sgt. Lockley that he (Officer Herbert) had previous had an incident with inmate Lindsay. Officer Hudson also advised Sgt. Lockley that he (Officer Hudson) didn't feel safe around inmate Lindsay. Officer Hudson also feels threaten because of inmate Lindsay's actions for the last two (2) days. No further action taken.

Jeffery Hudson CO
Jeffery Hudson, Correctional Officer

Distribution:    ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
                 COPY to Institutional File                                   COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,                          )
AIS #207044                               )
                                          )
        Plaintiff,                        )
                                          )
    v.                                    )    CASE NO. 2:07-CV-399
                                          )
RICHARD ALLEN, et al.,                    )
                                          )
        Defendants.                       )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County

and State of Alabama at Large, personally appeared Preston Herbert, who being known

to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Preston Herbert, and I am presently employed as a Correctional

Officer, with the Alabama Department of Corrections, Bullock County Correctional

Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one

(21) years of age.

Inmate Lindsay claims I beat him with my baton, in the Bullock Correctional

Facility Gym, 1-8-07.

I was the Yard Rover that day. An inmate told me of another inmate in the Gym,

"jacking his dick on the store lady." I radioed the Gym Rover, Correctional Officer Jeffery

Hudson, and reported the trouble to him. I entered the Gym. I observed that Lindsay

had grabbed hold of Officer Hudson and I saw Lindsay try to hit Officer Hudson with his

Page 2


fist. I radioed for assistance. I pulled my baton and shouted for Lindsay to stop, lay

down, and be handcuffed. Lindsay cussed and tried to hit me. I hit him in his body,

several times with my baton. He (Lindsay) grabbed my baton, twisted my arm, and

dislocated my shoulder. At that point, I (Officer Herbert) struck inmate Lindsay with my

fist in his facial and body area several times in an attempt to get him to release my

baton. Inmate Lindsay released my baton and ran out of the Gym. Officer Hudson and I

ran after him, to handcuff him. Lindsay was still fighting us. We swung our batons to his

leg. Lindsay fell to the ground, but still struggled. Other officers were then on the scene.

I told them to put handcuffs on Lindsay; and, I stood over Lindsay, because my shoulder

was dislocated. Then I left the area because of the bad pain I had. I have no other

knowledge of this incident. My report of this is attached – Incident Report Number

BCF:07-025.


Preston Herbert

Page 3

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal

on this the _31st_ day of _July_ 2007.

_____
NOTARY PUBLIC

My Commission Expires: _5/28/2011_ .

SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,               )
AIS #207044                  )
                             )
     Plaintiff,             )
                             )
     v.                    )   CASE NO. 2:07-CV-399
                             )
RICHARD ALLEN, et al.,      )
                             )
     Defendants.       )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Adrian Jackson, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Adrian Jackson, and I am presently employed as a Correctional Officer, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

On January 8, 2007, I, Officer Adrian Jackson, was assigned as Dorm I Rover when I heard a Code Red radioed from the Gym. I then ran to the Gym. When I arrived on the scene, I observed officers struggling with inmate Lindsay on the Exercise Yard. I told inmate Lindsay to stay down on the ground. After inmate Lindsay had been handcuffed, I helped escort him to the Infirmary. I then returned to my assigned post. At

Page 2

no time did I jab inmate Lindsay in the face. Inmate Lindsay alleges that I knocked inmate Lamario Averhart off a table in the Infirmary. I did not enter the Infirmary.

_Adrian Jackson_
Adrian Jackson

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the 26th day of July 2007.

NOTARY PUBLIC

My Commission Expires: 2/24/2009.

SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,              )
AIS #207044                   )
                              )
    Plaintiff,          )
                              )
    v.                  )    CASE NO. 2:07-CV-399
                              )
RICHARD ALLEN, et al.,        )
                              )
    Defendants.         )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Rodrick Talley, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Rodrick Talley, and I am presently employed as a Correctional Officer, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one (21) years of age.

On January 8, 2007, I, Officer Rodrick Talley, was assigned as K Dorm Rover. I heard a "Code Red" called on the radio. I then ran to the Gym where the Code Red was called. When I arrived to the Gym, inmate Stephon Lindsay was having handcuffs put on him by Officer Bruce Hampton. I assisted Officers Hampton and Adrian Jackson in escorting Lindsay to the Infirmary.

Page 2


Inmate Lindsay claims that I said, while escorting him to the Infirmary, "When you get to the Infirmary, you're gonna get some more." Lindsay further claims that, as we approached the Infirmary, I rammed his head into the wall twice. The allegations made are false. I did not make any such statement, nor did I ram his head into the wall. I  then returned to K Dorm. At no time did I push or hit inmate Lindsay.


_Rodrick Talley_
Rodrick Talley


STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the ___26th___ day of ___July___ 2007.

_Justine B. Person_
NOTARY PUBLIC

My Commission Expires:___2/24/2009___.



SEAL

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

STEPHON LINDSAY,                      )
AIS #207044                           )
                                      )
    Plaintiff,                   )
                                      )
    v.                           )    CASE NO. 2:07-CV-399
                                      )
RICHARD ALLEN, et al.,                )
                                      )
    Defendants.                  )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Juan Baskin, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Juan Baskin, and I am presently employed as a Correctional Officer, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one (21) years of age.

On January 8, 2007, I, Officer Juan Baskin, was scheduled to report to work at Bullock County Correctional Facility. However, on this date, I did not report to work. I called in sick. On January 8, 2007, an incident occurred with inmate Stephon Lindsay. I have no knowledge of the incident due to the fact that I wasn't present at work. Inmate Lindsay alleges that while he was cuffed, waiting for the nurse to examine him, I jabbed

Page 2


him in the face. Inmate Lindsay also makes the claim that I walked over to Officer

Jackson in the Infirmary and said, "This arm is broken." I do deny these allegations due

to the fact that none of this occurred on my part because I was not present at work on

January 8, 2007. I have no knowledge of the incident and was not involved.


_Juan Baskin CO_
Juan Baskin


STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal

on this the ___26th___ day of ___July___ 2007.

_Justine B. Lerson_
NOTARY PUBLIC

My Commission Expires: ___2/24/2009___.



SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,           )
AIS #207044               )
                        )
    Plaintiff,         )
                        )
    v.              )    CASE NO. 2:07-CV-399
                        )
RICHARD ALLEN, et al.,    )
                        )
    Defendants.     )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Henry Hill, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Henry Hill, and I am presently employed as a Correctional Officer, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

On January 8, 2007, I, Officer Henry Hill, was the officer assigned to the Health Care Unit (Infirmary). Inmates Stephon Lindsay, B/207044, and Lamario Averhart, B/217106, were escorted to the Infirmary by several officers. Inmate Lindsay was placed in the examination room, on the table, so that he could be examined by the nurse. Inmates are not allowed to be left alone in the treatment room. Therefore, I observed inmate Lindsay while waiting for the nurse. While waiting for the nurse, I did

Page 2

not observe any physical altercations with inmate Lindsay or any officers. Inmate Lindsay claims that I, and other officers, took turns jabbing him in the face. I did not witness any officer jab inmate Lindsay, nor did I. After inmate Lindsay was examined, he was escorted out of the Infirmary to Segregation.

_Henry Hill_

Henry Hill


STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the ___26th___ day of ___July___ 2007.

_Bianka J. Etheridge_

NOTARY PUBLIC

My Commission Expires:___5/28/2011___.



SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,　　　　　　　)
AIS #207044　　　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　)　　CASE NO. 2:07-CV-399
　　　　　　　　　　　　　　　)
RICHARD ALLEN, et al.,　　　　)
　　　　　　　　　　　　　　　)
　　　Defendants.　　　　　　　)

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County
and State of Alabama at Large, personally appeared Pedehel Martin, who being known
to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Pedehel Martin, and I am presently employed as a Correctional
Officer, with the Alabama Department of Corrections, Bullock County Correctional
Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one
(21) years of age.

On January 8, 2007, I, Officer Pedehel Martin, was assigned as Rover for Dorm
G. A Code Red was called on the radio. I then ran to the Gym where the Code Red was
called. When I arrived at the Gym, the inmate had already been escorted to the
Infirmary. When I entered the Infirmary, I observed that inmate Lindsay had already
been restrained. At that time, I left the Infirmary and returned to my assigned post. At no
time did I jab inmate Lindsay in the face. I had no contact with inmate Lindsay.

Page 2

_Pedehel Martin_
Pedehel Martin


STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal

on this the __26th__ day of __July__ 2007.

__Justine B. Person__
NOTARY PUBLIC

My Commission Expires: __2/24/2009__


SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,     )
AIS #207044       )
            )
  Plaintiff,      )
            )
  v.         )  CASE NO. 2:07-CV-399
            )
RICHARD ALLEN, et al.,   )
            )
  Defendants.     )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Corey Bennett, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Corey Bennett, and I am presently employed as a Correctional Officer, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

Lindsay's complaint is that I yelled, "Shut up," loudly at him, when he was in the Bullock Correctional Facility Infirmary on 1-8-07.

I have no memory of such an event. I do remember Lindsay was involved in an incident. I heard of it by radio. I responded by going to the Gym. No one was there. I went to the yard and I saw several officers had restrained Lindsay. Then I went to the Gym, ahead of Lindsay and the officers escorting him, to remove any crowd for the

Page 2

escort. I went on ahead of Lindsay to keep any crowd out of the way of his being taken to the Infirmary. This all I know of this matter.

Corey Bennett
_____
Corey Bennett

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _15th_ day of _August_ 2007.

_____
NOTARY PUBLIC

My Commission Expires: _2/24/2009_.

SEAL

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

STEPHON LINDSAY,               )
AIS #207044                    )
                               )
    Plaintiff,             )
                               )
    v.                     )     CASE NO. 2:07-CV-399
                               )
RICHARD ALLEN, et al.,         )
                               )
    Defendants.            )

## **A F F I D A V I T**

Before me, the undersigned authority, a Notary Public, in and for said County

and State of Alabama at Large, personally appeared Melvin Curry, who being known to

me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Melvin Curry, and I am presently employed as a Correctional Officer,

with the Alabama Department of Corrections, Bullock County Correctional Facility, Post

Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one (21) years of

age.

On January 8, 2007, I (Officer Melvin Curry) was assigned as the Officer at the

Kitchen Entrance Door. There was a Code Red called in the Gym (via radio). Several

officers responded. When I arrived on the scene the inmate was being escorted to the

Infirmary. Inmate Lindsay alleges that on January 8, 2007, that I (Officer Melvin Curry)

entered the Infirmary, took one look at him and said, "Oh hell no. I know him," and

walked back out of the Infirmary. On the date in question, I did in fact walk into the

Page 2

Infirmary and looked at inmate Lindsay and said, "Oh, I know him." I then turned and walked back out of the Infirmary. Inmate Lindsay also claims that I witnessed other officers assaulting him and that I wrote "No Witnesses" on the disciplinary report, though he claimed to have had witnesses. At no time did I witness anyone assaulting inmate Lindsay. According to the disciplinary report, served on January 11, 2007, to inmate Lindsay, during the serving process, which was done by Officer Johnny Bailey, inmate Lindsay desired not to have any witnesses (see attached Disciplinary Report #07-025).

_____
Melvin Curry

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _____31st_____ day of ____July____ 2007.

_____
NOTARY PUBLIC

My Commission Expires: __2/24/2009__.

SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,           )
AIS #207044               )
                         )
     Plaintiff,          )
                         )
   v.               )     CASE NO. 2:07-CV-399
                         )
RICHARD ALLEN, et al.,    )
                         )
     Defendants.     )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Cedric Streeter, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Cedric Streeter, and I am presently employed as a Correctional Officer, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

The day that the incident in question occurred with inmate Stephon Lindsay, I, Officer Cedric Streeter, was off work. I have no knowledge of the incident. I never signed for the envelope from the mailroom, because it did not have my correct name on it. I was later informed of the contents of the envelope, and that it was intended for me (Cedric Streeter). However, as previously stated, I was absent from work on 1/8/07, and therefore, have no knowledge of the incident.

Page 2

_Cedric Streeter_
Cedric Streeter

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal

on this the ___26th___ day of ___July___ 2007.

___Justine B. Person___
NOTARY PUBLIC

My Commission Expires: ___2/24/2009___

SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,                          )
AIS #207044                               )
                                          )
    Plaintiff,                          )
                                          )
    v.                                  )        CASE NO. 2:07-CV-399
                                          )
RICHARD ALLEN, et al.,                    )
                                          )
    Defendants.                         )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Edward Haynes, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Edward Haynes, and I am presently employed as a Correctional Officer, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

On the date in question, I, Officer Edward Haynes, was assigned as the Segregation Rover. As Segregation Rover, part of my duties is to inform the supervisor of any requests of the inmates confined to Segregation. If there are medical requests or concerns, the inmates confined to Segregation are allowed to address these concerns with the nurse when she comes to Segregation for Pill Call daily. Inmate Lindsay's complaint is that I laughed at him when he begged Officer Beachem for some pain pills. At no time do I recall laughing at inmate Lindsay or him begging for pain pills.

Page 2

_Edward Haynes_
Edward Haynes

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal

on this the ___26th___ day of ___July___ 2007.

_Justine B. Person_
NOTARY PUBLIC

My Commission Expires: _2/24/2009_.

SEAL

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| STEPHON LINDSAY,<br>AIS #207044 | ) <br> ) <br> ) |
|     Plaintiff, | ) <br> ) |
|   v. | )     CASE NO. 2:07-CV-399 <br> ) |
| RICHARD ALLEN, et al., | ) <br> ) |
|     Defendants. | ) |

## **A F F I D A V I T**

Before me, the undersigned authority, a Notary Public, in and for said County

and State of Alabama at Large, personally appeared Bruce Hampton, who being known

to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Bruce Hampton, and I am presently employed as a Correctional

Officer, with the Alabama Department of Corrections, Bullock County Correctional

Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one

(21) years of age.

On January 8, 2007, at approximately 4:00 p.m., I, Officer Bruce Hampton, was

working in the ICS Office when I heard, via radio, a Code Red in the Gym. Upon arriving

on the scene, I observed inmate Stephon Lindsay, BM/207044, lying on the ground on

the yard. Inmate Lindsay claims that he ran over to me with his hands in the air and

begging me to stop the officers from beating him. When I arrived on the scene, inmate

Lindsay was already on the ground. I instructed inmate Lindsay to get up and turn

Page 2

around to be handcuffed. Inmate Lindsay complied. I escorted inmate Lindsay to the Health Care Unit. I departed the Health Care Unit and returned back to the ICS Office. At approximately 4:15 p.m., I returned back to the Health Care Unit where inmate Lindsay was being treated by the Health Care Unit nurse.

Inmate Lindsay also alleges that I was laughing and joking about the incident with Capt. Sylvester Nettles. I don't recall having a conversation with Capt. Nettles, nor was I carrying any mace on that day in question.

_____
Bruce Hampton

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _26th_ day of _July_ 2007.

_____
NOTARY PUBLIC

My Commission Expires: _2/24/2009_

SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHON LINDSAY,           )
AIS #207044                )
                           )
        Plaintiff,         )
                           )
        v.                 )        CASE NO. 2:07-CV-399
                           )
RICHARD ALLEN, et al.,     )
                           )
        Defendants.        )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County

and State of Alabama at Large, personally appeared Larry Beachem, who being known

to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Larry Beachem, and I am presently employed as a Correctional

Officer, with the Alabama Department of Corrections, Bullock County Correctional

Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one

(21) years of age.

On the date in question, I, Officer Larry Beachem, was assigned as Segregation

Rover. As Segregation Rover, it is part of my duties to inform the supervisors of any

medical requests inmates assigned to Segregation may have. Also, a nurse is escorted

to Segregation for Pill Call and medication is issued to all inmates that request it. I have

no authority over who receives medication when the nurse makes daily rounds.

Page 2

Inmate Lindsay claims that while he was confined to Segregation, on the date in question, he begged me (Officer Beachem) for some pain pills and I laughed at him and stated, "We know who you are." At no time do I recall inmate Lindsay begging me for pain pills, nor do I recall stating to inmate Lindsay, "We know who you are."

_Larry Beachem, CO_
Larry Beachem


STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the ___30th___ day of ___July___, 2007.

_Lance C. Anthony_
NOTARY PUBLIC
NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES:  Apr 4, 2011

My Commission Expires:_____.



SEAL

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

STEPHON LINDSAY,  )
AIS #207044  )
    )
    Plaintiff,  )
    )
    v.  )      CASE NO. 2:07-CV-399
    )
RICHARD ALLEN, et al.,  )
    )
    Defendants.  )

# A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County

and State of Alabama at Large, personally appeared Johnny Bailey, who being known

to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Johnny Bailey, and I am presently employed as a Correctional

Officer, with the Alabama Department of Corrections, Bullock County Correctional

Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one

(21) years of age.

On January 19, 2007, I (Officer Johnny Bailey) was assigned as the Segregation

Rover. Inmate Lindsay was returned back to Segregation during my tour of duty from a

medical appointment/surgery. Inmate Lindsay claims that upon his return from surgery

on this date, the officers escorting him told me to take him (Lindsay) to the Infirmary. I

do not recall being told by any officer to escort inmate Lindsay to the Infirmary.

Page 2

Therefore, as part of my duties, I placed inmate Lindsay into the cell which he was assigned to before going out to his medical appointment/surgery. Inmates confined to Segregation are allowed to report any medical issues to the nurse when she arrives in Segregation for Pill Call. The supervisor is also informed of any instances where an inmate needs to go to the Infirmary for any medical problem. This is all I know of this matter.

_____
Johnny Bailey


STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _26TH_ day of _July_ 2007.

_____
NOTARY PUBLIC

My Commission Expires: _2/24/2009_.



SEAL

# A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared John Cummins II, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is John Cummins II, and I am presently employed as a Correctional Warden III, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

I certify that the attached documents (Incident Report Number BCF:07-025 and BCF: 07-386; and Disciplinary Report Number DISC: #07-025) in the name of Stephon Lindsay, BM/207044, are true and correct copies of documents on file at Bullock County Correctional Facility.

_____
John Cummins II

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _____26th_____ day of July 2007.

_____
NOTARY PUBLIC

My Commission Expires:___2/24/2009___

SEAL

DISC: #07-025
BCCF: #07-025

ALABAMA DEPARTMENT OF CORRECTIONS
DISCIPLINARY REPORT

*admin*

DCC Form 225B (Revised 7/92)

1. INMATE: Stephon Lindsay     CUSTODY: ___MED-9___  AIS NO: __BM/207044__

2. FACILITY: __BULLOCK COUNTY CORRECTIONAL FACILITY__

3. The above named inmate is being charged by Officer Jeffery Hudson with a violation of Rule #29, specifically, Assault on a Person(s) Associated with the DOC, from regulation #403, which occurred on or about January 8, 2007, at (time) 4:00 p.m. Location: Gymnasium. A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: You, inmate Stephon Lindsay, BM/207044, did assault Officer Jeffery Hudson by swinging and hitting him with your closed fist.

5. Jeffery Hudson, COI                             _Jeffery Hudson_ COI
   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾         ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   Arresting Officer / Typed / Rank              Arresting Officer / Signature / Rank

6. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the __10__ day of __January__, 2007 at (time) __4:00__ (am/pm).

7. _Johnny Bailey, COI_                   _refused to sign (Johnny Bailey, COI)_
   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾         ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   Serving Officer / Signature / Rank            Inmate's Signature / AIS Number

8. Witnesses desired?  (NO) refused to sign (Johnny Bailey) YES _____
                        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾          ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                        Inmate's Signature                Inmate's Signature

9. If yes, list: _____

10. Hearing Date _1-11-07_   Time _8:40 pm_   Place _Seg Cell 19_

11. Inmate must be present in Hearing Room. If he is not present explain in detail on additional page and attach.

12. A finding is made that inmate (is/is not) capable of representing himself.

                                        _Melvin Curry no.2_
                                        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                        Signature / Hearing Officer

13. Plea: _Stephon Lindsay 207044_ Not Guilty _____ Guilty

14. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.

                                        _Melvin Curry HE_
                                        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                        Signature / Hearing Officer

15. Arresting Officer's testimony (at the hearing): When I told inmate Lindsay he had to leave the gym, he walked up on me with his fist closed. I pushed inmate Lindsay back, he was too close to me. Inmate Lindsay's penis was hanging out of his pants. Inmate Lindsay walked up to me again, I pushed him back, that's when he swung and hit me with his fist.

Annex C to AR 403  (Page 1 of 3 pages)

16. Inmate's Testimony:   I did not assault Officer Hudson. Officer Hudson pushed me in
the chest and started hittign me with his stick. I did not assault Officer Hudson,
He and Officer Herbert assault me.

Witness: _____N/A_____    Substance of Testimony: _____

Witness: _____N/A_____    Substance of Testimony: _____

Witness: _____N/A_____    Substance of Testimony: _____

17. The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are
attached.

_____
Signature / Hearing Officer

18. The Following witnesses were not called    -    reason not called
1. _____N/A_____    _____
2. _____    _____
3. _____    _____

19. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
The Hearing Officer finds that :   On 1/8/07, at approximately 4:00 p.m., in the gym, inmate
Stephon Lindsay, BM/207044, did assault Officer Jeffery Hudson by swinging and
hitting Officer Hudson with his closed fist.

20. Basis for Finding of Fact:  The hearing officer finds inmate Lindsay guilty based on the
arresting officer's sworn testimony under oath.

21. Hearing Officer's Decision:        X    Guilty        X    Major
                                            Not Guilty            Minor

22. Recommendation of Hearing Officer:   45 days loss of store, visiting, phone use privileges,
and confine to Segregation for 45 days.

_____
Signature / Hearing Officer

_____MELVIN CURRY, COI_____
Typed Name and Title

23. Warden's Action    Date   1-12-07
Approved
Disapproved
Other (specify)

Reason if more then 30 calendar days delay in action.

25. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
Named inmate on this the   12   day of   January   2007, at (time)   5:10   a.m./pm).

_____    X _____  207044
Signature / Serving Officer / Title    Inmate's Signature and AIS Number
                                        Annex C of AR 403 (page 2 of 3 pages)

## SYNOPSIS FOR DISCIPLINARY HEARING

This Bullock County Correctional Facility disciplinary hearing is hereby convened to hear evidence against inmate _Stephon Lindsay_ . The time is _8:40 pm_ and today's date is _1-11-07_ .

The accused, the arresting official and all witnesses were sworn to tell the truth during these proceedings.

The hearing officer explained to inmate _Stephon Lindsay_ that he was being charged by officer _Jeffery Hudson_ with violation of Rule # _29_ , specifically, _assault on a person associated w/ DOC_ , and that he was served a copy of the charge on (date) _1-10-06_ , and (did/did not) desire witnesses.

The hearing officer fully examined the documents to ensure that Due Process was afforded. The hearing officer then asked the accused if he understood the charge and he replied; (Yes) _✓_ (No) ____ . After the accused answered yes, the hearing officer asked, "How do you plea?" and the accused replied; (Guilty) ____ (Not Guilty) _✓_ .

ARRESTING OFFICER'S TESTIMONY: _when I told inmate Lindsay he had to leave the gym he walkeup on me with his fist closed I pushed inmate Lindsay back he was to close to me. Inmate Lindsay penis was hanging out his pants. Inmate Lindsay up on me again I push him back that's when he swung and hit me with his fist_

INMATE'S TESTIMONY: _I did not assault officer Hudson officer Hudson pushed me in the chest and started Hitting me with his Steak. I did assault Ofice Hudson He and ofce Herbert assault me_

WITNESS #1: _n/a_

WITNESS #2: _n/a_

WITNESS #3: _n/a_

**CONTINUE ON THE BACK**

REVISED 11/95

he accused was allowed to submit written questions to the witnesses.  The following
witnesses were not called for the reasons stated:

1.  _N/A_ _____

2.  _N/A_ _____

3.  _N/A_ _____

AFTER HEARING ALL TESTIMONY, THE HEARING OFFICER MAKES THE FOLLOWING FINDINGS OF FACT:

On _1-8-07_ at approximately _4:00 pm_ in (area) _Gym_
inmate _Stephon Lindsay_ AIS# _A1 207044_ (did/did not) _assault_
_officer Jeffery Hudson by swinging and hitting_
_him with your closed fist_

_____

Such action(s) as described in this case (is/is not) permitted at BCCF. Therefore,
the inmates actions (does/does not) constitute a violation of Rule # _29_, _____
_assault on a Person(s) associated with the DOC_

BASIS FOR FINDING OF FACT:  The hearing officer _finds inmate Lindsay_
_guilty based on the arresting officer testimony_

_____

_____

HEARING OFFICERS DECISION:  [GUILTY _✓_  NOT GUILTY ____]          *****MAJOR _✓_

RECOMMENDATION FOR PUNISHMENT OR SANCTIONS:

1.  (✓) Loss of Store Privileges for _45_ days.

2.  (✓) Loss of Visiting Privileges for _45_ days.

3.  (✓) Loss of Telephone Privileges for _45_ days.

4.  ( ) Extra Duty for _____ days.

5.  (✓) Confine to Segregation for _45_ days.

6.  ( ) Remove G.T. Status for Seg. time plus 90 days.

7.  ( ) Remove Good Time for _____ (days/months) [circle one].

8.  ( ) Extend current G.T. Category.

9.  ( ) Reduce G.T. Category to Class # _____.

10.  ( ) Place in G.T. Category _____ indefinitely.

11.  ( ) Recommend to Classification for Custody Review.

12.  ( ) Placement on the Chain Gang.

13.  ( ) Refer to I&I for possible prosecution.

Such punishment is in accordance with Administrative Regulation 403, authorized
punishment for major violations.  It was explained to the inmate that under Admin.
Reg. 403, there is no appeal.

_Melvin Curry BCF_
Hearing Officer's Signature/Title

### STATE OF ALABAMA
### DEPARTMENT OF CORRECTIONS
### INCIDENT REPORT

| 1. Institution: BULLOCK COUNTY CORRECTIONAL FACILITY | 2. Date: 01-08-2007 | 3. Time: 4:00 p.m. | 4. Incident Number: BCF: 07-025 | Class Code: B |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: Gym | 6. Type of Incident: #29 Assault on a Person Associated with DOC Official/Use of Force |
|---|---|

| 7. Time Incident Reported: 4:15 p.m. | 8. Who Received Report: *Michael McCraney* Michael McCraney, Correctional Lieutenant |
|---|---|

**9. Victims:**

| Name | | AIS | |
|---|---|---|---|
| a. | Jeffery Hudson | No. | Correctional Officer |
| b. | | No. | |
| c. | | No. | |

**10. Suspects:**

| Name | | AIS | |
|---|---|---|---|
| a. | Stephon Lindsay | No. | B/207044 |
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |

**11. Witnesses:**

| Name | | AIS | |
|---|---|---|---|
| a. | N/A | No. | |
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |
| f. | | No. | |
| g. | | No. | |

**PHYSICAL EVIDENCE:**

**12. Type of Evidence**
N/A

**13. Description of Evidence:**
N/A

**14. Chain of Evidence:**

a. N/A
b.
c.
d.
e.

**15. Narrative Summary:** On January 8, 2007, Officer Jeffery Hudson was assigned as the Gym Rover. At approximately 4:00 p.m., while roving in front of the bleachers, Officer Hudson observed several inmates sitting in the bleachers with big coats on. Officer Hudson then ordered inmate Stephon Lindsay, B/207044, to step down off the bleachers. Inmate Lindsay stood up, his penis was erect hanging out of his (inmate Lindsay) pants. Inmate Lindsay then became hostile, stating you (Officer Hudson) didn't see me do shit. Inmate Lindsay was swinging his arms in a back and forth motion while walking towards Officer Hudson in an aggressive manner. Officer Hudson then reached his left hand out and ordered inmate Lindsay to get back. Inmate Lindsay then started coming closer to (Officer Hudson) in an aggressive manner. Officer Hudson reached for his baton and again ordered inmate Lindsay to back up. Inmate Lindsay began swinging his closed fist, striking Officer Hudson several times in the chest area. At approximately 4:02 p.m., Officer Preston Herbert (Yard Rover) reported to assist me (Officer Hudson). Officer Herbert struck inmate Lindsay several times on inmate Lindsay left leg. Inmate Lindsay then grabbed Officer Herbert's baton and tried to take the baton away from Officer Herbert. Officer Hudson then began striking inmate Lindsay on his right arm causing inmate Lindsay to turn Officer Herbert's baton a loose. Officer Hudson then called Code Red. Officer Herbert then regain control of his baton and Officer Herbert began striking inmate Lindsay in the right leg area below the knee. Officer Herbert baton hit Officer Hudson baton causing Officer Hudson's baton to fall to the floor. Inmate Lindsay attempted to pick up the baton. Officer Hudson then grabbed inmate Lindsay as he reached down for his baton. Inmate Lindsey ran to the back door of the Gym on the yard. Officer Hudson ordered inmate Lindsay several times to stop; inmate Lindsay refused. Officer Hudson pulled his Chemical Spray (Freeze + P) and sprayed inmate Lindsay. Officer Hudson

Distribution:    ORIGINAL AND ONE (1) COPY to Central I & I Division
COPY to Institutional File

COPY to Deputy Commissioner of Operations (Class A and B ONLY)
COPY to Central Records Office



ADOC Form 302-A – June 1, 2005

## STATE OF ALABAMA
### DEPARTMENT OF CORRECTIONS
## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution:<br>BULLOCK COUNTY CORRECTIONAL FACILITY | Incident Number:<br>BCF: 07-025 | Class Code:<br>B |
|---|---|---|
| Date:<br>01-08-2007 | Type of Incident:<br>#29 Assault on a Person Associated with DOC/Use of Force | |

Narrative Summary (Continued, Page No. 2)

   then wrestled inmate Lindsay to the ground. Inmate Lindsay continued to be aggressive. At approximately 4:05 p.m., Officer Bruce Hampton placed handcuffs on inmate Lindsay. At approximately 4:06 p.m., Officer Hampton and Officer Adrian Jackson escorted inmate Lindsay to the Infirmary for a body chart (see attached body chart). At approximately 4:10 p.m., Officer Hudson entered the Infirmary for a body chart (see attached body chart). At approximately 4:12 p.m., Officer Herbert entered the Infirmary for a body chart (see attached body chart). At approximately 4:27 p.m., Officer Herbert was transported by Sgt. Ruthie Perry to Bullock County Hospital Emergency Room for treatment. Officer Herbert was examined by Dr. Talda Malk, MD and was released back to BCCF. Lt. Michael McCraney did an Employee First Report of Injury and a copy was faxed to the Division of Risk Management. Inmate Lindsay was escorted to the Segregation Unit and placed in Segregation Cell #19, pending disciplinary action for violation of Rule #29, Assault on a Person Associated with DOC. Lt. McCraney faxed a Duty Officer Report to Commissioner Greg Lovelace and Division of I & I.

_(signature)_ CO
Jeffery Hudson, Correctional Officer I

## S T A T E M E N T

On January 8, 2007, at approximately 4:00 p.m., Officer Bruce Hampton was sitting in the ICS office when Officer Hampton heard via radio; Code Red in the Gym. Officer Hampton rushed to the Gym. Upon arrival Officer Hampton saw inmate Stephon Lindsay, B/207044, lying on the ground. Officer Hampton instructed inmate Lindsay to get up and turn around. Inmate Lindsay complied. Officer Hampton then placed handcuffs on inmate Lindsay and escorted him (Lindsay) to the Health Care Unit. No further action taken.

_(signature)_ co
Bruce Hampton, Correctional Officer I

**STATE OF ALABAMA**
**DEPARTMENT OF CORRECTIONS**
**INCIDENT REPORT/DUTY OFFICER REPORT**
**CONTINUATION**

| Institution:<br>BULLOCK COUNTY CORRECTIONAL FACILTY | Incident Number:<br>BCF: 07-025 | Class Code:<br>B |
|---|---|---|
| Date:<br>01-08-2007 | Type of Incident:<br>#29 Assault on a Person Associated with DOC/Use of Force | |

Narrative Summary (Continued. Page No. 3)

## STATEMENT

On January 8, 2007, at approximately 4:05 p.m., Officer Preston Herbert was assigned as the Yard Rover. Officer Herbert was approached by an unidentified inmate that stated, "Officer Herbert, can you call Officer Jeffery Hudson and let him know that there is a inmate in the Gym jacking his dick on the store lady." Officer Herbert radioed for Officer Hudson to come to the back of the Gym door; where Officer Herbert explained to Officer Hudson what was told to him about an inmate inside the Gym. Officer Herbert stayed near the exit door of the Gym observing the inmates on the main yard. While standing near the exit door, Officer Herbert observed a group of inmates becoming very loud and angry. Officer Herbert immediately entered the Gym observing inmate Stephon Lindsay, B/207044, grabbing Officer Hudson in the collar area swinging his fist in an attempt to hit Officer Hudson. Officer Herbert radioed for help inside the Gym. Officer Herbert immediately pulled his baton and begin shouting stop, lay on the floor to be handcuffed. Inmate Lindsay began cussing and swinging in an attempt to hit Officer Herbert. Officer Herbert then began swinging his baton several times striking inmate Lindsay body area. While Officer Herbert was swinging his baton in an attempted to hit inmate Lindsay, inmate Lindsay grabbed Officer Herbert baton and began to twist Officer Herbert arm until Officer Herbert shoulder was dislocated. At this point Officer Herbert began hitting inmate Lindsay with his baton so that inmate Lindsay would let loose of Officer Herbert baton and ran out of the Gym door onto the main yard. Officers Herbert and Hudson ran out the Gym door behind inmate Lindsay in an attempt to handcuffed inmate Lindsay. Inmate Lindsay was still fighting toward Officers Herbert and Hudson. Officers Herbert and Hudson began swinging their Baton again toward the leg area of inmate Lindsay so that inmate Lindsay would fall to the ground to be handcuffed, but still putting on a mild struggle. Officer Herbert then stood over inmate Lindsay and instructed Officer Bruce Hampton and other Officers to placed handcuffs on inmate Lindsay; because Officer Herbert shoulder was dislocated. Officer Herbert immediately left the incident area due to bad pain. I have no other knowledge of this incidents.

*for* ~~Michael McGaney~~ *Correctional Lieutenant.*
~~Preston Herbert, Correctional Officer~~

**STATE OF ALABAMA**
**DEPARTMENT OF CORRECTIONS**
**INCIDENT REPORT/DUTY OFFICER REPORT**
**CONTINUATION**

| Institution:<br>BULLOCK COUNTY CORRECTIONAL FACILITY | Incident Number:<br>BCF: 07-025 | Class Code:<br>B |
|---|---|---|
| Date:<br>01-8-2007 | Type of Incident:<br>#29 Assault on a Person Associated with DOC/Use of Force | |

Narrative Summary (Continued, Page No. 4)

### ADDENDUM

On January 8, 2007, Lt. Michael McCraney placed inmate Stephon Lindsay, B/207044, bloody state whites in Infirmary Cell #2, so that the clothes could dry. On January 11, 2007, Lt. McCraney removed inmate Stephon Lindsay's clothes from Infirmary Cell #2 and placed the clothes in a sealed brown paper bag and placed the sealed brown bag in BCCF Central Control at 2:10 p.m. (See attached evidence form).

*Michael McCraney, Correctional Lieutenant*
Michael McCraney, Correctional Lieutenant

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
**INCIDENT REPORT/DUTY OFFICER REPORT**
**CONTINUATION**

| Institution:<br>BULLOCK COUNTY CORRECTIONAL FACILITY | Incident Number:<br>BCF: 07-025 | Class Code:<br>B |
|---|---|---|
| Date:<br>01-8-2007 | Type of Incident:<br>#29 Assault on a Person Associated with DOC/Use of Force | |

Narrative Summary (Continued, Page No. 4)

### **A D D E N D U M**

On January 8, 2007, Lt. Michael McCraney placed inmate Stephon Lindsay, B/207044, bloody state whites in Infirmary Cell #2, so that the clothes could dry.  On January 11, 2007, Lt. McCraney removed inmate Stephon Lindsay's clothes from Infirmary Cell #2 and placed the clothes in a sealed brown paper bag and placed the sealed brown bag in BCCF Central Control at 2:10 p.m.  (See attached evidence form).

Michael McCraney, Correctional Lieutenant

ADOC Form 302-B – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF FINANCE
DIVISION OF RISK MANAGEMENT
STATE EMPLOYEE INJURY COMPENSATION TRUST FUND (SEICTF)

## EMPLOYER'S FIRST REPORT OF INJURY OR OCCUPATIONAL DISEASE

Report to be completed by supervisor or other designated authority.
All questions must be answered.
Type or print

SEND TO:  State Employee Injury Compensation Trust Fund
Division of Risk Management
P. O. Box 303250
Montgomery, AL 36130-3250
24 hr.  FAX: (334) 223-6170 or 1-888-827-6753

This report must be completed and FAXED to the Division of Risk Management within 24 hours of the injury.  If you are unable to FAX, the injury may be reported by calling: 1-800-388-3406, 8 AM to 5 PM, Monday thru Friday. After hours injury reports should be FAXED or called in at the beginning of the next working day.

| 1. Name of Injured Employee (Please type or print) | 2. SSN | 3. Date of Birth | 4. Sex |
|---|---|---|---|
| (Last) Hudson (First) Jeffery (MI) B | 423 06 9153 | 6 6 1968 | ✓ M ___ F |

5. Home Address (No. and Street) 226 Tye St
(City or Town) Union Springs, Al 36089
(State)
(Zip)

6. Phone Home ( ) 334 738-8573
Work ( ) 738 - 5625
Cell ( ) 398 - 1848
Work Hours: From: 2:00 pm To: 10:00 pm

| 7. Job Title COI | 8. Status ✓ Full Time ___ Part Time ___ Contract | 9. Job Code 60711 |
|---|---|---|

| 10. Employing Agency Corrections | Agency Number 11860 | 11. Division, District, etc. Bullock Co Correctional Facility 11500 |
|---|---|---|

12. Agency Address (No. and Street) 5107 (City or Town) Union Springs (State) Ala (Zip) 36016

| 13. Date of Injury 1 8 2007 | 14. Date Employer Notified 1 8 06 | 15. Time of Injury 4:00 ___ AM ✓ PM |
|---|---|---|

16. Is employee covered by State Employee Medical Insurance? ✓ Yes ___ No

17. At this time, has the injury or illness required medical treatment? ✓ Yes ___ No  (IF YES, complete 18 & 19.)

18. Name and address of treating physician:

19. Name and address of hospital:

___ Hospitalized  ___ Outpatient  ___ Emergency Treatment  ___ NONE

| 20. City or town where injury occurred: Union Springs, Al | 21. Was injury caused by a motor vehicle accident? ___ Yes ✓ No |
|---|---|

22. Was more than one person injured in this incident? ✓ Yes ___ No

23. Describe fully what happened to cause the injury or illness and indicate the body part(s) affected: Officer Hudson was in an altercation with inmate Stephen Lindsay. Officer Hudson fell to the floor while attempting to restrain inmate Lindsay. Also, when Officer Hudson injured his finger on his right hand and his left elbow. Officer Hudson also had abrasions on both knees.

24. Were there any witnesses to the injury? ✓ Yes ___ No  (If yes, give name, address and phone number.)
Preston Herbert
Bullock Co Correctional Facility  334-738-5625  6am to 2pm

| 25. Signature of supervisor reporting incident | Print Name | Phone (Daytime) | Date |
|---|---|---|---|
| Michael McGary | Michael McGary | 738-5625 | 1-8-06 |

SEICTF Form 1   REV 06/04

# Alabama Department of Corrections
## Duty Officer Report

Class Code    **B**

Type of Incident:    **Assault on DOC OFFICIAL**        Institution:    **Bullock County Corr. Facility**

Victim(s):    **JEFFERY HUDSON COI**    AIS # _____    R/S _____    DOB _____

        **PRESTON HERBERT COI**    AIS # _____    R/S _____    DOB _____

Suspects(s):    **STEPHEN LINDSAY**    AIS # **207044**    R/S **B/M**    DOB **9/06/77**

        _____    AIS # _____    R/S _____    DOB _____

        _____    AIS # _____    R/S _____    DOB _____

Sentenced From:    **ETOWAH COUNTY**        Date of Sentence:    **9/23/99**

Offense(s):    **ROBBERY I**        Length of Sentence:    **120 YRS.**

Minimum Release Date:    **2118**

---

Date:    **1/8/07**    Time:    **9:05 p.m.**    Location:    **BULLOCK CO. CORR. FACILITY GYM**

Brief Narrative: On January 8, 2007, Officer Jeffery Hudson was assigned as Gym Rover. Officer Hudson was roving in front of the bleachers in the Gym and observed inmate Stephen Lindsay B/M sitting in the bleachers wearing a big coat and appeared to be masterbating. Officer Hudson ordered inmate Lindsay to step down off the bleachers on to the floor. When inmate Lindsay stood up his erect penis was out of his pants. Inmate Lindsay shouted in an aggressive voice that you didn't catch me doing shit. Officer Hudson then ordered inmate Lindsay to step back, inmate Lindsay refused to do so. Inmate Lindsay continued to come toward Officer Hudson in an aggressive manner. Officer Hudson then pulled his baton and ordered inmate Lindsay again to stop. Inmate Lindsay then struck Officer Hudson several times in the chest area with his closed fist. Officer Preston Herbert (yard rover) came to assist Officer Hudson. Officer Herbert hit inmate Lindsay several times on his right leg with his baton. Inmate Lindsay continued to be aggressive. Inmate Lindsay grabbed Officer Herbert' baton in attempt to take the baton from Officer Herbert. Inmate Lindsay pulled  Officer Herbert's baton and then twisted the baton causing Officer Herbert shoulder to dislocate. Officer Hudson then wrestled inmate Lindsay to ground and handcuffs were placed on inmate Lindsay. Inmate Lindsay was escorted to the infirmary for a body chart and then placed in Segregation pending disciplinary action for rule violation # 29 " Assault On a DOC Official " Officer Hudson and Officer Herbert went to the infirmary for a body chart. Officer Herbert was taken to Bullock County Hospital for treatment. A Employee First Injury Report was faxed on both employees. No further action taken.

(Use ADOC Form 302-B for Continuation of narrative)

Official Reporting:  *Michael McCraney COSI*    Date:  __1/08/07__    Time:  __10:00 p.m.__

Receiver of Report:  _____

Deputy Comm. of Operations:  __Mr. Greg Lovelace__    Date:  __1/08/07__    Time:  __10:00 p.m.__

Inst. Coordinator:  _____    Date:  _____    Time:  _____

Investigations:  __I & I Division__    Date:  __1/08/07__    Time:  __10:00 p.m__

Public Information Officer:  _____    Date:  _____    Time:  _____

**ADOC Form 302-C – June 1, 2005**

**STATE OF ALABAMA**
**DEPARTMENT OF FINANCE**
**DIVISION OF RISK MANAGEMENT**
**STATE EMPLOYEE INJURY COMPENSATION TRUST FUND (SEICTF)**

### EMPLOYER'S FIRST REPORT OF INJURY OR OCCUPATIONAL DISEASE

__ Report to be completed by supervisor or other designated authority.
__ All questions must be answered.
__ Type or print

SEND TO:  State Employee Injury Compensation Trust Fund
Division of Risk Management
P. O. Box 303250
Montgomery, AL 36130-3250
24 hr.   FAX: (334) 223-6170 or 1-888-827-6753

This report must be completed and FAXED to the Division of Risk Management within 24 hours of the injury. If you are unable to FAX, the injury may be reported by calling: 1-800-388-3406, 8 AM to 5 PM, Monday thru Friday. After hours injury reports should be FAXED or called in at the beginning of the next working day.

| 1. Name of Injured Employee (Please type or print) (Last) (First) (MI) | 2. SSN | 3. Date of Birth | 4. Sex |
|---|---|---|---|
| Herbert, Preston | 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 | 06 05 62 | ✓ M __ F |

**5. Home Address** 5724
(No. and Street)
Villas Lane Apt E
(City or Town)
(State)
Montgomery, Alabama 36116
(Zip)

**6. Phone** Home (334) 272-5338
Work (334) 738-5625
Cell ( )
Work Hours: From: 6am To: 2pm

**7. Job Title**
Correctional Officer I

**8. Status** ✓ Full Time / __ Part Time / __ Contract

**9. Job Code** 60711

**10. Employing Agency** Corrections   Agency Number 11800

**11. Division, District, etc.** Bullock County Correctional Facility

**12. Agency Address** (No. and Street) 5107   (City or Town) Union Springs   (State) AA.   (Zip) 36089

| 13. Date of Injury | 14. Date Employer Notified | 15. Time of Injury |
|---|---|---|
| 01 08 07 | 01 08 07 | 4:00 __ AM ✓ PM |

**16. Is employee covered by State Employee Medical Insurance?** ✓ Yes __ No

**17. At this time, has the injury or illness required medical treatment?** ✓ Yes __ No   (If YES, complete 18 & 19.)

**18. Name and address of treating physician:** Dr. Talha Malk
Bullock County Hospital Cancer St. Union Springs Ala. 36081,

**19. Name and address of hospital:** Bullock Co. Hospital

__ Hospitalized   __ Outpatient   ✓ Emergency Treatment   __ NONE

**20. City or town where injury occurred:**
Union Springs, Alabama

**21. Was injury caused by a motor vehicle accident?**
__ Yes ✓ No

**22. Was more than one person injured in this incident?** ✓ Yes __ No

**23. Describe fully what happened to cause the injury or illness and indicate the body part(s) affected:** Officer Preston Herbert was assisting Officer Jeffery Hudson in an altercation with inmate Stephen Lindsay in the Gym. Inmate Lindsay twisted officer Herbert left arm causing his left shoulder to dislocate.

**24. Were there any witnesses to the injury?** ✓ Yes __ No   (If yes, give name, address and phone number.)
Jeffery Hudson COI
738-5625   2pm to 10pm

| 25. Signature of supervisor reporting incident | Print Name | Phone (Daytime) | Date |
|---|---|---|---|
| Michael McCraney | Michael McCraney | 738-5625 | 01/08/06 |

SEICTF Form 1 REV 06/04

STATE OF ALABAMA
DEPARTMENT OF FINANCE
DIVISION OF RISK MANAGEMENT
STATE EMPLOYEE INJURY COMPENSATION TRUST FUND (SEICTF)

## AUTHORIZATION FOR INITIAL TREATMENT AND PHARMACY

**TO BE COMPLETED BY EMPLOYEE**
**If you desire program benefits, read and sign below. Benefits will not be authorized without your signature.**

**AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION**

I hereby authorize any physician, health care professional, hospital, or other medical care facility to provide my complete health care records to representatives of the State Employee Injury Compensation Trust Fund (SEICTF), and/or its' agents regarding my health and any treatment rendered. I authorize representatives of SEICTF and/or its' agents to examine any and all records including but not limited to: all history and physical examinations; progress notes; physicians' notes; lab reports; x-ray, MRI, CT scans, myelograms and all other diagnostic procedure reports; all consultation reports and records, in-patient and out-patient facility records; operative reports; payment records; prescribed medications; and all notes, correspondence and records of any kind.

In addition, I authorize the release of information relating to (1) communicable diseases such as hepatitis and the human immunodeficiency virus (HIV); (2) alcohol/drug abuse records; and (3) all mental health, counseling and psychiatric and psychological records.

The purpose for disclosure of these records is to allow SEICTF to evaluate my medical history and injuries in this claim and to administer benefits I may be eligible for under the SEICTF program. A photocopy or exact reproduction of this signed authorization shall have the same force and effect as the original. This Authorization for Release of Health Information is valid for one year from the date of my signature.

I understand that I may revoke this authorization by sending a signed, written notice to SEICTF and to the healthcare provider(s) authorized to disclose my health information pursuant to this document. However, I also understand that any revocation will be effective only to the extent that action has not already been taken in reliance of this authorization.

By refusing to sign or revoking this authorization, I understand that SEICTF will be unable to provide benefits under this program as medical records are required.

Employee Signature _____    Date _1-8-2007_

**EMPLOYEE: Give completed copy to your supervisor immediately after receiving treatment.**

---

**TO BE COMPLETED BY SUPERVISOR**

Employee Name: _Preston Herbert_                    S.S. # ___-__-_5892_

Date of Injury _01-08-07_
Description of Accident/Injury: _Dislocated Shoulder_

Supervisor's Signature: _Michael McHenry_        Date: _01-08-07_
Agency: _Corrections_                            Division/Facility: _Bullock County_

**** *************When completed by supervisor and physician – fax immediately to SEICTF at (334) 223-6170 or 1-888-827-6753*************** ****

---

**TO BE COMPLETED BY PHYSICIAN**

Diagnosis: _ANTERIOR DISLOCATION of LT SHOULDER_
Work Status: _____ May return to full duty

_____ Out of work for _2_ days, then return to work with restrictions (see below)

May return to work with the following restrictions for _____ days:
Activity restrictions: _____

RETURN APPOINTMENT DATE: _1/10/07_ _____ None Scheduled
Physician Name (please print) _Dr. SIDDIQ / Dr MALIK_    Office Phone:_____    Date: _____
Physician Signature _____

TALHA MALIK, MD
00026170

SEICTF FORM 3-A REV 03/06                                                Page 1 of 2

## PLEASE SEE OTHER SIDE OF FORM FOR CLAIMS FILING INSTRUCTIONS

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY | BCCF |
|---|---|---|---|
| 01/08/07 | 4 ☐AM ☑PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | |

☐ SICK CALL    ☐ EMERGENCY
☑ OUTPATIENT

| ALLERGIES | CONDITION ON ADMISSION |
|---|---|
| NKA | ☐ GOOD ☑ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

VITAL SIGNS: TEMP _____ ORAL/RECTAL    RESP. 22    PULSE 76    B/P 130/88    RECHECK IF SYSTOLIC <100> 50  N/A

**NATURE OF INJURY OR ILLNESS**

S- Body Chart in Doc

O- Blk Male, Escorted to Hy. & hand cuffed behind his back - arrived in normal physical - Blk Male Oriented & Alert x 3. Resp. rate even. Color Normal - Skin warm & dry c̄ small abrasion noted back of Elbow and Lower leg on Shin bone. Sustained (L) Medium size opened area

| | ABRASION /// | CONTUSION # | BURN xx/xx | FRACTURE Z/Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|---|

**PHYSICAL EXAMINATION**

Inmate Checked & examined by Dr Siddiq - Eyes Redden due to uses of Pepper Spray. As Attention informed to bodis injuries.

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

P- Eyes Rinsed c̄ Steri eyes Solution -
- Area Cleanse H₂O + N/S followed by Tri. antibug.
- Advil 500mg PO tid x10day
- X-Ray of (L) Lower leg / Tib (Lower) leg.

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT** Return PRN

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE |
|---|---|---|---|
| 01/8/07 | 4 35 ☐AM ☑PM | ☑ DOC ☐ AMBULANCE ☐ | ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| Bobbin x | 1/8/07 | | | |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Lindsay Stephon | 207044 | 9/6/77 | B/m | BCCF |

PHS-MD-70007    **(White – Record Copy, Yellow – Pharmacy Copy)**



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY | ☐ SICK CALL  ☐ EMERGENCY |
|---|---|---|---|
| 1 /3 /7 | 1612 AM/PM | ☐ SIR  ☐ PDL  ☐ ESCAPEE ☐ | ☐ OUTPATIENT |

| ALLERGIES  NKDA | CONDITION ON ADMISSION  ☐ GOOD  ☐ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA |
|---|---|

| VITAL SIGNS: TEMP | ORAL / RECTAL | RESP. ___ | PULSE ___ | B/P ___ | RECHECK IF SYSTOLIC <100> 50 ___ |

**NATURE OF INJURY OR ILLNESS**

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / ___ SUTURES |
|---|---|---|---|---|

*(handwritten nature of injury notes — illegible)*

**PHYSICAL EXAMINATION**

*(handwritten notes — illegible)*

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| *(handwritten)* | | |

**DIAGNOSIS** RB Dislocation @ Shoulder

**INSTRUCTIONS TO PATIENT**

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | ☐ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE  ☐ SATISFACTORY  ☐ POOR  ☐ FAIR  ☐ CRITICAL |
|---|---|---|---|---|
| 1 /5 /7 | 1427 AM/PM | | | |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| | | | | |

| INMATE NAME (LAST, FIRST, MIDDLE)  Hibert, Preston | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|

PHS-MD-70007                    **(White – Record Copy, Yellow – Pharmacy Copy)**

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE 1/8/07 | TIME 1610 ☐AM ☑PM | ORIGINATING FACILITY Bullock ☐SIR ☐PDL ☐ESCAPEE ☐ | ☐SICK CALL ☐EMERGENCY ☐OUTPATIENT |
|---|---|---|---|

| ALLERGIES NKA | CONDITION ON ADMISSION ☑GOOD ☐FAIR ☐POOR ☐SHOCK ☐HEMORRHAGE ☐COMA |
|---|---|

| VITAL SIGNS: TEMP 98.6 ☑ORAL ☐RECTAL | RESP. 22 | PULSE 110 | B/P 126/108 | RECHECK IF SYSTOLIC <100> 50 / |
|---|---|---|---|---|

**NATURE OF INJURY OR ILLNESS**

S- Altercation w/ inmate

| | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|---|



PROFILE RIGHT OR LEFT

abrasion   swollen

abrasion

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

O- DOC Officer presented to
HCU, A0&3. Resp, unc + even.
Skin W/D to touch
C/o being involved in altercation
w/ inmate. Abrasions to (R) knee
(L) elbow noted. (L) Knuckles
swollen + sore.

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| P- Cleans affected area w/NS | | |
| TAO + Band-aid applied. | | |
| Release to DOC. | | |
| Follow-up w/ Personal MD | | |
| if needed | | |

A- Alteration in Skin Integrity

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

Follow-up w/ Personal MD if needed

| DISCHARGE DATE 1/8/07 | TIME 1641 ☐AM ☑PM | ☑RELEASE ☐TRANSFERRED TO | ☑DOC ☐AMBULANCE ☐ | CONDITION ON DISCHARGE ☑SATISFACTORY ☐POOR ☐FAIR ☐CRITICAL |
|---|---|---|---|---|

| NURSE'S SIGNATURE [signature] | DATE 1/8/07 | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) Hudson, Jeffrey CO1 | DOC# DOC | DOB 6-6-68 | R/S Bm | FAC. Bullock |
|---|---|---|---|---|

PHS-MD-70007          **(White – Record Copy, Yellow – Pharmacy Copy)**

Message Confirmation Report                    JAN-08-2007 09:24 PM MON

Fax Number  :  13347385020
Name        :  BULLOCK COUNTY CORRE

Name/Number  :  3539528
Page         :  2
Start Time   :  JAN-08-2007 09:23PM MON
Elapsed Time :  01'10"
Mode         :  STD G3
Results      :      [O.K]

# FAX

# COVER

**Bullock County Correctional Facility**
104 Bullock Drive – P. O. Box 5107
Union Springs, AL 36089

PHONE (334) 738-5625
FAX (334) 738-5020

DATE: _01/08/2007_

ATTENTION: _Risk Management_

FAX NUMBER: _(334) 353-9528_

SENDER: _Bullock County Dept of Correction_
_(H. McCray)_

Number of Pages: _2_
**(Including Cover Sheet)**

Message Confirmation Report                    JAN-08-2007 09:12 PM MON

```
                                    Fax Number    :   13347385020
                                    Name          :   BULLOCK COUNTY CORRE


Name/Number     :   3539528
Page            :   2
Start Time      :   JAN-08-2007 09:11PM MON
Elapsed Time    :   01'12"
Mode            :   STD G3
Results         :       [O.K]
```

# FAX COVER

**Bullock County Correctional Facility**
104 Bullock Drive – P. O. Box 5107
Union Springs, AL 36089

PHONE (334) 738-5625
FAX (334) 738-5020

DATE: _01/08/2007_

ATTENTION: _Risk Management_

FAX NUMBER: _(334) 223- 6170_

SENDER: _Bullock County Dept of Correction_
_(H. McCray)_

**Number of Pages: _2_**
**(Including Cover Sheet)**

# FAX

# COVER

~~Bullock County Correctional Facility~~
104 Bullock Drive – P. O. Box 5107
Union Springs, AL  36089

PHONE  (334) 738-5625
FAX  (334) 738-5020

## DATE: 01/08/2007

ATTENTION: *Risk Management*

FAX NUMBER: (334) 353-9528

SENDER: *Bullock County Dept of Correction*
*(Lt. McCrary)*

## Number of Pages: 2
### (Including Cover Sheet)

# FAX COVER

Bullock County Correctional Facility
104 Bullock Drive – P. O. Box 5107
Union Springs, AL  36089

PHONE  (334) 738-5625
FAX  (334) 738-5020

DATE: _Jan 8'07_

ATTENTION: _Mr. Lovelace_

FAX NUMBER: _(334) 353- 3967_

SENDER: _Lt m. McCraney_

Number of Pages: _23_
(Including Cover Sheet)

Message Confirmation Report                    JAN-08-2007 10:16 PM MON

```
                                    Fax Number    :  13347385020
                                    Name          :  BULLOCK COUNTY CORRE

   Name/Number    :    13343533967
   Page           :    3
   Start Time     :    JAN-08-2007 10:15PM MON
   Elapsed Time   :    01'14"
   Mode           :    STD G3
   Results        :       [O.K]
```

Message Confirmation Report

JAN-09-2007 12:18 AM TUE

| | | |
|---|---|---|
| Fax Number | : | 13347385020 |
| Name | : | BULLOCK COUNTY CORRE |

| | | |
|---|---|---|
| Name/Number | : | 13342448333 |
| Page | : | 3 |
| Start Time | : | JAN-09-2007 12:17AM TUE |
| Elapsed Time | : | 01'14" |
| Mode | : | STD G3 |
| Results | : | [O.K] |

# FAX COVER

**Bullock County Correctional Facility**
104 Bullock Drive – P. O. Box 5107
Union Springs, AL 36089

PHONE (334) 738-5625
FAX (334) 738-5020

DATE: Jan 9 '07

ATTENTION: Baptist E.D. Reg.

FAX NUMBER: (334) 844- 8333

SENDER: Sgt Ruffin

Number of Pages: 3
(Including Cover Sheet)

# FAX COVER

Bullock County Correctional Facility
104 Bullock Drive – P. O. Box 5107
Union Springs, AL  36089

PHONE  (334) 738-5625
FAX  (334) 738-5020

DATE: *Jan. 8, 2007*

ATTENTION: *Risk Management*

FAX NUMBER: *(334) 353- 9528*

SENDER: *Bullock County Dept of Correction*
*(Lt. McCrary)*

Number of Pages: *8*
(Including Cover Sheet)

Message Confirmation Report

JAN-08-2007 10:19 PM MON

Fax Number   :   13347385020
Name         :   BULLOCK COUNTY CORRE

| | | |
|---|---|---|
| Name/Number | : | 13343538922 |
| Page | : | 2 |
| Start Time | : | JAN-08-2007 10:18PM MON |
| Elapsed Time | : | 00'56" |
| Mode | : | STD G3 |
| Results | : | [O. K] |

## Alabama Department of Corrections
### Duty Officer Report

Type of Incident: __Assault on DOC OFFICIAL__     Class Code __B__

Victim(s):   __JEFFERY HUDSON COI__     Institution: __Bullock County Corr. Facility__

AIS # _____   R/S _____   DOB _____

__PRESTON HERBERT COI__   AIS # _____   R/S _____   DOB _____

Suspects(s):  __STEPHEN LINDSAY__   AIS # __207044__   R/S __B/M__   DOB __9/06/77__

AIS # _____   R/S _____   DOB _____

Sentenced From: __ETOWAH COUNTY__   AIS # _____   R/S _____   DOB _____

Date of Sentence: __9/23/99__

Offense(s): __ROBBERY I__     Length of Sentence. __120 YRS.__

Minimum Release Date: __2118__

Date: __1/8/07__   Time: __9:05 p.m.__   Location: __BULLOCK CO. CORR. FACILITY GYM__
Brief Narrative: On January 8, 2007, Officer Jeffery Hudson was assigned as Gym Rover. Officer Hudson
was roving in front of the bleachers in the Gym and observed inmate Stephen Lindsay B/M sitting in the
bleachers wearing a big coat and appeared to be masterbating. Officer Hudson ordered inmate Lindsay to
step down off the bleachers on to the floor. When inmate Lindsay stood up his erect penis was out of his
pants. Inmate Lindsay shouted in an aggressive voice that you didn't catch me doing shit. Officer Hudson
then ordered inmate Lindsay to step back, inmate Lindsay refused to do so. Inmate Lindsay continued to
come toward Officer Hudson in an aggressive manner. Officer Hudson then pulled his baton and ordered
inmate Lindsay again to stop. Inmate Lindsay then struck Officer Hudson several times in the chest area
with his closed fist. Officer Preston Herbert (yard rover) came to assist Officer Hudson. Officer Herbert
hit inmate Lindsay several times on his right leg with his baton. Inmate Lindsay continued to be
aggressive. Inmate Lindsay grabbed Officer Herbert' baton in attempt to take the baton from Officer
Herbert. Inmate Lindsay pulled Officer Herbert's baton and then twisted the baton causing Officer
Herbert shoulder to dislocate. Officer Hudson then wrestled inmate Lindsay to ground and handcuffs
were placed on inmate Lindsay. Inmate Lindsay was escorted to the infirmary for a body chart and then
placed in Segregation pending disciplinary action for rule violation # 29 " Assault On a DOC Official "
Officer Hudson and Officer Herbert went to the infirmary for a body chart. Officer Herbert was taken to
Bullock County Hospital for treatment. A Employee First Injury Report was faxed on both employees. No
further action taken.

**STATE OF ALABAMA**
**DEPARTMENT OF CORRECTIONS**
**INCIDENT REPORT**

| 1. Institution:<br>BULLOCK COUNTY CORRECTIONAL FACILITY | 2. Date:<br>3-22-2007 | 3. Time:<br>7:03 p.m. | 4. Incident Number:<br>BCF: 07-386 | Class Code:<br>C |
|---|---|---|---|---|

| 5. Location Where Incident Occurred:<br>Back door of Gym on Yard | 6. Type of Incident:<br>Informational Purposes |
|---|---|

| 7. Time Incident Reported:<br>7:08 p.m. | 8. Who Received Report:<br>Patricia Lockley |
|---|---|

**9. Victims:** Name / AIS

a. N/A — No. N/A
b. — No.
c. — No.

**10. Suspects:** Name / AIS

a. Stephon Lindsay — No. B/207044
b. Edwin Coventry — No. W/209975
c. — No.
d. — No.
e. — No.

**11. Witnesses:** Name / AIS

a. N/A — No.
b. — No.
c. — No.
d. — No.
e. — No.
f. — No.
g. — No.

**PHYSICAL EVIDENCE:**

**12. Type of Evidence**
N/A

**13. Description of Evidence:**
N/A

**14. Chain of Evidence:**
a. N/A
b.
c.
d.
e.

**15. Narrative Summary:** On March 21, 2007, Officer Jeffery Hudson was assigned as the Gym Officer. At approximately 6:00 p.m., Stephon Lindsay, B/207044 entered the Gym. While inmate Lindsay was in the Gym he (inmate Lindsay) constantly walked back and forth pass Officer Hudson while starring in Officer Hudson direction. On March 22, 2007, Officer Hudson was assigned as the Gym Officer. At approximately 7:03 p.m., Officer Hudson was standing at the back of the Gym door waiting on the inmates to come off the yard before he (Officer Hudson) close the Gym door along with Officer Adrian Jackson. At this time, inmate Lindsay and Edwin Coventry, W/209975 departed the Gym enroute to their Dorms. Inmate Lindsay looked back at Officer Hudson and began pointing his finger at Officer Hudson mumbling some words that Officer Hudson could not hear. Inmate Lindsay action caused inmate Coventry to also look back at Officer Hudson and begin to laugh. Inmate's Coventry and Lindsay continued to walk, look back and point at Officer Hudson several times. At approximately 7:08 p.m., Officer Hudson advised Sgt. Lockley of this incident. Officer Hudson also advised Sgt. Lockley that he (Officer Herbert) had previous had an incident with inmate Lindsay. Officer Hudson also advised Sgt. Lockley that he (Officer Hudson) didn't feel safe around inmate Lindsay. Officer Hudson also feels threaten because of inmate Lindsay's actions for the last two (2) days. No further action taken.

Jeffery Hudson, CO
Jeffery Hudson, Correctional Officer

Distribution:    ORIGINAL AND ONE (1) COPY to Central I & I Division     COPY to Deputy Commissioner of Operations (Class A and B ONLY)<br>COPY to Institutional File     COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

**STATE OF ALABAMA**
**DEPARTMENT OF CORRECTIONS**
**INCIDENT REPORT**

| 1. Institution: BULLOCK COUNTY CORRECTIONAL FACILITY | 2. Date: 01-08-2007 | 3. Time: 4:00 p.m. | 4. Incident Number: BCF: 07-025 | Class Code: B |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: Gym | 6. Type of Incident: #29 Assault on a Person Associated with DOC Official/Use of Force |
|---|---|

| 7. Time Incident Reported: 4:15 p.m. | 8. Who Received Report: *Michael McCraney Cor Lieutent* Michael McCraney, Correctional Lieutenant |
|---|---|

**9. Victims:**

| | Name | | AIS |
|---|---|---|---|
| a. | Jeffery Hudson | No. | Correctional Officer |
| b. | | No. | |
| c. | | No. | |

**10. Suspects:**

| | Name | | AIS |
|---|---|---|---|
| a. | Stephon Lindsay | No. | B/207044 |
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |

**11. Witnesses:**

| | Name | | AIS |
|---|---|---|---|
| a. | N/A | No. | |
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |
| f. | | No. | |
| g. | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence
N/A

13. Description of Evidence:
N/A

14. Chain of Evidence:

a. N/A
b.
c.
d.
e.

15. Narrative Summary: On January 8, 2007, Officer Jeffery Hudson was assigned as the Gym Rover. At approximately 4:00 p.m., while roving in front of the bleachers, Officer Hudson observed several inmates sitting in the bleachers with big coats on. Officer Hudson then ordered inmate Stephon Lindsay, B/207044, to step down off the bleachers. Inmate Lindsay stood up, his penis was erect hanging out of his (inmate Lindsay) pants. Inmate Lindsay then became hostile, stating you (Officer Hudson) didn't see me do shit. Inmate Lindsay was swinging his arms in a back and forth motion while walking towards Officer Hudson in an aggressive manner. Officer Hudson then reached his left hand out and ordered inmate Lindsay to get back. Inmate Lindsay then started coming closer to (Officer Hudson) in an aggressive manner. Officer Hudson reached for his baton and again ordered inmate Lindsay to back up. Inmate Lindsay began swinging his closed fist, striking Officer Hudson several times in the chest area. At approximately 4:02 p.m., Officer Preston Herbert (Yard Rover) reported to assist me (Officer Hudson). Officer Herbert struck inmate Lindsay several times on inmate Lindsay left leg. Inmate Lindsay then grabbed Officer Herbert's baton and tried to take the baton away from Officer Herbert. Officer Hudson then began striking inmate Lindsay on his right arm causing inmate Lindsay to turn Officer Herbert's baton a loose. Officer Hudson then called Code Red. Officer Herbert then regain control of his baton and Officer Herbert began striking inmate Lindsay in the right leg area below the knee. Officer Herbert baton hit Officer Hudson baton causing Officer Hudson's baton to fall to the floor. Inmate Lindsay attempted to pick up the baton. Officer Hudson then grabbed inmate Lindsay as he reached down for his baton. Inmate Lindsey ran to the back door of the Gym on the yard. Officer Hudson ordered inmate Lindsay several times to stop; inmate Lindsay refused. Officer Hudson pulled his Chemical Spray (Freeze + P) and sprayed inmate Lindsay. Officer Hudson

Distribution:  ORIGINAL AND ONE (1) COPY to Central I & I Division        COPY to Deputy Commissioner of Operations (Class A and B ONLY)
                          COPY to Institutional File                                                        COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

## STATE OF ALABAMA
### DEPARTMENT OF CORRECTIONS
## INCIDENT REPORT/DUTY OFFICER REPORT
### CONTINUATION

| Institution: | | |
|---|---|---|
| BULLOCK COUNTY CORRECTIONAL FACILITY | Incident Number: | |
| Date: | BCF: 07-025 | Class Code: |
| 01-08-2007 | Type of Incident: | B |
| Narrative Summary (Continued, Page No. 2) | #29 Assault on a Person Associated with DOC/Use of Force | |

then wrestled inmate Lindsay to the ground. Inmate Lindsay continued to be aggressive. At approximately 4:05 p.m., Officer Bruce Hampton placed handcuffs on inmate Lindsay. At approximately 4:06 p.m., Officer Hampton and Officer Adrian Jackson escorted inmate Lindsay to the Infirmary for a body chart (see attached body chart). At approximately 4:10 p.m., Officer Hudson entered the Infirmary for a body chart (see attached body chart). At approximately 4:12 p.m., Officer Herbert entered the Infirmary for a body chart (see attached body chart). At approximately 4:27 p.m., Officer Herbert was transported by Sgt. Ruthie Perry to Bullock County Hospital Emergency Room for treatment. Officer Herbert was examined by Dr. Talda Malk, MD and was released back to BCCF. Lt. Michael McCraney did an Employee First Report of Injury and a copy was faxed to the Division of Risk Management. Inmate Lindsay was escorted to the Segregation Unit and placed in Segregation Cell #19, pending disciplinary action for violation of Rule #29, Assault on a Person Associated with DOC. Lt. McCraney faxed a Duty Officer Report to Commissioner Greg Lovelace and Division of I & I.

Jeffery Hudson, Correctional Officer I

## STATEMENT

On January 8, 2007, at approximately 4:00 p.m., Officer Bruce Hampton was sitting in the ICS office when Officer Hampton heard via radio; Code Red in the Gym. Officer Hampton rushed to the Gym. Upon arrival Officer Hampton saw inmate Stephon Lindsay, B/207044, lying on the ground. Officer Hampton instructed inmate Lindsay to get up and turn around. Inmate Lindsay complied. Officer Hampton then placed handcuffs on inmate Lindsay and escorted him (Lindsay) to the Health Care Unit. No further action taken.

Bruce Hampton, Correctional Officer I

ADOC Form 302-B – June 1, 2005